IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELA CARLOS, as Administratrix of the Estate of Tiomne Kimana Carlos, : : : : | CIVIL ACTION NO. 3:cv-15-1994 |
| Plaintiff, : | |
| v. : : | (Caldwell, J.) (Saporito, M.J.) |
| YORK COUNTY, et al. : : | |
| Defendants. : | |

REPORT AND RECOMMENDATION

This is a federal civil rights survival and wrongful death action brought under 42 U.S.C. § 1983, which also asserts supplemental state law claims arising out of the same operative facts. It arises out of the death of Tiombe Kimana Carlos (the "decedent"), an immigration detainee, while incarcerated at York County Prison, which is located in York County, Pennsylvania. The plaintiff is Angela Carlos, mother of the decedent and administratrix of her daughter's estate. The motion to dismiss (Doc. 21) filed by defendant Patrick Gallagher, LPC ("Gallagher") is before us for disposition. For the reasons set forth herein, we recommend that the motion be denied.

I.  BACKGROUND

The original complaint in this action was filed on October 14, 2015. (Doc. 1). It alleged that the four named defendants (York County; PrimeCare Medical, Inc. ("PrimeCare"), a private corporation contracted to provide medical and mental health services to inmates at York County Prison; Pamela Rollings-Mazza, MD, a physician employed by PrimeCare to provide psychiatric services at York County Prison; and Patrick Gallagher, LPC, a licensed professional counselor employed by PrimeCare to provide mental health counseling services at York County Prison) and fictional defendants "Medical John Does 1-10" and "Correctional Officer John Does 1-10" were deliberately indifferent and negligent in failing to treat the serious and chronic mental health needs of the decedent while incarcerated as an immigration detainee at York County Prison, which led to the decedent's death by suicide on October 23, 2013.

On November 6, 2015, Gallagher filed his motion to dismiss (Doc. 21) asserting that despite the complaint's allegations that Gallagher acted with deliberate indifference, the complaint described nothing more than mere medical negligence. On April 27, 2016, we granted plaintiff's motion for leave to amend complaint. (Doc. 35). The filed amended complaint

2

(Doc. 36) did not change the allegations against Gallagher. Specifically, Gallagher maintains that the plaintiff's complaint failed to allege sufficient facts to establish that Gallagher was deliberately indifferent to the decedent's mental health needs, provided grossly negligent mental health treatment, or acted with an evil motive in rendering medical care. As a consequence of those alleged deficiencies, Gallagher asked for the dismissal of the complaint as against him because it fails: (1) to state an Eighth or Fourteenth Amendment Section 1983 claim; (2) to overcome the immunity provision of the Pennsylvania Mental Health Procedures Act; or (3) to justify a claim for punitive damages. (Doc. 23, at 1).

The pertinent provisions of the amended complaint include the following. The decedent was a non citizen permanent resident from Antigua and Barbuda who suffered from serious mental health symptoms, including paranoid thought patterns and hallucinations, and had a history of being treated with various psychiatric medications. (Doc. 36 ¶¶ 34, 35, 37-38). The decedent was the subject of removal proceedings after having been imprisoned following her convictions of assaulting a police officer and a correctional officer. (Id. ¶¶28-29).

As a result of the removal proceedings, the decedent was imprisoned at York County Prison on April 18, 2011. (Id. ¶¶42-43). Immediately upon incarceration, medical/mental health staff at the prison were aware of the decedent's serious mental health needs. (Id. ¶44). Also, it was alleged that from the beginning of her incarceration, the decedent was known to have impulse control issues causing her to act out in interactions with staff. As a result, she was placed in the Behavioral Adjustment Unit, a special housing area intended to enforce discipline. (Id. ¶¶44-45). Shortly thereafter, she underwent mental health evaluations by co-defendant Pamela Rollings-Mazza, M.D. and Gallagher. (Id. ¶¶46-47). Dr. Rollings-Mazza prescribed bi-weekly injections of Haldol, a psychiatric medication. (Id. ¶¶49-50). Throughout the decedent's incarceration, the Haldol injections were delayed. (Id. ¶53).

On August 12, 2013, the decedent was transferred from the Behavioral Adjustment Unit to the general population. (Id. ¶62). The next day, she attempted suicide by strangling herself with a bed sheet. (Id. ¶¶63-64). She was transferred to an outside hospital for assessment and treatment and then discharged back to the prison to resume the Haldol injections. (Id. ¶¶66, 69).

4

The amended complaint alleges that upon the decedent's return to the prison, Gallagher, aware of the potential of another suicide risk, continued with the treatment of Haldol injections which had failed in the past. (Id. ¶¶33, 69). On October 21, 2013, the decedent was moved to a different cell of the Intensive Custody Unit, a location which created another risk factor for suicide. (Id. ¶¶32(g), 72, 77). Two days later, the decedent committed suicide, hanging herself with a bed sheet. (Id. ¶¶72-74).

The allegations made against Gallagher in the amended complaint include the following: (1) he failed to arrange the development of a treatment plan knowing that the decedent's medications were not provided to her on a timely basis (Id. ¶¶54, 55); (2) he failed to implement any of the recommendations offered by a psychologist (Id. ¶¶59, 60); (3) he missed two Haldol injections during a two-month span (Id. ¶70); (4) he failed to intervene in the decision to place the decedent in a cell that was not suicide-resistant (Id. ¶¶76, 77); (5) despite his knowledge of the decedent's health risks, he failed, with deliberate indifference, to take reasonable actions to mitigate the risks and to prevent a suicide (Id. ¶¶96, 99); (6) his conduct was in willful, reckless, and callous disregard of the

5

decedent's rights (Id. ¶102); and (7) he violated his duty of care to the decedent. (Id. ¶97).

## II. RULE 12(b)(6) STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." Morrow v. Balaski, 719 F.3d 160, 165 (3d Cir. 2013) (quoting Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991); Johnsrud v. Carter, 620 F.2d 29, 32–33 (3d Cir.

6

1980); Holocheck v. Luzerne Cty. Head Start, Inc., 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

III. DISCUSSION

A. Constitutional Claim

The complaint and amended complaint assert a claim which names Gallagher as a defendant alleging that he and others violated the decedent's rights under the Eighth and Fourteenth Amendments of the United States Constitution. The constitutional claim is brought pursuant to 42 U.S.C. §1983. In his motion and briefs, Gallagher maintains that the plaintiff's constitutional claim should be dismissed because he did not act with deliberate indifference.

"A detainee is entitled under the Due Process Clause of the Fourteenth Amendment to, at a minimum, no less protection for personal security than that afforded convicted prisoners under the Fourteenth Amendment and no less a level of medical care than that required for

7

convicted prisoners by the Eighth Amendment." Colburn v. Upper Darby Twp., 838 F.2d 663, 668 (3d Cir. 1988); see also City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (pretrial detainee's due process rights are at least as great as prisoner's Eighth Amendment rights); Bell v. Wolfish, 441 U.S. 520, 539 (1979) (pretrial detainees have an additional due process right to freedom from punishment). "[P]rison administrators 'are under an obligation to take reasonable measures to guarantee the safety of the inmates themselves.'" Colburn, 838 F.2d at 668 (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). In particular, prison officials have "a duty, at a minimum, not to be deliberately indifferent to [the detainee's] serious medical needs." Colburn, 838 F.2d at 669 (quoting Partridge v. Two Unknown Police Officers, 791 F.2d 1182, 1187 (5th Cir. 1986)) (alteration in original).

To state a substantive due process claim based on conditions of confinement, a pretrial detainee must allege "that prison officials acted with deliberate indifference and that he or she suffered a deprivation of 'the minimal civilized measures of life's necessities,'" such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. Kost v. Kozakiewicz, 1 F.3d 176, 188 (3d Cir. 1993) (quoting Wilson v. Seiter,

501 U.S. 294, 298, 303–04 (1991)). To satisfy the former, subjective component of a conditions of confinement claim, a plaintiff must allege that the state actor acted with "deliberate indifference," a state of mind equivalent to gross negligence or reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 836 & n.4 (1994). To satisfy the latter, objective component, a plaintiff must allege conditions that, either alone or in combination, deprive him or her of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, or personal safety. See Rhodes v. Chapman, 452 U.S. 337, 347–48 (1981); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out a constitutional claim. See Hudson v. McMillian, 503 U.S. 1, 9 (1992).

To the extent that the plaintiff's claim rests on prison officials' "deliberate and systematic lack of adequate care for detainees, it alleges the kind of arbitrariness and abuse of power that is preserved as a component of the due process clause in Daniels v. Williams, 474 U.S. 327 (1986)]." Colburn, 838 F.2d at 669 (quoting Partridge, 791 F.2d at 1187);

9

*see also* Daniels, 474 U.S. at 330–33 (holding that mere negligence by state officials is not actionable under the Due Process Clause). Moreover, the Third Circuit has previously held that a particular vulnerability to suicide represents a serious medical need and that acts or omissions of a deliberately indifferent nature that cause the suicide of a pretrial detainee can support a recovery in a 42 U.S.C. §1983 action. Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).

This action asserts a civil rights claim for the alleged violation of the decedent's Fourteenth Amendments right to adequate medical care. This claim is brought in this action pursuant to 42 U.S.C. §1983. Section 1983 provides a private cause of action with respect to the violation of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides

remedies for rights established elsewhere. <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. <u>Mark v. Borough of Hatboro</u>, 51 F.3d 1137, 1141 (3d Cir. 1995).

"Civil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim." <u>Millbrook v. United States</u>, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As previously explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

<u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988).

The Third Circuit established the standard of liability in prison suicide cases as follows: "[i]f [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth

11

Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." Colburn, 838 F.2d at 669. In a prison suicide case, a plaintiff has the burden of establishing three elements: (1) the detainee had a particular vulnerability to suicide; (2) the custodial officer or officers knew or should have known of that vulnerability; and (3) those officers acted with reckless indifference to the detainee's particular vulnerability. Colburn, 946 F.2d at 1023.

To state a viable substantive due process claim, the plaintiff is required to show that the defendants were deliberately indifferent to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009).

Here, the plaintiff's constitutional claim against Gallagher involves a dispute whether, given his medical limitations, he did enough to monitor the decedent's condition so as to prevent her from committing suicide. Gallagher is not a medical doctor, but rather a licensed professional counselor. (Doc. 36 ¶12). Viewing all of the well-pleaded factual allegations in the complaint as true, as we must, it is clear that

Gallagher was involved in the decedent's care; he monitored her while she was an inmate at the prison; he participated in securing an outside medical referral; he carried-out the treating physicians orders in the administration of her medication, he was aware of the decedent's serious mental illness as well as her history of prior suicide attempts; he failed to arrange for and initiate a treatment plan to treat the decedent's serious mental health needs; he failed to implement any of the recommendations of a psychologist contained in his evaluation; and he made no effort to intervene with the decision to place the decedent in the Intensive Custody Unit, a punitive segregation area. (Doc. 1 ¶¶ 30-33, 44-56, 58-77).

The factual scenario alleged by the plaintiff suggests that Gallagher knew or should have known that the decedent was a suicide risk, and that he failed to take necessary and available precautions to protect her from suicide. Under these circumstances, the complaint survives dismissal. Freedman v. City of Allentown, 853 F.2d 1111, 1115 (3d Cir. 1988). The allegations contained in the complaint are sufficient to allege a Fourteenth Amendment claim, and therefore we will recommend that the motion to dismiss for failure to state a constitutional claim be denied.

B.  <u>MHPA Immunity</u>

Next, Gallagher moves to dismiss the state law claims against him on the basis that he is entitled to immunity under the Pennsylvania Mental Health Procedures Act (MHPA). 50 P.S. § 7114(a). The MHPA provides that an authorized person who participates in a decision that a person be treated under the act shall not be liable in the absence of willful misconduct or gross negligence. <u>Id.</u> The plaintiff asserts that the immunity provisions of the MHPA does not apply to mental health care provided in the prison context. (Doc. 27, at 21).

The plaintiff's argument is well taken. The amended complaint does not allege that proceedings for the involuntary examination or treatment of Ms. Carlos pursuant to the MHPA were instituted while she was incarcerated at York County Prison. Thus, in the absence of any such MHPA proceedings, the MHPA does not provide Gallagher with immunity from the plaintiff's state law negligence claims. <u>See</u> <u>Herman v. City of York</u>, 482 F. Supp. 2d 554, 567-68 (M.D. Pa. 2007).

Moreover, even if the MHPA did apply in this case, dismissal would be inappropriate. Having found that the plaintiff has stated a colorable claim that Gallagher was deliberately indifferent to the serious medical

14

needs of Ms. Carlos, it follows that the plaintiff has likewise adequately pleaded a colorable state-law claim of medical negligence based on "willful misconduct" or "gross negligence" by Gallagher. See Wolfe v. Horn, 130 F. Supp. 2d 648, 659 (E.D. Pa. 2001).

Accordingly, we will recommend that Gallagher's motion to dismiss the plaintiff's state-law claims on the basis of immunity under the MHPA be denied.

### C. Punitive Damages

Gallagher maintains that the plaintiff has failed to establish that Gallagher acted with gross negligence, recklessness, or a callous indifference toward the decedent. He requests that the plaintiff's demand for punitive damages be stricken with prejudice.

Punitive damages are appropriate in Section 1983 actions when a "'defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" Alexander v. Riga, 208 F.3d 419, 430-31 (3d Cir. 2000) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). In addition, for Section 1983 purposes, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."

Farmer, 511 U.S. at 836-37. The facts alleged in the complaint set forth reckless and willful conduct and therefore, at this juncture, the plaintiff's request for punitive damages is sufficient. Thus, we will recommend that the plaintiff's motion to dismiss as to the availability of punitive damages be denied.

IV. Recommendation

Based upon the foregoing, it is RECOMMENDED that the motion to dismiss (Doc. 21) filed by defendant Gallagher be DENIED. IT IS FURTHER RECOMMENDED that defendant Gallagher answer the amended complaint within fourteen (14) days.

JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: August 19, 2016

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELA CARLOS, as Administratrix of the Estate of Tiomne Kimana Carlos, | : CIVIL ACTION NO. 3:cv-15-1994 <br> : <br> : <br> : |
| Plaintiff, <br> v. <br> <br> YORK COUNTY, et al. <br> <br> Defendants. | : <br> : (Caldwell, J.) <br> : (Saporito, M.J.) <br> : <br> : <br> : <br> : |

### NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated August 19, 2016.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection

is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

*Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: August 19, 2016