## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANGELA CARLOS, as
ADMINISTRATRIX of the ESTATE of
TIOMBE KIMANA CARLOS

       **Plaintiff**

**v.**

YORK COUNTY; PRIMECARE
MEDICAL, INC.; PAMELA
ROLLING-MAZZA, MD; PATRICK
GALLAGHER, LPC; ROBERT
DAVIS,MD; HOLLY A. SNYDER, RN;
AIMEE LEIPHART, LPN; MEDICAL
JOHN DOES 1-10; DEPUTY WARDEN
CLAIR DOLL; CAPTAIN CARL
NEEPER; CORRECTIONAL OFFICER
ERIKA COLLINS; CORRECTIONAL
OFFICER GRISSELL SANTOS-
HEREDIA;  CORRECTIONAL
COUNSELOR MCNICHOLAS;
CORRECTIONAL COUNSELOR
CRIST; CORRECTIONAL
COUNSELOR NADEAU;
CORRECTIONAL COUNSELOR J.
JACKSON;  CORRECTIONAL
COUNSELOR TRIG, CORRECTIONAL
OFFICER JOHN DOES 1-10:

       **Defendants**

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION
No.:  1:15-CV-01994-WWC

(Judge Caldwell)

(Magistrate Judge Saporito)

**BRIEF OF YORK COUNTY DEPUTY WARDEN CLAIR DOLL; CAPTAIN
CARL NEEPER; CORRECTIONAL OFFICER ERIKA COLLINS;
CORRECTIONAL OFFICER GRISSELL SANTOS-HEREDIA;
CORRECTIONAL COUNSELOR MCNICHOLAS; CORRECTIONAL
COUNSELOR CRIST; CORRECTIONAL COUNSELOR NADEAU;
CORRECTIONAL COUNSELOR J. JACKSON; CORRECTIONAL
COUNSELOR TRIG IN SUPPORT OF SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. STATEMENT OF FACTS AND PROCEDURAL HISTORY ..................... 1

A. Procedural History .............................................................. 1

B. Statement of Facts.............................................................. 2

II. QUESTIONS PRESENTED .................................................... 9

III. CONCLUSION...................................................................... 22

# TABLE OF CITATIONS

## Cases

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) .................. 11

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ............................... 10

Ashcroft v. al-Kidd, 563 U.S. ____, 131 S.Ct. 2074, 2085 ......................... 15

Bowens v. City of Atmore, 171 F. Supp. 2d. 1244 (SD ALA 2001) affirmed
   275 F3d 57 (11th Cir. 201) ........................................................................ 21

Bulcher v. Oliver, 898 F.2d 32, 34-35 (C.A.4 1990) ................................... 15

Burns v. Galveston, 905 F.2d 100, 104 (C.A.5 1990) ................................ 15

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ........................................... 10

City and County of San Francisco v. Sheehan, 575 U.S. ____, 135 S.Ct.
   1765, (2015) ............................................................................................. 15

Colburn v. Upper Darby Township et al., 838 F.2d 663 (3d. Cir. 1988) ..... 18

Colburn v. Upper Darby Township, et al., 946 F.2d 1017 (C.A.3 Pa. 1991)
   ................................................................................................................. 19

Comstock v. McCrary, 273 F.3d 693, 702 (C.A.6 2001) ............................ 15

Daniels v. Williams, 474 U.S. 327, 328 106 S.Ct. 662, 88 L.Ed 2d. 662
   (1986) ...................................................................................................... 20

Freedman v. City of Allentown, 853 F.2d 1111, 1115 (3rd Cir. 1988) ......... 20

Farmer v. Brennen, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed. 2d. 811
   (1994) ...................................................................................................... 20

Gabai v. Jacoby, 800 F. Supp. 1149, 1153 (S.D.N.Y. 1992) ..................... 11

Herman v. County of York, 1:05CV-2501 .................................................. 18

Matsushita Electric Industrial Company v. Zenith Radio, 475 U.S. 574, 586
   (1986) ...................................................................................................... 10

Monell v. New York City Department of Social Services, 436 U.S. 658, 98
   S.Ct. 2018, 56 L.Ed. 2d. 611 (1978) ...................................................... 17

Norris v. Frame, 585 F.2d. 1183, 1186 (3d. Cir. 1978)." P. 4-7 ................ 21

Popham v. City of Talladegra, 908 F.2d 1561, 1563 (11th Circ. 1990).......19
Procunier v. Navarette, 434 U.S. 555 (1978) .....................................14, 16
Reichle v. Howards, 566 U.S. ____, 132 S.Ct. 2088, 2093 (2012).............15
Taylor v. Barkes, _____ U.S. _____, 135 S.Ct. 2042 (2015)...................14
Tittle v. Jefferson City, Comm'n. 10 F.3d 1535, 1540 (C.A.11 1994).........15
Torraco v. Maloney, 923 F.2d 231, 236 (1st Cir. 1991)..............................19
Young v. Quinlan, 960 Fed. 2d. 351, 357 (3rd Cir. 1992)..........................10

## Statutes

42 U.S.C. §1983 .......................................................................1
61 P.S. §408 (now 61 PA C.S.A. §1731 et seq.).......................................18
61 PA §408(a)(1) ...............................................................................18
61 Pa. C.S.A. §1731(3)........................................................................17
Estelle, 429 U.S. at 104 ........................................................................20
Estelle, 429 U.S. at 106 FN 14................................................................21
Liberty Lobby, 477 U.S. at 256-57............................................................11
MCCI, 834 F.2d at 347..........................................................................20
PA C.S.A. §1731(b)(1) ............................................................................17

## I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Procedural History.

On October 14, 2015, Plaintiff, Angela Carlos, Administratrix of the Estate of Tiombe Kimana Carlos, hereinafter referred to as "Inmate Carlos", filed a Civil Rights Complaint alleging violation of 42 U.S.C. §1983.   The Complaint alleges that Inmate Carlos committed suicide by hanging on October 23, 2013 that was caused by the reckless indifference of the Defendants in violation of the inmate's constitutional rights. The Complaint named York County as a Defendant and identified PrimeCare Medical, Inc.; Pamela Rollings-Mazza, MD; Patrick Gallagher, LPC; Medical John Does 1-10; Correctional Officer John Does 1-10.

On February 11, 2016, Plaintiff, Inmate Carlos, three (3) months and eighteen (18) days after the expiration of the Pennsylvania Statute of Limitations, filed a Motion to Amend the Complaint.

The Complaint added the following new parties who were not specifically named in the original Complaint: Deputy Warden Doll, Captain Carl Neeper, Correctional Officer, Erika Collins, Correctional Officer Grissell Santos-Heredia, Correctional Officer McNicholas, Correctional

1

Counselor Crist, Correctional Counselor Nadeau, Correctional Counselor, J. Jackson, and Correctional Counselor Trig.

On February 18, 2016, the Defendant York County filed a Brief In Opposition to Plaintiff's filing of an Amended Complaint. Plaintiffs were granted leave to file the Amended Complaint by the Court on April 27, 2016.

The York County Defendants have filed a Motion for Summary Judgment. This Brief is in support of that Motion.

B.   **Statement of Facts.**

Inmate Carlos was admitted to the York County Prison on April 14, 2011. She had a history of mental illness and was on psychotropic medication. She was an ICE detainee and a convicted aggregated felon who was being deported to Antigua.

Because of her assaultive nature, misconduct, and mental health issues, much of her time was spent in segregation. She was placed on suicide watch five (5) times while in the prison.

The suicide watch was required because any inmate who was on psychotropic medication, and became involved in a violent assaultive activity, was automatically placed on a suicide watch.

Her mental health management was performed by York County Prison's contract healthcare provider, which was identified in Inmate Carlos Complaint as PrimeCare Medical, Inc.

The mental health counseling was mainly provided by Patrick Gallagher, a professional licensed and certified mental health counselor with 30 years' experience and a Master's Degree in Community Counseling.

During the time between April 14, 2011 and October 23, 2013, Inmate Carlos engaged in a course of violent, verbal, and physical assaults on other inmates and prison staff. She was determined to be a security risk. However, there were no indications from her behavior that her violent actions toward others would be turned toward herself, with one exception.

Mr. Gallagher testified, in a Discovery Deposition, that he did not believe Inmate Carlos was suicidal and despite a "suicide attempt" on August 13, 2013 that was performed in full view of the prison staff that intervened and prevented the attempt, he did not believe that she was a risk to kill herself.

During Inmate Carlos entire confinement, both York County Prison and PrimeCare had suicide prevention policies that were reviewed during the discovery process.

3

The York County policy was adhered to. The Officers providing care to Inmate Carlos managed her according to the suicide policies and determinations made by the PrimeCare health professionals including Patrick Gallagher, licensed Mental Health Counselor.

York County Prison also had a Program Review Committee. Once a week the Committee visited every inmate that was in segregated confinement to review the inmate's course and determine what needs or complaints were expressed by the segregated inmates.

Inmate Carlos, because of her erratic and impulsive behavior, was frequently moved in and out of segregated confinement. She was visited regularly by the Program Review Committee. The last visit was on October 16, 2013, one week before her death.

The written records of the Program Review Committee confirm that Inmate Carlos was visited while in segregated confinement twenty-four (24) times between her admission date on April 14, 2011 and one week before her death on October 16, 2013. On each visit, the Program Review Committee, consisting of five (5) members including Mr. Gallagher, performed a check list that included the appropriateness of the confinement and whether the inmate posed a security threat.

4

The Program Review Committee records note that the Program Review Committee recorded a "no" on every visit to the question, "Does the inmate pose a threat to himself?" and "yes" to the question, "Does the inmate pose a threat to security?"

The management of Inmate Carlos, though challenged by her mental illness and frequent aggressive and assaultive behavior, was successful in avoiding serious injury to the inmate, the prison staff, and other inmates until October 23, 2013.

After the suicide attempt on August 13, 2013, Inmate Carlos was followed closely by Mr. Gallagher, the licensed Mental Health Counselor and the Program Review Committee. On October 2, 2013 she was removed from the "psych obs" status by Mr. Gallagher as part of the plan to step her down for return to the general population.

On October 23, 2013, sometime between 8:00 and 8:30 p.m., an angry verbal exchange occurred between Inmate Carlos and another inmate over a dispute concerning the operation of a television set. The exchange included a statement by the other inmate to the effect that Inmate Carlos should, "kill herself."

Officer Erika Collins witnessed the incident. She said to the other inmate, "How could you say something like that?" She spoke to Inmate

Carlos and advised her to just ignore the comments and felt that she had calmed and was okay. She had no idea that Inmate Carlos was contemplating suicide.

Rounds included fifteen (15) minute checks in this part of the prison even though Inmate Carlos had been released from psych obs on October 2, 2013 by Mr. Gallagher. At 9:00 p.m., Officer Grissell Santos-Heredia and other female correctional officers observed Inmate Carlos sitting on her bed and it looked like she was preparing to go to bed.

At 9:17 p.m., Officer Erika Collins was performing rounds. She came to Inmate Carlos' cell. The inmate was standing with her back to the door. She asked the inmate, "What are you doing?" There was no response, she then noticed a cloth was tied around the bars of the window in the cell and immediately called for help. Inmate Carlos had tied the cloth tightly around her neck and to the window bars.

Inmate Carlos was cut down and given CPR. The resuscitation efforts were not successful. She was declared deceased by the York County Coroner with a cause of death as self-inflicted hanging and the manner of death suicide.

All individual County Defendants have filed Affidavits concerning the relationship with Inmate Carlos while she was confined in the York County Prison.

Four County Defendants affirmed under oath that they had no personal contact with Inmate Carlos. Two of the County Defendants were Correctional Officers who managed the daily confinement of Inmate Carlos including October 2013. Both denied knowing or recognizing that she was capable of committing suicide and specifically denied knowing that she was required to be confined in a suicide resistant cell or needed to be given suicide prevention measures following a verbal altercation with another inmate who had told Inmate Carlos to "kill herself."

The Correctional Counselor for Inmate Carlos provided an Affidavit and counselor notes that portray Inmate Carlos' aggressive behavior but also denied knowing that she was a substantive risk for committing suicide.

Captain Carl Neeper's only contact with Inmate Carlos was as a member of the Program Review Committee. He represented the security side of the prison in his participation on the Committee.

Patrick Gallagher, the mental health counselor, was a member of this five (5) person committee.

Captain Neeper affirmed that during the program reviews, even up to the week before October 23, 2013, Inmate Carlos did not express any statement or provided any information that she was suicidal.

Captain Neeper affirmed that he did not know that Inmate Carlos required placement in a suicide resistant cell even when she was off psych obs or that if she was in a verbal altercation with another inmate that she would become suicidal.

## DEPUTY WARDEN CLAIR DOLL

Deputy Warden Doll provided a sworn Affidavit that he had been the Deputy Warden of Treatment at the York County Prison since August 2008. He affirmed that he was responsible to oversee the inmate counselors. He also confirmed that he was not responsible for providing detailed supervision of the medical treatment including mental health treatment that was provided to inmates confined in the York County Prison. The medical and mental health services were provided at the York County Prison by an independent contractor, PrimeCare Medical, Inc. who is named as a defendant in this action.

Deputy Warden Doll stated that supervisory authority over housing decisions that concerned suicide precautions and psychiatric observations was provided only by the licensed staff of PrimeCare Medical, Inc. Only

licensed staff of PrimeCare Medical, Inc. were authorized to place inmates on psychiatric observation or remove them from that status.

This case, according to Deputy Warden Doll, presents a situation where Inmate Carlos was a challenging inmate to manage. She was suffering from mental illness and prone to violence, agitation, controversy, and had trouble just being in prison and associating with other inmates and even the staff. Her mental illness and propensity to violence created a serious need for a balancing act to make certain she did not harm other inmates or the staff as well as herself.

Deputy Warden Doll's Affidavit explains the care provided to Inmate Carlos was appropriate under the circumstances of her confinement. The Affidavit is incorporated herein and made a part hereof.

## II.   **QUESTIONS PRESENTED**

A.   **For purposes of qualified immunity, does a high security risk inmate with a history of mental illness who has been cleared by medical professionals and removed from psychiatric observation following a questionable suicide attempt two (2) months and thirteen (13) days earlier have a clearly settled constitutional right to a suicide resistant cell and immediate placement on suicide watch by her attending Correctional Officers when told by another inmate during an argument that she "should kill herself"?**

B.   **Should summary judgment be entered in favor of the County Defendants as there is no genuine issues as to the facts and the Defendants are entitled to judgment as a matter of law.**

9

## STANDARD OF REVIEW

To survive a summary judgment motion, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Company v. Zenith Radio, 475 U.S. 574, 586 (1986).

The moving party for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Young v. Quinlan, 960 Fed. 2d. 351, 357 (3rd Cir. 1992).

The Supreme Court has ruled that F.R.C.P 56c "mandates the entry of summary judgment after adequate time for discovery and upon motion against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court further stated that Rule 56e "... requires the non-moving party go beyond the pleadings and by (his) own affidavits or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id at 324. (Supreme Court in Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) has held that the opposing party must deduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually

10

unsupported allegations contained in its pleadings.  See Celotex, 477 U.S. at 325.)   Further, an opposing party cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit. Liberty Lobby, 477 U.S. at 256-57.

"The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "As to materiality, it is the substantive law's identification of which facts are critical and which facts are irrelevant that govern."  Gabai v. Jacoby, 800 F. Supp. 1149, 1153 (S.D.N.Y. 1992).  A dispute is genuine only if there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 242.

In sum, if the Court determines that the record taken as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  Gabai, 800 Fed. Supp. at 1154.

## THE CIVIL RIGHTS CLAIM

The basic claim of Plaintiff is that suicide prevention policies and efforts to prevent the inmate's suicide were inadequate and that each

named Defendant should have perceived and intervened to have prevented the self-inflicted harm.

Plaintiff's allegations are based on the general concept that because of the inmate's illness a formal, written treatment plan was constitutionally necessary to protect her from suicide under the law.

Plaintiff alleges that the plan required the Defendant to recognize that moving the inmate from one cell to another would have made her suicidal and that she was entitled to a suicide resistant cell even when not on special supervision that was ordered by the medical staff.

Plaintiff also faults the Correctional Officers for not reacting appropriately as a result of Inmate Carlos' engagement in a heated argument with another inmate in which she was told to "kill herself". Finally, Plaintiff claims that any delay in administering the psychotropic medication no matter if the delay was caused by Inmate Carlos or how long it occurred before the suicide, that delay would cause her to become suicidal and all Defendants should have and did realize that she was suicidal.

However, the evidence and the law does not support this position.

## QUALIFIED IMMUNITY

Plaintiff targets the failure of the County Defendants to provide Inmate Carlos suicide protection by providing a suicide resistant cell at all

12

times and the failure to seek mental health treatment on October 23, 2013 for her following a dispute with another inmate who told Inmate Carlos to go "kill herself."

The Plaintiff's focus on possible suicide risk factors confuses risk of suicide as being the same as the manifestation of suicidal tendencies. This focus is fatal to Plaintiff's claim.

The County Defendants claim qualified immunity. If there was no clearly established constitutional right or statutory right to a suicide resistant cell and an immediate requirement to get mental health treatment after a verbal dispute with another inmate who told Inmate Carlos to "kill herself", then the 1983 claim is barred by the defense of qualified immunity.

It is submitted that the evidence developed in discovery and the Affidavits filed with this Motion justifies the application of qualified immunity:

1.  Inmate Carlos was a high security risk with a history of mental illness.

2.  On October 23, 2013, Inmate Carlos was cleared from psychiatric observation by the prison's contract mental health professionals.

3.  The medical clearance was made two (2) months and thirteen (13) days after a questionable suicide attempt that was followed with close observation and an evaluation by the mental health professionals and the professional determination that Inmate Carlos was stable on her medications and was not demonstrating any suicidal tendencies.

4.     There was no clearly settled constitutional or statutory right requiring Inmate Carlos to be housed in a suicide resistant cell pursuant to a formal written suicide prevention plan.

5.     There was no clearly settled constitutional or statutory right that required the movement of Inmate Carlos from a suicide resistant cell on October 21, 2013 without a medical professional clearance.

6.     There was no clearly settled constitutional or statutory right to an assessment of Inmate Carlos that guaranteed she would always be placed in a suicide resistant cell.

7.     There was no clearly settled constitutional or statutory right that required the York County Defendants to ensure that Ms. Carlos would always be treated as though she were a suicidal at all times in the prison.

8.     There was no clearly settled constitutional or statutory right that required York County to train, supervise, and discipline medical, mental health, and correctional personnel at York County Prison so as to ensure that Inmate Carlos would not commit suicide.

In Procunier v. Navarette, 434 U.S. 555 (1978), the Supreme Court of the United States determined that qualified immunity would be extended to prison officials. The defense of qualified immunity was recently reaffirmed by the United States Supreme Court in Taylor v. Barkes, _____ U.S. _____, 135 S.Ct. 2042 (2015). In reversing the 3rd Circuit Court of Appeals that denied prison officials qualified immunity in the suicide death of a confined inmate, the Court wrote:

14

Qualified immunity shields governmental officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. Reichle v. Howards, 566 U.S. ____, 132 S.Ct. 2088, 2093 (2012). To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates the right. . . . When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law. Ashcroft v. al-Kidd, 563 U.S. ____, 131 S.Ct. 2074, 2085 . . . We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. Id., at 131 S.Ct. at 2083. Id., page 2044.

No decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols. And "to the extent that a robust consensus of cases of persuasive authority in the Court of Appeals could itself clearly establish the federal respondent alleges." City and County of San Francisco v. Sheehan, 575 U.S. ____, 135 S.Ct. 1765, (2015). The weight of authority at the time of Barkes death suggests such a right did not exist. See e.g. Comstock v. McCrary, 273 F.3d 693, 702 (C.A.6 2001) ("the right to medical care for serious medical needs does not encompass the right to be screened correctly for suicidal tendencies") . . . Tittle v. Jefferson City, Comm'n. 10 F.3d 1535, 1540 (C.A.11 1994) (alleged weaknesses in the [suicide] screening process, the training of deputies, and the supervision of prisoners did not amount to a showing of deliberate indifference toward the rights of prisoners); Burns v. Galveston, 905 F.2d 100, 104 (C.A.5 1990)) (rejecting the proposition that "the right of detainees to adequate medical care includes an absolute right to psychological screening); Bulcher v. Oliver, 898 F.2d 32, 34-35 (C.A.4 1990)) ("the general right of pretrial detainees to receive basic medical care does not place

15

upon jail officials the responsibility to screen every detainee for suicidal tendencies.")

There are three (3) questions that are involved in determining the applicability of qualified immunity. First, was there a settled constitution rule at the time of the challenged conduct? Two, if so, should the Defendants have known of the rule? Three, if they should have known of the rule, should they have known their conduct violated the rule. Prison officials can only be responsible for clearly settled law which they had a duty to know. Procunier v. Navarette, 434 U.S. 555 (1978), Taylor v. Barkes, Supra. p. 2024. It is summited that based upon the uncontested facts of this case all individual County Defendants should be granted qualified immunity.

## PLAINTIFF'S 1983 CLAIMS

In the event the Court denies the individual County Defendants qualified immunity, it is submitted that nonetheless summary judgment should be granted to York County and the individual York Defendants.

## COUNTY OF YORK

The County of York does not oversee the York County Prison. Between April 2011 and 2013, there is no policy or custom of York County that caused or contributed to the death of Inmate Carlos.

Inmate Carlos Complaint identifies York County as a party defendant and alleges "Defendant York County is a municipal government entity in the

16

Commonwealth of Pennsylvania which manages and oversees the York County Prison, YCP, 3400 Concord Road, York, Pennsylvania."

York County denied Paragraph 9 and denies that it operates, controls, or promulgates policies for York County Prison.

The responsibility for operating the York County Prison has been specially delegated to the Board of Inspectors of the York County Prison, also known as the York County Prison Board by the Act of August 11, 2009, P.L. 147, No. 33, Section 7, 61 Pa. CSA §1731, et seq., which provides that:

> The Board and the officers adopted by it "…shall provide for the safekeeping, discipline and employment of inmates and the government and management of the correctional institution," 61 Pa. C.S.A. §1731(3).

The act also provides:

> …The Board shall make such rules and regulations for the government and management of the county correctional institution and the safekeeping, discipline, and employment of the inmates as maybe deemed necessary.  PA C.S.A. §1731(b)(1).

It is irrefutable that the municipal government entity responsible for the government, management and requirement for making rules is the Board of Inspectors of York County, a/k/a York County Prison Board.

In <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d. 611 (1978), it was held that "congress did not intend municipalities to be held liable

17

unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691.

It is the prison board not the County of York that was directed by the legislature **to meet monthly and to make such rules and regulations for the government and management of the prison and the safekeeping discipline and employment of the prisons as may be deemed necessary**. The Act of August 11, 2009 PL 147, No. 33, §7, 61 Pa. C.S.A. §1732 (b)(1).

In Herman v. County of York, 1:05CV-2501, in the United States District Court for the Middle District of Pennsylvania, Judge Jones addressed the issue of whether York County was an appropriate party in a civil rights suicide case.

Judge Jones held:

> However, as the county defendants aptly argue the contract provision upon which plaintiff relives is not persuasive in light of 61 P.S. §408 (now 61 PA C.S.A. §1731 et seq.), as indicated in our April 18, 2007 Order, §408 provides that the safekeeping discipline and employment of prisoners and the government in management of said institution (the County) shall be exclusively vested... in the board created thereby, the prison board 61 PA §408(a)(1) emphasis added. "...accordingly we conclude that the county cannot be liable to Plaintiff based on its own policies."

## YORK COUNTY INDIVIDUAL DEFENDANTS

The Third Circuit Court of Appeals considered the issue of prison suicide in Colburn v. Upper Darby Township et al., 838 F.2d 663 (3d. Cir. 1988) cert denied 489 U.S. 1065, 109 S.Ct. 1338, 103 F.2d 808 (1989);

cited as <u>Colburn I</u> and again in <u>Colburn v. Upper Darby Township, et al.</u>, 946 F.2d 1017 (C.A.3 Pa. 1991) which is identified as <u>Colburn II</u>.

In <u>Colburn II</u>, the Court recognized that <u>Colburn I</u>, had established the standard of liability to be applied in this Circuit in prison suicide cases. It wrote:

> Thus a plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a particular vulnerability to suicide; (2) the custodial officer or the officers knew or should have known of that vulnerability; and (3) those officers "acted with reckless indifference to the detainee's particular vulnerability." Supra. p. 1023.

> The Court also explained that:

> "The requirement of a "particular vulnerability to suicide" speaks to the degree of risk inherent in the detainee's condition. As several of our sister circuits have recently pointed out, the requirement of "reckless or deliberate indifference" implies that **there must be a "strong likelihood, rather than a mere possibility, that self-inflicted harm will occur.** See e.g. <u>Torraco v. Maloney</u>, 923 F.2d 231, 236 (1st Cir. 1991); <u>Popham v. City of Talladegra</u>, 908 F.2d 1561, 1563 (11th Circ. 1990) continuing, even where a strong likelihood of suicide exists it must be shown that the custodial officers knew or should have known of that strong likelihood as the latter portion of this phrase from <u>Colburn I</u> indicates it is not necessary that the custodian have a subjective application of the detainee's "particular vulnerability". Nevertheless, there can be no reckless or deliberate indifference to that risk **unless there is something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide** . . . p. 1024-1025.

And finally: ". . . thus should have known" as used in
Colburn I, is a phrase of art with a meaning distinct from
its usual meaning in the context of the law of torts. It does
not refer to a failure to note a risk that would be perceived
with the use of ordinary prudence. It can note something
more than a negligent failure to appreciate the risk of
suicide presented by the particular detainee, though
something less than subjective appreciation of that risk.
**The "strong likelihood" of suicide must be "so
obvious that a lay person would easily recognize the
necessity for" preventive action**, MCCI, 834 F.2d at
347; **the risk of self-inflicted injury must be not only
great, but also sufficiently apparently that a lay
custodian's failure to appreciate it evidences an
absence of any concern for the welfare of his or her
charges."** (Emphasis ours) Supra. p. 1025.

However, "the due process clause is simply not implicated
by a negligent act of an official. Daniels v. Williams, 474
U.S. 327, 328 106 S.Ct. 662, 88 L.Ed 2d. 662 (1986). To
recover asserting Eight Amendment claims under §1983,
a plaintiff must establish *deliberate indifference* on the
part of municipal officials to a serious psychological need,
Estelle, 429 U.S. at 104; Freedman v. City of Allentown,
853 F.2d 1111, 1115 (3rd Cir. 1988). Under this standard,
"a prison custodian is not the guarantor or a prisoner's
safety." Freement, Id. The Supreme Court explained that
an official shows deliberate indifference when he "knows
of and disregards an excessive risk to inmate health or
safety: the official must both be aware of facts from which
the inference could be drawn that a substantial harm
exists and he must also draw the inference." Farmer v.
Brennen, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.
2d. 811 (1994).

> Allegations amounting only to malpractice or mere negligence (i.e. a lack of due care) have consistently been held not to raise issues of constitutional import. Id.; see Estelle, 429 U.S. at 106 FN 14. "Where the plaintiff has received some care inadequacy or impropriety of care that was given will not support an Eight Amendment claim, Norris v. Frame, 585 F.2d. 1183, 1186 (3d. Cir. 1978)." P. 4-7.

One federal case held that even where a pretrial detainee had a history of suicide attempts but displayed no suicidal tendencies while being held in the defendant jail, there was no deliberate indifference, Bowens v. City of Atmore, 171 F. Supp. 2d. 1244 (SD ALA 2001) affirmed 275 F3d 57 (11th Cir. 201).

It is submitted that the uncontested facts demonstrated by the Depositions, Affidavits, and other exhibits filed in this case demonstrate that none of the named individual County Defendants had a strong likelihood of a belief that Inmate Carlos would commit suicide that was so obvious that they would easily recognize the necessity for preventive action. The evidence does not demonstrate that the risk of a self-inflicted injury was substantial because there was no evidence demonstrating suicidal tendencies in Inmate Carlos' words or behavior. At best, the evidence only demonstrates that it was a mere possibility.

It is also submitted that there is no evidence that indicates that any of the Defendants had drawn the inference that there was a substantial risk of

harm being posed by this inmate's conduct. Her suicide was unexpected and unforeseeable.

## III. CONCLUSION.

Summary judgment should be granted to the County of York and all individual County Defendants.


Respectfully submitted,


By:    /s/   Donald L. Reihart, Esquire
       Donald L. Reihart, Esq.
       Sup. Ct. I.D. #07421
       28 E. Market St. 2nd floor
       York, PA  17401
       Telephone (717) 755-2799
       Email: email@reihartlaw.com
       dlreihart@yorkcountypa.gov
       Assistant Solicitor for the
       County of York and
Date: January 30, 2017        Counsel for the Defendant

22

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANGELA CARLOS, as
ADMINISTRATRIX of the ESTATE of
TIOMBE KIMANA CARLOS

     **Plaintiff**

v.

YORK COUNTY; PRIMECARE
MEDICAL, INC.; PAMELA
ROLLING-MAZZA, MD; PATRICK
GALLAGHER, LPC; ROBERT
DAVIS,MD; HOLLY A. SNYDER, RN;
AIMEE LEIPHART, LPN; MEDICAL
JOHN DOES 1-10; DEPUTY WARDEN
CLAIR DOLL; CAPTAIN CARL
NEEPER; CORRECTIONAL OFFICER
ERIKA COLLINS; CORRECTIONAL
OFFICER GRISSELL SANTOS-
HEREDIA; CORRECTIONAL
COUNSELOR MCNICHOLAS;
CORRECTIONAL COUNSELOR
CRIST; CORRECTIONAL
COUNSELOR NADEAU;
CORRECTIONAL COUNSELOR J.
JACKSON;CORRECTIONAL
COUNSELOR TRIG, CORRECTIONAL
OFFICER JOHN DOES 1-10:

     **Defendants**

CIVIL ACTION
No. 1:15-CV-01994

(Judge Caldwell)

(Magistrate Judge Saporito)

## CERTIFICATE OF WORD COUNT, PURSUANT TO
## MIDDLE DISTRICT LOCAL RULE 7.8

**Defendants' Brief In Support of Summary Judgment** does

not exceed a word count of 5,000 words. The word count is <u>4782</u> words,

according to the word count feature of the word-processing system used to

prepare the Brief.

Respectfully submitted,

By: /s/ DONALD L. REIHART, ESQUIRE
Donald L. Reihart, Esq.
Sup. Ct. I.D. #07421
28 E. Market St. 2nd floor
York, PA 17401
Telephone (717) 755-2799
Email: email@reihartlaw.com
dlreihart@yorkcountypa.gov
Assistant Solicitor for the
County of York and Counsel
for the Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANGELA CARLOS, as
ADMINISTRATRIX of the ESTATE of
TIOMBE KIMANA CARLOS

      **Plaintiff**

**v.**

YORK COUNTY; PRIMECARE
MEDICAL, INC.; PAMELA
ROLLING-MAZZA, MD; PATRICK
GALLAGHER, LPC; ROBERT
DAVIS,MD; HOLLY A. SNYDER, RN;
AIMEE LEIPHART, LPN; MEDICAL
JOHN DOES 1-10; DEPUTY WARDEN
CLAIR DOLL; CAPTAIN CARL
NEEPER; CORRECTIONAL OFFICER
ERIKA COLLINS; CORRECTIONAL
OFFICER GRISSELL SANTOS-
HEREDIA; CORRECTIONAL
COUNSELOR MCNICHOLAS;
CORRECTIONAL COUNSELOR
CRIST; CORRECTIONAL
COUNSELOR NADEAU;
CORRECTIONAL COUNSELOR J.
JACKSON; CORRECTIONAL
COUNSELOR TRIG, CORRECTIONAL
OFFICER JOHN DOES 1-10:

      **Defendants**

: CIVIL ACTION
: No. 1:15-CV-01994
:
: (Judge Caldwell)
:
: (Magistrate Judge Saporito)

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  I hereby certify that a copy of the foregoing document has been served on the non-CM/ECF participants by depositing the same in the United States Mail, postage prepaid, in York, Pennsylvania.

David Rudowsky, Esquire
Jonathan H. Feinberg, Esquire
Susan M. Lin, Esquire
Kairys Rudowsky Messng & Feinberg, LLP
The Cast Iron Building, Ste. 501S
718 Arch Street
Philadelphia, PA  19106
drudovsky@krlawphila.com
jfeinberg@krlawphila.com
slin@krlawphila.com
*Attorneys for Plaintiffs*

John R. Ninosky, Esquire
Johnson Duffie Stewart & Weidner
Attorney ID:  7800
301 Market Street-P.O. Box 109
Lemoyne, PA  17043-0109
Phone:  717-761-4540
Email:  jm@jdsw.com
*Attorney for PrimeCare Medical Defendants*

Brandon R. Conrad, Esquire
Harlan W. Glasser, Esquire
Saxton & Stump
15 South State Street
Leola, PA  17540
brc@saxtonstump.com
hwg@saxtonstump.com
*Attorney for Patrick Gallagher, LPC*


                              Respectfully submitted,

                         By:   /s/  DONALD L. REIHART, ESQUIRE
                              Donald L. Reihart, Esq.
                              Sup. Ct. I.D. #07421
                              28 E. Market St. 2nd floor
                              York, PA  17401
                              Telephone (717) 755-2799
                              Email: email@reihartlaw.com
                              dlreihart@yorkcountypa.gov
                              Assistant Solicitor for the
                              County of York and Counsel
                              for the Defendants

Date: January 30, 2017