# EXHIBIT P

1

CorEMR - Carlos, Tiombe (i) :: Sick Calls | v5.0.0                          Page 2 of 5

Recategorize to [ Mental Health ∨ ]

**06-13-2011 13:51 with Patrick Gallagher LPC (Task Priority: 1) [Last Updated: 06-13-2011 13:55]**

**Related Problems**

- PSYCHOLOGICAL / MENTAL HEALTH,

**Forms Completed**

| Form | Status | Actions |
|------|--------|---------|
| Mental Status Exam | Completed on 06/13/2011 13:53 | |

**Subjective:** Pt requeted to speak to me. Pt had concerns about events surrounding her alleged attack on staff. Pt had been promised a call by immigration, this did not occur

**Objective:** Pt mood anxiousm, affect congruent to mood. Pt thought process intact, no overt psychosis,pPt denied SI and HI.Pt oriented X 4 and cooperative,Pt insight and judgment intact.Pt is future oriented

**Assessment:** Stable Mental Axis I: Schizophrenia, Paranoid Type

**Plan:** Provided general support.

**Education:** *blank*

**Locked:** Yes
Interpreter used: No

Entered by: Patrick Gallagher LPC at staff request
Add Addendum

Recategorize to [ Mental Health ∨ ]

→ **06-09-2011 08:53 with Patrick Gallagher LPC (Task Priority: 1) [Last Updated: 06-09-2011 09:01]**

**Related Problems**

- SEGREGATION,

**Forms Completed**

| Form | Status | Actions |
|------|--------|---------|
| Relocation Pass (Revised 4/17/15) | Completed on 06/09/2011 09:00 | |
| Mental Status Exam | Completed on 06/09/2011 08:56 | |

**Subjective:** f/u l/m placed on suicide d/t confrontation with staff, uncooperative c medical staff ADDITION:Please fill out Seg Screening form

**Objective:** Pt . mood euthymic affect approrpiate to mood.Pt. thought prIcess intact, no overt psychosis.Pt denied SI and HI.Pt oriented x 4 and cooperative. Pt insight and judgement intact.Pt isfuture oriented.

**Assessment:** Not suicidal Mental Axis I: Schizophrenia, Paranoid Type

**Plan:** Discontinue suicide watch.Place on psychiatric observation.Permitted all items allowed in BAU

**Education:** *blank*

**Locked:** Yes
Interpreter used: No

Entered by: Patrick Gallagher LPC at staff request
Add Addendum

Recategorize to [ Mental Health ∨ ]

**06-06-2011 10:46 with Pamela Rollings-Mazza MD [Last Updated: 06-06-2011 10:49]**

(No Related Actions)

**Subjective:** Recheck 4/25/11- Haldol dec-beginning of month- c/o headaches-

**Locked:** Yes
Interpreter used: No

PCM00636

# EXHIBIT Q

3



# Mental Status Exam

**Tiombe (i) Carlos #172760-1**

| | |
|---|---|
| JMS ID: | 172760 |
| SSN: | - |
| DOB: | |
| Age: | 36 |
| Agency: | INS |

| | |
|---|---|
| Location: | [OUT] |
| Ethnicity: | - |
| Interviewer: | Gallagher LPC, Patrick (08/08/2012 12:38) |

| Date / Time | | 08-08-2012 12:30 pm |
|---|---|---|
| **Mental Status Exam** | | |
| Appearance | ☐ Age Appropriate<br>☐ Well-groomed<br>☐ Disheveled, Unkempt<br>☐ Bizarre<br>☑ Other | WNL |
| Orientation | ☑ Person<br>☑ Place<br>☑ Time<br>☑ Situation | |
| Behavior: Eye Contact | ☑ Good<br>☐ Limited<br>☐ Avoidant<br>☐ None | |
| Behavior: Motor Activity | ☐ Relaxed and Calm<br>☑ Restless<br>☐ Rigid<br>☐ Agitated<br>☐ Slumped posture<br>☐ Tense<br>☐ Tics<br>☐ Tremors | |
| Manner: | ☑ Appropriate<br>☐ Trusting<br>☑ Cooprative<br>☐ Inappropriate<br>☐ Withdrawn<br>☐ Agitated<br>☐ Hostile<br>☐ Guarded<br>☐ Defensive<br>☐ Restless<br>☐ Manic<br>☐ Minimizes symptoms<br>☐ Exaggerates symptoms | |
| Speech: (rate, volume, etc.) | ☑ Normal<br>☐ Incoherent<br>☐ Pressured | |

PCM00395

| | | |
|---|---|---|
| | ☐ Too detailed | |
| | ☐ Slurred | |
| | ☐ Slowed | |
| | ☐ Halting | |
| Mood: | ☐ Normal | |
| | ☐ Depressed | |
| | ☐ Irritable | |
| | ☑ Anxious | |
| | ☐ Euphoric | |
| | ☐ Fatigued | |
| | ☐ Angry | |
| Affect | ☐ Broad | Congruent to mood |
| | ☐ Tearful | |
| | ☐ Blunted | |
| | ☐ Constricted | |
| | ☐ Flat | |
| | ☐ Labile | |
| Sleep: | ☐ Good | |
| | ☑ Fair | |
| | ☐ Poor | |
| | ☐ Increased | |
| | ☐ Decreased | |
| Appetite | ☐ Good | |
| | ☑ Fair | |
| | ☐ Poor | |
| | ☐ Increased | |
| | ☐ Decreased | |
| Thought Process | ☑ Logical, Organized | |
| | ☐ Illogical | |
| | ☐ Flight of Ideas | |
| | ☐ Circumstantial | |
| | ☐ Loose associations | |
| | ☐ Rambling | |
| | ☐ Obsessive | |
| | ☐ Blocking | |
| | ☐ Tangential | |
| Thought Content: | ☑ Normal | |
| | ☐ Impaired | |
| | ☐ Paranoid | |
| | ☐ Obsessive | |
| | ☐ Fearful/Phobic | |
| | ☐ Delusional | |
| | ☐ Other, Describe: | |
| Perception/Hallucinations: | ☑ None Evident | |
| | ☐ Auditory | |
| | ☐ Command | |
| | ☐ Olfactory | |

PCM00396

# EXHIBIT R

## Tiombe (i) Carlos



Sex: Female
DOB:
Alien ID:

Agency: INS
Location: [OUT]
JMS ID: 172760

Allergies:
PCN, Lithium, and Thorazine

**#172760-1**

Tasks
Historic (155)

[Add New Task] [Show All Categories ∨]

| First 12-10-2012 | Mental Health [Medical] At staff request Review psych obs status [Created by: Gallagher LPC, Patrick at 12-10-2012 15:13:32] [Completed by: Gallagher LPC, Patrick at 12-10-2012 15:26:14] | Related Problems: PSYCHOLOGICAL / MENTAL HEALTH | Update Notes • Completed Appointment - Sick call completed 12-10-12 at 3:26 pm by Patrick Gallagher LPC [Gallagher LPC, Patrick on 12-10-2012] |
|---|---|---|---|
| First 12-03-2012 | Mental Health [Medical] At staff request Review psych obs status. [Created by: Gallagher LPC, Patrick at 12-03-2012 15:38:00] [Completed by: Gallagher LPC, Patrick at 12-03-2012 15:41:42] | Related Problems: PSYCHOLOGICAL / MENTAL HEALTH | Update Notes • Completed Appointment - Sick call completed 12-3-12 at 3:41 pm by Patrick Gallagher LPC [Gallagher LPC, Patrick on 12-03-2012] |
| First 11-28-2012 | Mental Health [Medical] At staff request ffu-scs- pat [Created by: Taylor, LPC, Shannon at 11-27-2012 06:16:19] [Completed by: Gallagher LPC, Patrick at 11-28-2012 13:13:30] | Related Problems: PSYCHOLOGICAL / MEDICATION - ASSESSMENT , PSYCHOLOGICAL / MENTAL HEALTH | Update Notes • Completed Appointment - Sick call completed 11-28-12 at 1:13 pm by Patrick Gallagher LPC [Gallagher LPC, Patrick on 11-28-2012] |
| First 11-12-2012 | Mental Health [Medical] At staff request placed on suicide due to altercation and psych . meds ADDITION: Please fill out Seg Screening form [Created by: Glackin, RN, Emily at 11-11-2012 18:57:50] [Completed by: Gallagher LPC, Patrick at 11-12-2012 10:23:30] | Related Problems: PSYCHOLOGICAL / MEDICATION - ASSESSMENT , PSYCHOLOGICAL / MENTAL HEALTH , SEGREGATION | Update Notes • Completed Appointment - Sick call completed 11-12-12 at 10:23 am by Patrick Gallagher LPC [Gallagher LPC, Patrick on 11-12-2012] |
| Second 11-12-2012 | Mental Health At staff request New Segregated Inmate [Created by: Glackin, RN, Emily at 11-11-2012 18:57:00] [Completed by: Taylor, LPC, Shannon M at 11-12-2012 06:18:13] | | Update Notes • Completed Appointment - Completed Appointment [Taylor, LPC, Shannon on 11-12-2012] |
| First 11-07-2012 | Nurse Sick Call [Medical] At staff request wants ibu for pain in neck and headache [Created by: Cuti, LPN, | Related Problems: MEDICATION REVIEW , scs | Update Notes • Completed Appointment - Completed Appointment [Schmuck, LPN, Angela on 11-07-2012] |

PCM00747

# EXHIBIT S

## Mental Status Exam

| | | | |
|---|---|---|---|
| | JMS ID: | 172760 | Location: [OUT] |
| | SSN: | - | Ethnicity: - |
| | DOB: | ▓▓▓▓▓ | Interviewer: Gallagher LPC, Patrick (11/12/2012 10:14) |
| **Tiombe (i) Carlos** | Age: | 36 | |
| **#172760-1** | Agency: | INS | |

| Date / Time | | 11-12-2012 10:00 am |
|---|---|---|
| **Mental Status Exam** | | |
| Appearance | ☐ Age Appropriate | WNL |
| | ☐ Well-groomed | |
| | ☐ Disheveled, Unkempt | |
| | ☐ Bizarre | |
| | ☑ Other | |
| Orientation | ☑ Person | |
| | ☑ Place | |
| | ☑ Time | |
| | ☑ Situation | |
| Behavior: Eye Contact | ☑ Good | |
| | ☐ Limited | |
| | ☐ Avoidant | |
| | ☐ None | |
| Behavior: Motor Activity | ☑ Relaxed and Calm | |
| | ☐ Restless | |
| | ☐ Rigid | |
| | ☐ Agitated | |
| | ☐ Slumped posture | |
| | ☐ Tense | |
| | ☐ Tics | |
| | ☐ Tremors | |
| Manner: | ☑ Appropriate | |
| | ☐ Trusting | |
| | ☑ Cooperative | |
| | ☐ Inappropriate | |
| | ☐ Withdrawn | |
| | ☐ Agitated | |
| | ☐ Hostile | |
| | ☐ Guarded | |
| | ☐ Defensive | |
| | ☐ Restless | |
| | ☐ Manic | |
| | ☐ Minimizes symptoms | |
| | ☐ Exaggerates symptoms | |
| Speech: (rate, volume, etc.) | ☑ Normal | |
| | ☐ Incoherent | |
| | ☐ Pressured | |

| | | |
|---|---|---|
| | ☐ Too detailed | |
| | ☐ Slurred | |
| | ☐ Slowed | |
| | ☐ Halting | |
| Mood: | ☐ Normal | |
| | ☑ **Depressed** | |
| | ☐ Irritable | |
| | ☑ **Anxious** | |
| | ☐ Euphoric | |
| | ☐ Fatigued | |
| | ☐ Angry | |
| Affect | ☐ Broad | Congruent to mood. |
| | ☐ Tearful | |
| | ☐ Blunted | |
| | ☐ Constricted | |
| | ☐ Flat | |
| | ☐ Labile | |
| Sleep: | ☐ Good | |
| | ☑ Fair | |
| | ☐ Poor | |
| | ☐ Increased | |
| | ☐ Decreased | |
| Appetite | ☐ Good | |
| | ☑ Fair | |
| | ☐ Poor | |
| | ☐ Increased | |
| | ☐ Decreased | |
| Thought Process | ☑ Logical, Organized | |
| | ☐ Illogical | |
| | ☐ Flight of Ideas | |
| | ☐ Circumstantial | |
| | ☐ Loose associations | |
| | ☐ Rambling | |
| | ☐ Obsessive | |
| | ☐ Blocking | |
| | ☐ Tangential | |
| Thought Content: | ☑ Normal | |
| | ☐ Impaired | |
| | ☐ Paranoid | |
| | ☐ Obsessive | |
| | ☐ Fearful/Phobic | |
| | ☐ Delusional | |
| | ☐ Other, Describe: | |
| Perception/Hallucinations: | ☑ None Evident | |
| | ☐ Auditory | |
| | ☐ Command | |
| | ☐ Olfactory | |

| | | |
|---|---|---|
| | ☐ Gustatory | |
| | ☐ Tactile | |
| | ☑ Visual | |
| Delusions: | ☑ None Evident | |
| | ☐ Thoughts being controlled | |
| | ☐ Actions being controlled | |
| | ☐ Persecutory | |
| | ☐ Grandiose | |
| | ☐ Infidelity | |
| | ☐ Somatic | |
| | ☐ Paranoid | |
| Suicide Risk | ☑ None | |
| | ☑ Slight | |
| | ☐ Moderate | |
| | ☐ Significant | |
| | ☐ Extreme | |
| | ☐ No plan | |
| | ☐ Plan, describe: | |
| Suicide Risk (Plan): | ◉ No Plan | |
| | ○ Plan, describe: | |
| Violence Risk: | ◉ None | |
| | ○ Slight | |
| | ○ Moderate | |
| | ○ Significant | |
| | ○ Extreme | |
| Violence Risk (Plan): | ◉ No Plan | |
| | ○ Plan, describe: | |
| Judgment: | ◉ Intact | |
| | ○ Impaired | |
| | ○ Mild | |
| | ○ Moderate | |
| | ○ Severe | |
| | ○ Impulsive | |
| | ○ Immature | |
| | ○ Age-appropriate | |
| Insight regardless awareness of presence of the disorder: | ◉ Intact | |
| | ○ Limited | |
| | ○ Very limited | |
| | ○ Fair | |
| | ○ None | |
| Sensorium (Level of Consciousness): | ◉ Alert | |
| | ○ Drowsy | |
| | ○ Stupor | |
| | ○ Distracted | |
| | ○ Delayed Response | |
| Memory: | ☑ Intact | |
| | ☐ | |

PCM00403

CorEMR - Tiombe (i) Carlos :: Mental Status Exam | v5.0.0          Page 4 of 6

| | | |
|---|---|---|
| | Immediate Recall | |
| | Impaired | |
| | Remote | |
| Intelligence | Average | |
| | Above Average | |
| | Below Average | |
| | Unable to Establish | |

**Symptom Checklist:**

**Instruction: Check Cluster, and all symptoms in cluster that apply. Add those not appearing under "Other."**

| | | |
|---|---|---|
| I. Depression: | Depressed Affect | |
| | Withdrawal / Social Isolation | |
| | Relationship Impairment | |
| | Difficulty Functioning at a job | |
| | Impaired Sleep | |
| | Psychomotor Agitation | |
| | PSychomotor Retardation | |
| | Impaired Appetite | |
| | Weight Gain / Loss | |
| | Poor Self Esteem | |
| | Emotional Agitation | |
| | Crying / Tearfulness | |
| | Flat Affect | |
| | Helplessness | |
| | Hopelessness | |
| | Guilt / Self Blame | |
| | Anger | |
| | Suidical Ideation / Homocidal Ideation | |
| | Impaired Concentration | |
| | Memory Impairment | |
| | Mental Confusion | |
| | Psychotic Symptoms (specify): | |
| | Other (specify): | |
| II. Anxiety: | Anxiety | |
| | Psychomotor Agitation | |
| | Impaired Sleep | |
| | Panic Attacks | |
| | Physical Symptoms of Anxiety (sweating, rapid heart rate, dizziness, hyperventilation, etc.) | |
| | Avoidance Behavior | |
| | Compulsive Behavior | |
| | Obsessive Thoughts | |
| | Other (specify): | |
| III. Mood: | Euphoric | |
| | Impulsive | |
| | Homicial Ideation | |
| | Grandiose | |
| | Psychomotor Agitation | |

| | | |
|---|---|---|
| | ☐ Manic | |
| | ☐ Depressed | |
| | ☐ Delusional | |
| | ☐ Other (specify): | |
| IV. Thought: | ☐ Hallucinations | |
| | ☐ Psychomotor Agitation | |
| | ☐ Psychomotor Retardation | |
| | ☐ Suicidal Ideation/Homicial Ideation | |
| | ☐ Inappropriate / Bizarre Behavior | |
| | ☐ Delusions | |
| | ☐ Inappropriate Conversation | |
| | ☐ Impaired Relationships | |
| | ☐ Flat Affect | |
| | ☐ Withdrawn / Socially isolated | |
| | ☐ Difficulty Functioning at a job | |
| | ☐ Other (specify): | |
| V. Personality: | ☐ Attention seeking behavior | |
| | ☐ Detachment from social relationships | |
| | ☐ Discomfort in social relationships | |
| | ☐ Restricted range of affect | |
| | ☐ Excessive need to be taken care of | |
| | ☐ Cognitive distortions | |
| | ☐ Excessive emotionality | |
| | ☐ Grandiosity | |
| | ☐ Hypersensitivity to the evalution | |
| | ☐ Impulsivity | |
| | ☐ Instability in interpersonal relationships | |
| | ☐ Lack of empathy | |
| | ☐ Need for admiration | |
| | ☐ Conduct problems | |
| | ☐ Perceptual distortions | |
| | ☐ Preoccupation with control | |
| | ☐ Preoccupation with orderliness | |
| | ☐ Unstable affect | |
| | ☐ Social inhibitions | |
| | ☐ Submissive and clinging behavior | |
| | ☐ Suspiciousness | |
| | ☐ Unstable self-image | |
| | ☐ Criminal behavior | |
| | ☐ Preoccupation with perfectionism | |
| | ☐ Disregard for the rights of others | |
| | ☐ Violation of the rights of others | |
| | ☐ Other (specify): | |
| Additional Symptoms: If the client's problems/symptoms that do not appear to be adequately covered in the above lists, please specify them: | | |
| Summary of Impressions: Provide a clinical opinion of the individual by pulling together the collected historical information in order to | | |

PCM00405

| | |
|---|---|
| Identify possible relationships, conditions, and causes leading to the current situation: | |

**Diagnostic Impressions**

| | |
|---|---|
| Axis I: | ☐ Mood Disorder, Not Otherwise Specified – 296.6 |
| | ☐ Depressive History, Not Otherwise Specified – 311.0 |
| | ☐ Anxiety Disorder, Not Otherwise Specified – 300.0 |
| | ☐ Psychotic Disorder, Not Otherwise Specified – 298.90 |
| | ☐ Schizophrenia, Paranoid Type – 295.30 |
| | ☐ Schizophrenia, Undifferentiated Type – 295.90 |
| | ☐ Major Depression – 296.3 |
| | ☐ Major Depression with Psychosis – 296.34 |
| | ☐ Adjustment Disorder – 309.9 |
| | ☐ Post-traumatic Stress Disorder – 309.81 |
| | ☐ Attention Deficit / Hyperactivity Disorder – 314.9 |
| | ☐ Shizoaffective Disorder – 295.70 |
| | ☐ Bipolar Disorder, Not Otherwise Specified – 296.80 |
| | ☐ Polysubstance Dependence – 304.80 |
| Axis II: | ☐ Borderline Personality Disorder – 301.83 |
| | ☐ Dependent Personality Disorder – 301.6 |
| | ☐ Mental Retardation – 319.0 |
| | ☐ Antisocial Personality Disorder – 301.7 |
| | ☐ Borderline Personality Disorder – 301.83 |
| | ☐ Narcissistic Personality Disorder – 301.81 |
| | ☐ Personality Disorder NOS – 301.9 |
| Axis III: | |
| Axis IV: Psychosocial Stressors: | |
| Axis V: Current GAF: | |
| Level of Care: | |
| PCM Release of Information: | ☐ Obtained  ☐ Refused |

# EXHIBIT T

|  |  |  |  |
|---|---|---|---|
|  | Aimee at 10-24-2012 09:16:04]<br>[Completed by: Leiphart, LPN,<br>Aimee at 12-17-2012 09:46:15] |  |  |
| Second<br><br>12-17-2012 | Mental Health<br>At staff request<br>New Segregated Inmate<br><br>[Created by: Frey LPN, Sonya<br>at 12-13-2012 21:10:29]<br>[Completed by: Leiphart, LPN,<br>Aimee at 12-14-2012 07:20:01] |  | Update Notes<br><br>• Completed Appointment - Completed<br>Appointment [Leiphart, LPN, Aimee on 12-<br>14-2012] |
| Third<br><br>12-17-2012 | Lab [Medical]<br>At staff request<br>LABS- PER DR. ROLLINGS-<br>CMP, CBC AND TSH- TAR<br>SUBMITTED<br><br>[Created by: Leiphart, LPN,<br>Aimee at 12-17-2012 09:49:14]<br>[Last modified: Webster, LPN,<br>Joanne at 12-18-2012<br>08:17:18] | Related Problems: LABS / X-RAYS | Update Notes<br><br>• Refused Appointment - Refused<br>Appointment [Webster, LPN, Joanne on 12-<br>18-2012] |
| First<br><br>12-14-2012 | Mental Health [Medical]<br>At staff request<br>pt placed on suicide<br>precautions r/t altercation;**<br>please fill out a mh seg check<br>form<br><br>[Created by: Frey LPN, Sonya<br>at 12-13-2012 21:13:41]<br>[Completed by: Gallagher LPC,<br>Patrick at 12-14-2012<br>08:31:00] | Related Problems: SEGREGATION | Update Notes<br><br>• Completed Appointment - Sick call<br>completed 12-14-12 at 8:31 am by Patrick<br>Gallagher LPC [Gallagher LPC, Patrick on<br>12-14-2012] |
| First<br><br>12-12-2012 | Nurse Sick Call [Medical]<br>At staff request<br>SC—Reporting stomach pain<br><br>[Created by: Taylor LPN,<br>Carrie at 12-12-2012 02:58:19]<br>[Completed by: Glackin, RN,<br>Emily at 12-12-2012 10:31:29] | Related Problems: GASTROINTESTINAL | Update Notes<br><br>• Completed Appointment - Completed<br>Appointment [Glackin, RN, Emily on 12-12-<br>2012] |

Viewing 61–70 of 165 tasks              « Prev 1 2 3 4 5 6 7 8 9 10 ... 16 Next »

PCM00750

# EXHIBIT U

# Relocation Pass - Suicide Precautions (FULL) (Revised 4/17/15)

| | | | |
|---|---|---|---|
| JMS ID: | 172760 | Location: | [OUT] |
| DOB: | | Ethnicity: | - |
| Age: | 36 | Interviewer: | Frey LPN, Sonya (12/13/2012 21:14) |
| Agency: | INS | | |

**Tiombe (i) Carlos**
**#172760-1**

TO: All Staff
FROM: Medical Department
RE: Medical Restrictions

The above listed inmate/patient was evaluated by the medical staff and needs the following restrictions:

**Restriction Period**

| Restrict From: | | | 12-13-2012 |
|---|---|---|---|
| Restrict To: | | | |
| Until Cleared By: | | ☑ Psychologist/Psychiatrist | |
| | | ☐ Medical Provder (MD, PA, NP) | |

**Restrictions**

| | | | |
|---|---|---|---|
| Special Conditions: | | ☑ Suicide Smock | |
| | | ☑ Finger Food | |
| | | ☑ Styrofoam or Paper Tray | |
| | | ☑ No Sharps | |
| | | ☑ Strip Cell | |
| | | ☑ No Shoe Laces | |
| Housing: | | ☐ Move to O Unit | FEM BAU 4 |
| | | ☐ No Exercise | |
| Checks: | | ☐ 10 Min | |
| | | ☑ 15 Min | |
| | | ☐ 30 Min | |
| | | ☐ Other - Please specify | |
| Date and Time DOJ Initiated | | | 12-13-2012 09:15 pm |

Copy: Treatment; Shift Commander; Inmate; Unit Officer; HSA

PCM00629

# EXHIBIT V

| | |
|---|---|
| | concrete thinking no agitation- denies hallucinations- denies |
| | SI- declines po meds- 🔊 |
| **Objective:** *blank* | |
| **Assessment:** pleasant- concrete- no agitation- denies SI- no overt psychosis- issues with impulse control- poor coping-low functioning- | |
| **Plan:** meds as is ccc 8 weeks | |
| **Education:** *blank* | |

Entered by: Pamela Rollings-Mazza MD at patient request
🖉 Add Addendum
Recategorize to [ Mental Health ∨ ]
last bw-4/2012-cmp,cbc,tsh-normal
Pamela Rollings-Mazza MD
2012-12-17 09:43:35

🗓 **12-14-2012 08:24 with Patrick Gallagher LPC (Task Priority: 1) [Last Updated: 12-14-2012 08:31]**

**Related Problems**

- SEGREGATION,

**Forms Completed**

| Form | Status | Actions |
|---|---|---|
| Relocation Pass (Revised 4/17/15) | Completed on 12/14/2012 08:30 | 🖺 |
| Mental Status Exam | Completed on 12/14/2012 08:27 | 🖺 |

| | | |
|---|---|---|
| **Subjective:** pt placed on suicide precautions r/t altercation;** please fill out a mh seg check form Pt was seen at her cell in BAU.Pt. appropriate and cooperative. Pt. contracted for safety. | Locked: Yes Interpreter used: No |
| **Objective:** Pt. mood normal affect appropriate to mood.Pt thought process intact but concrete.Pt. denied SI and HI.Pt oriented X 4 and cooperative. | |
| **Assessment:** Not suicidal | |
| **Plan:** Discontinue SP.Place on PO permitted all items allowed in segregation.Permitted outdoor recreation. | |
| **Education:** *blank* | |

Entered by: Patrick Gallagher LPC at staff request
🖉 Add Addendum
Recategorize to [ Mental Health ∨ ]
🗓 **12-10-2012 15:13 with Patrick Gallagher LPC (Task Priority: 1) [Last Updated: 12-10-2012 15:26]**

**Related Problems**

- PSYCHOLOGICAL / MENTAL HEALTH,

**Forms Completed**

| Form | Status | Actions |
|---|---|---|
| Mental Status Exam | Completed on 12/10/2012 15:22 | 🖺 |

| | | |
|---|---|---|
| **Subjective:** Review psych obs status.pt was seen at he rcell in BAU.Pt requested to come off of PO. I advised Pt tht as she was on SP and then stepped down to PO and was BAU status SOP was to remain on PO as long as she is in BAU | Locked: Yes Interpreter used: No |
| **Objective:** Pt. mood anxious affect congruent to mood.Pt thought process intact.Pt denied SI and HI.Pt oriented X 4 and cooperative | |
| **Assessment:** Adjustment | |
| **Plan:** Maintain PO | |
| **Education:** *blank* | |

PCM00645

## Mental Status Exam

**Tiombe (i) Carlos**
**#172760-1**

| JMS ID: | 172760 | Location: | [OUT] |
|---|---|---|---|
| SSN: | - | Ethnicity: | - |
| DOB: | ▬▬▬ | Interviewer: | Gallagher LPC, Patrick (12/14/2012 08:27) |
| Age: | 36 | | |
| Agency: | INS | | |

| Date / Time | | 12-14-2012 07:45 am |
|---|---|---|
| **Mental Status Exam** | | |
| Appearance | ☐ Age Appropriate | WNL |
| | ☐ Well-groomed | |
| | ☐ Disheveled, Unkempt | |
| | ☐ Bizarre | |
| | ☑ Other | |
| Orientation | ☑ Person | |
| | ☑ Place | |
| | ☑ Time | |
| | ☑ Situation | |
| Behavior: Eye Contact | ☑ Good | |
| | ☐ Limited | |
| | ☐ Avoidant | |
| | ☐ None | |
| Behavior: Motor Activity | ☐ Relaxed and Calm | |
| | ☑ Restless | |
| | ☐ Rigid | |
| | ☐ Agitated | |
| | ☐ Slumped posture | |
| | ☐ Tense | |
| | ☐ Tics | |
| | ☐ Tremors | |
| Manner: | ☑ Appropriate | |
| | ☐ Trusting | |
| | ☑ Cooprative | |
| | ☐ Inappropriate | |
| | ☐ Withdrawn | |
| | ☐ Agitated | |
| | ☐ Hostile | |
| | ☐ Guarded | |
| | ☐ Defensive | |
| | ☐ Restless | |
| | ☐ Manic | |
| | ☐ Minimizes symptoms | |
| | ☐ Exaggerates symptoms | |
| Speech: (rate, volume, etc.) | ☑ Normal | |
| | ☐ Incoherent | |
| | ☐ Pressured | |

PCM00419

|  |  |  |
|---|---|---|
|  | ☐ Too detailed | |
|  | ☐ Slurred | |
|  | ☐ Slowed | |
|  | ☐ Halting | |
| Mood: | ☑ Normal | |
|  | ☐ Depressed | |
|  | ☐ Irritable | |
|  | ☐ Anxious | |
|  | ☐ Euphoric | |
|  | ☐ Fatigued | |
|  | ☐ Angry | |
| Affect | ☐ Broad | Appropriate to mood |
|  | ☐ Tearful | |
|  | ☐ Blunted | |
|  | ☐ Constricted | |
|  | ☐ Flat | |
|  | ☐ Labile | |
| Sleep: | ☐ Good | |
|  | ☑ Fair | |
|  | ☐ Poor | |
|  | ☐ Increased | |
|  | ☐ Decreased | |
| Appetite: | ☐ Good | |
|  | ☑ Fair | |
|  | ☐ Poor | |
|  | ☐ Increased | |
|  | ☐ Decreased | |
| Thought Process | ☑ Logical, Organized | Concrete |
|  | ☐ Illogical | |
|  | ☐ Flight of Ideas | |
|  | ☐ Circumstantial | |
|  | ☐ Loose associations | |
|  | ☐ Rambling | |
|  | ☐ Obsessive | |
|  | ☐ Blocking | |
|  | ☐ Tangential | |
| Thought Content: | ☑ Normal | |
|  | ☐ Impaired | |
|  | ☐ Paranoid | |
|  | ☐ Obsessive | |
|  | ☐ Fearful/Phobic | |
|  | ☐ Delusional | |
|  | ☐ Other, Describe: | |
| Perception/Hallucinations: | ☑ None Evident | |
|  | ☐ Auditory | |
|  | ☐ Command | |
|  | ☐ Olfactory | |

PCM00420

| | | |
|---|---|---|
| | ☐ Gustatory | |
| | ☐ Tactile | |
| | ☐ Visual | |
| Delusions: | ☑ None Evident | |
| | ☐ Thoughts being controlled | |
| | ☐ Actions being controlled | |
| | ☐ Persecutory | |
| | ☐ Grandiose | |
| | ☐ Infidelity | |
| | ☐ Somatic | |
| | ☐ Paranoid | |
| Suicide Risk | ☑ None | |
| | ☐ Slight | |
| | ☐ Moderate | |
| | ☐ Significant | |
| | ☐ Extreme | |
| | ☐ No plan | |
| | ☐ Plan, describe: | |
| Suicide Risk (Plan): | ◉ No Plan | |
| | ◎ Plan, describe: | |
| Violence Risk: | ◉ None | |
| | ◎ Slight | |
| | ◎ Moderate | |
| | ◎ Significant | |
| | ◎ Extreme | |
| Violence Risk (Plan): | ◉ No Plan | |
| | ◎ Plan, describe: | |
| Judgment: | ◎ Intact | |
| | ◉ Impaired | |
| | ◎ Mild | |
| | ◎ Moderate | |
| | ◎ Severe | |
| | ◎ Impulsive | |
| | ◎ Immature | |
| | ◎ Age-appropriate | |
| Insight regardless awareness of presence of the disorder: | ◎ Intact | |
| | ◉ Limited | |
| | ◎ Very limited | |
| | ◎ Fair | |
| | ◎ None | |
| Sensorium (Level of Consciousness): | ◉ Alert | |
| | ◎ Drowsy | |
| | ◎ Stupor | |
| | ◎ Distracted | |
| | ◎ Delayed Response | |
| Memory: | ☑ Intact | |
| | ☐ | |

PCM00421

|  |  |  |
|---|---|---|
|  | ☐ Immediate Recall |  |
|  | ☐ Impaired |  |
|  | ☐ Remote |  |
|  | ☐ Average |  |
|  | ☐ Above Average |  |
| Intelligence | ☐ Below Average |  |
|  | ☐ Unable to Establish |  |

**Symptom Checklist:**

**Instruction: Check Cluster, and all symptoms in cluster that apply. Add those not appearing under "Other,"**

|  |  |  |
|---|---|---|
| I. Depression: | ☐ Depressed Affect |  |
|  | ☐ Withdrawal / Social Isolation |  |
|  | ☐ Relationship Impairment |  |
|  | ☐ Difficulty Functioning at a job |  |
|  | ☐ Impaired Sleep |  |
|  | ☐ Psychomotor Agitation |  |
|  | ☐ Psychomotor Retardation |  |
|  | ☐ Impaired Appetite |  |
|  | ☐ Weight Gain / Loss |  |
|  | ☐ Poor Self Esteem |  |
|  | ☐ Emotional Agitation |  |
|  | ☐ Crying / Tearfulness |  |
|  | ☐ Flat Affect |  |
|  | ☐ Helplessness |  |
|  | ☐ Hopelessness |  |
|  | ☐ Guilt / Self Blame |  |
|  | ☐ Anger |  |
|  | ☐ Suicidal Ideation / Homicidal Ideation |  |
|  | ☐ Impaired Concentration |  |
|  | ☐ Memory Impairment |  |
|  | ☐ Mental Confusion |  |
|  | ☐ Psychotic Symptoms (specify): |  |
|  | ☐ Other (specify): |  |
| II. Anxiety: | ☐ Anxiety |  |
|  | ☐ Psychomotor Agitation |  |
|  | ☐ Impaired Sleep |  |
|  | ☐ Panic Attacks |  |
|  | ☐ Physical Symptoms of Anxiety (sweating, rapid heart rate, dizziness, hyperventilation, etc.) |  |
|  | ☐ Avoidance Behavior |  |
|  | ☐ Compulsive Behavior |  |
|  | ☐ Obsessive Thoughts |  |
|  | ☐ Other (specify): |  |
| III. Mood: | ☐ Euphoric |  |
|  | ☐ Impulsive |  |
|  | ☐ Homicidal Ideation |  |
|  | ☐ Grandiose |  |
|  | ☐ Psychomotor Agitation |  |

| | | |
|---|---|---|
| | ☐ Manic | |
| | ☐ Depressed | |
| | ☐ Delusional | |
| | ☐ Other (specify): | |
| IV. Thought: | ☐ Hallucinations | |
| | ☐ Psychomotor Agitation | |
| | ☐ Psychomotor Retardation | |
| | ☐ Suicidal IdeationHomicidal Ideation | |
| | ☐ Inappropriate / Bizarre Behavior | |
| | ☐ Delusions | |
| | ☐ Inappropriate Conversation | |
| | ☐ Impaired Relationships | |
| | ☐ Flat Affect | |
| | ☐ Withdrawn / Socially Isolated | |
| | ☐ Difficulty Functioning at a job | |
| | ☐ Other (specify): | |
| V. Personality: | ☐ Attention seeking behavior | |
| | ☐ Detachment from social relationships | |
| | ☐ Discomfort in social relationships | |
| | ☐ Restricted range of affect | |
| | ☐ Excessive need to be taken care of | |
| | ☐ Cognitive distortions | |
| | ☐ Excessive emotionally | |
| | ☐ Grandiosity | |
| | ☐ Hypersensitivity to the evalution | |
| | ☐ Impulsivity | |
| | ☐ Instability in interpersonal relationships | |
| | ☐ Lack of empathy | |
| | ☐ Need for admiration | |
| | ☐ Conduct problems | |
| | ☐ Perceptual distortions | |
| | ☐ Preoccupation with control | |
| | ☐ Preoccupation with orderliness | |
| | ☐ Unstable affect | |
| | ☐ Social inhibitions | |
| | ☐ Submissive and clinging behavior | |
| | ☐ Suspiciousness | |
| | ☐ Unstable self-image | |
| | ☐ Criminal behavior | |
| | ☐ Preoccupation with perfectionism | |
| | ☐ Disregard for the rights of others | |
| | ☐ Violation of the rights of others | |
| | ☐ Other (specify): | |
| Additional Symptoms: If the client's problems/symptoms that do not appear to be adequately covered in the above lists, please specify them: | | |
| Summary of Impressions: Provide a clinical opinion of the individual by pulling together the collected historical information in order to | | |

PCM00423

CorEMR - Tiombe (i) Carlos :: Mental Status Exam | v5.0.0                    Page 6 of 6

| Identify possible relationships, conditions, and causes leading to the current situation: | |
|---|---|
| **Diagnostic Impressions** | |
| Axis I: | ☑ Mood Disorder, Not Otherwise Specified - 296.6 |
| | ☑ Depressive History, Not Otherwise Specified - 311.0 |
| | ☑ Anxiety Disorder, Not Otherwise Specified - 300.0 |
| | ☑ Psychotic Disorder, Not Otherwise Specified - 298.90 |
| | ☑ Schizophrenia, Paranoid Type - 295.30 |
| | ☑ Schizophrenia, Undifferentiated Type - 295.90 |
| | ☑ Major Depression - 296.3 |
| | ☑ Major Depression with Psychosis - 296.34 |
| | ☑ Adjustment Disorder - 309.9 |
| | ☑ Post-traumatic Stress Disorder - 309.81 |
| | ☑ Attention Deficit / Hyperactivity Disorder - 314.9 |
| | ☑ Shizoaffective Disorder - 295.70 |
| | ☑ Bipolar Disorder, Not Otherwise Specified - 296.80 |
| | ☑ Polysubstance Dependence - 304.80 |
| Axis II: | ☑ Borderline Personality Disorder - 301.83 |
| | ☑ Dependent Personality Disorder - 301.6 |
| | ☑ Mental Retardation - 319.0 |
| | ☑ Antisocial Personality Disorder - 301.7 |
| | ☑ Borderline Personality Disorder - 301.83 |
| | ☑ Narcissistic Personality Disorder - 301.81 |
| | ☑ Personality Disorder NOS - 301.9 |
| Axis III: | |
| Axis IV: Psychosocial Stressors: | |
| Axis V: Current GAF: | |
| Level of Care: | |
| PCM Release of Information: | ◎ Obtained |
| | ◎ Refused |

PCM00424

# EXHIBIT W

CorEMR - Carlos, Tiombe (i) :: Tasks | v5.0.0                                                  Page 2 of 2

| | | | |
|---|---|---|---|
| 07-16-2013 | New Segregated Inmate<br><br>[Created by: Glackin, RN, Emily at 07-11-2013 22:10:17]<br>[Completed by: Snyder RN RN, Holly A at 07-16-2013 15:05:26] | | • Completed Appointment - Reviewed chart, there are no contraindications for segregation [Snyder RN, Holly on 07-16-2013] |
| First<br><br>07-15-2013 | X-Ray [Medical]<br>At staff request<br>xray bilateral wrists<br><br>[Created by: Glackin, RN, Emily at 07-12-2013 18:31:48]<br>[Completed by: Helm, Jeannie at 07-17-2013 09:55:28] | Related Problems: Medical Emergency | Update Notes<br><br>• Completed Appointment - refused xray three times [Helm, Jeannie on 07-17-2013] |
| First<br><br>07-12-2013 | Mental Health [Medical]<br>At staff request<br>pt placed on suicide due to altercation with staff-- *** please fill out a mh seg check and complete task<br><br>[Created by: Glackin, RN, Emily at 07-11-2013 21:57:23]<br>[Completed by: Gallagher LPC, Patrick at 07-12-2013 12:07:25] | Related Problems: PSYCHOLOGICAL / MENTAL HEALTH | Update Notes<br><br>• Completed Appointment - Sick call completed 7-12-13 at 12:07 pm by Patrick Gallagher LPC [Gallagher LPC, Patrick on 07-12-2013] |

Viewing 21-30 of 155 tasks                       « Prev 1 2 3 4 5 6 7 8 9 10 ... 16 Next »

PCM00758

# EXHIBIT X

CorEMR - Carlos, Tiombe (i) :: Sick Calls | v5.0.0                    Page 1 of 5

## Tiombe (i) Carlos

Sex: Female
DOB: 1▇▇▇▇▇▇▇▇▇▇▇
Alien ID: A36 811 770

Agency: INS
Location: [OUT]
JMS ID: 172760

Allergies:
PCN, Lithium, and Thorazine

**#172760-1**

Sick Calls
## Triage

[ Search field ]  [ Search ]  [ Clear ]

- 10-23-2013 : Emergency Flow Sheet (updated 4/...
- 10-02-2013 : Relocation Pass (Revised 4/17/15)
- 08-20-2013 : Relocation Pass (Revised 4/17/15)

Viewing 21–30 of 59 History Items   « Prev 1 2 3 4 5 6 Next »

[ Show 10 ∨ ]

## Medical

- 08-15-2013 : Angelita C Zechman NP
- 08-13-2013 : Angelita C Zechman NP
- 04-12-2012 : Toby Catone, PA-C

## Dental

- 03-18-2013 : John Falenski DMD
- 03-14-2012 : John Falenski DMD

## Mental Health

### 📅 07-12-2013 12:03 with Patrick Gallagher LPC (Task Priority: 1) [Last Updated: 07-12-2013 12:07]

| Related Problems | Subjective: pt placed on suicide due to altercation with staff--*** please fill out a mh seg check and complete task Pt was seen at her cell door Pt was appropriate and cooperative. Pt able to contract for safety | Locked: Yes Interpreter used: No |
| --- | --- | --- |
| - PSYCHOLOGICAL / MENTAL HEALTH. | Objective: MSE Completed see click chart Pt mood normal affec sappororiateto mood.Pt thought process intact. Pt denied SI and hI.Pt oriented X 4 and cooperative. | |
| | Assessment: Not suicidal | |
| | Plan: Discontinue SP. Place on PO.Permitted all items allowed in BAU. | |
| | Education: blank | |

Entered by: Patrick Gallagher LPC at staff request
☑ Add Addendum
Recategorize to [ Mental Health ∨ ]

### 📅 06-06-2013 09:57 with Pamela Rollings-Mazza MD [Last Updated: 06-06-2013 09:59]

| (No Related Actions) | Subjective: Recheck- seen at cell- did not want to come to office- compliant with shots- reports frustarted with immigration situation- no psychosis- no agitation- denies SI- | Locked: Yes Interpreter used: No |
| --- | --- | --- |
| | Objective: blank | |
| | Assessment: no agitation- no overt psychosis- denies SI- | |
| | Plan: meds as is ccc 8 weeks | |
| | Education: blank | |

Entered by: Pamela Rollings-Mazza MD at patient request
☑ Add Addendum
Recategorize to [ Mental Health ∨ ]

### 📅 05-13-2013 15:44 with Patrick Gallagher LPC (Task Priority: 1) [Last Updated: 05-13-2013 15:48]

PCM00649

## Mental Status Exam

**Tiombe (i) Carlos #172760-1**

| JMS ID: | 172760 | Location: | [OUT] |
|---|---|---|---|
| SSN: | - | Ethnicity: | - |
| DOB: | | Interviewer: | Gallagher LPC, Patrick (07/12/2013 11:50) |
| Age: | 36 | | |
| Agency: | JNS | | |

| Date / Time | 07-12-2013 10:30 am |
|---|---|

**Mental Status Exam**

| | | |
|---|---|---|
| Appearance | ☐ Age Appropriate<br>☐ Well-groomed<br>☐ Disheveled, Unkempt<br>☐ Bizarre<br>☑ Other | WNL |
| Orientation | ☑ Person<br>☑ Place<br>☑ Time<br>☑ Situation | |
| Behavior: Eye Contact | ☑ Good<br>☐ Limited<br>☐ Avoidant<br>☐ None | |
| Behavior: Motor Activity | ☑ Relaxed and Calm<br>☐ Restless<br>☐ Rigid<br>☐ Agitated<br>☐ Slumped posture<br>☐ Tense<br>☐ Tics<br>☐ Tremors | |
| Manner: | ☑ Appropriate<br>☐ Trusting<br>☑ Cooprative<br>☐ Inappropriate<br>☐ Withdrawn<br>☐ Agitated<br>☐ Hostile<br>☐ Guarded<br>☐ Defensive<br>☐ Restless<br>☐ Manic<br>☐ Minimizes symptoms<br>☐ Exaggerates symptoms | |
| Speech: (rate, volume, etc.) | ☑ Normal<br>☐ Incoherent<br>☐ Pressured<br>☐ | |

PCM00473

|  |  |  |
|---|---|---|
|  | ☑ Too detailed |  |
|  | ☐ Slurred |  |
|  | ☐ Slowed |  |
|  | ☑ Halting |  |
| Mood: | ☑ Normal |  |
|  | ☐ Depressed |  |
|  | ☐ Irritable |  |
|  | ☐ Anxious |  |
|  | ☐ Euphoric |  |
|  | ☐ Fatigued |  |
|  | ☐ Angry |  |
| Affect | ☐ Broad | Appropriate to mood |
|  | ☐ Tearful |  |
|  | ☐ Blunted |  |
|  | ☐ Constricted |  |
|  | ☐ Flat |  |
|  | ☐ Labile |  |
| Sleep: | ☐ Good |  |
|  | ☑ Fair |  |
|  | ☐ Poor |  |
|  | ☐ Increased |  |
|  | ☐ Decreased |  |
| Appetite | ☐ Good |  |
|  | ☑ Fair |  |
|  | ☐ Poor |  |
|  | ☐ Increased |  |
|  | ☐ Decreased |  |
| Thought Process | ☑ Logical, Organized |  |
|  | ☐ Illogical |  |
|  | ☐ Flight of Ideas |  |
|  | ☐ Circumstantial |  |
|  | ☐ Loose associations |  |
|  | ☐ Rambling |  |
|  | ☐ Obsessive |  |
|  | ☐ Blocking |  |
|  | ☐ Tangential |  |
| Thought Content: | ☑ Normal |  |
|  | ☐ Impaired |  |
|  | ☐ Paranoid |  |
|  | ☐ Obsessive |  |
|  | ☐ Fearful/Phobic |  |
|  | ☐ Delusional |  |
|  | ☐ Other, Describe: |  |
| Perception/Hallucinations: | ☑ None Evident |  |
|  | ☐ Auditory |  |
|  | ☐ Command |  |
|  | ☐ Olfactory |  |

PCM00474

|  |  |  |
|---|---|---|
|  | ☐ Gustatory |  |
|  | ☐ Tactile |  |
|  | ☐ Visual |  |
| Delusions: | ☑ None Evident |  |
|  | ☐ Thoughts being controlled |  |
|  | ☐ Actions being controlled |  |
|  | ☐ Persecutory |  |
|  | ☐ Grandiose |  |
|  | ☐ Infidelity |  |
|  | ☐ Somatic |  |
|  | ☐ Paranoid |  |
| Suicide Risk | ☑ None |  |
|  | ☐ Slight |  |
|  | ☐ Moderate |  |
|  | ☐ Significant |  |
|  | ☐ Extreme |  |
|  | ☐ No plan |  |
|  | ☐ Plan, describe: |  |
| Suicide Risk (Plan): | ◉ No Plan |  |
|  | ◉ Plan, describe: |  |
| Violence Risk: | ◉ None |  |
|  | ○ Slight |  |
|  | ○ Moderate |  |
|  | ○ Significant |  |
|  | ○ Extreme |  |
| Violence Risk (Plan): | ◉ No Plan |  |
|  | ○ Plan, describe: |  |
| Judgment: | ◉ Intact |  |
|  | ○ Impaired |  |
|  | ○ Mild |  |
|  | ○ Moderate |  |
|  | ○ Severe |  |
|  | ○ Impulsive |  |
|  | ○ Immature |  |
|  | ○ Age-appropriate |  |
| Insight regardless awareness of presence of the disorder: | ◉ Intact |  |
|  | ○ Limited |  |
|  | ○ Very limited |  |
|  | ○ Fair |  |
|  | ○ None |  |
| Sensorium (Level of Consciousness): | ◉ Alert |  |
|  | ○ Drowsy |  |
|  | ○ Stupor |  |
|  | ○ Distracted |  |
|  | ○ Delayed Response |  |
| Memory: | ☑ Intact |  |
|  | ☐ |  |

PCM00475

| | | |
|---|---|---|
| | ☐ Immediate Recall | |
| | ☐ Impaired | |
| | ☐ Remote | |
| Intelligence | ◉ Average | |
| | ☐ Above Average | |
| | ☐ Below Average | |
| | ☐ Unable to Establish | |

**Symptom Checklist:**

| Instruction: Check Cluster, and all symptoms in cluster that apply. Add those not appearing under "Other." | | |
|---|---|---|
| I. Depression: | ☐ Depressed Affect | |
| | ☐ Withdrawal / Social Isolation | |
| | ☐ Relationship Impairment | |
| | ☐ Difficulty Functioning at a job | |
| | ☐ Impaired Sleep | |
| | ☐ Psychomotor Agitation | |
| | ☐ PSychomotor Retardation | |
| | ☐ Impaired Appetite | |
| | ☐ Weight Gain / Loss | |
| | ☐ Poor Self Esteem | |
| | ☐ Emotional Agitation | |
| | ☐ Crying / Tearfulness | |
| | ☐ Flat Affect | |
| | ☐ Helplessness | |
| | ☐ Hopelessness | |
| | ☐ Guilt / Self Blame | |
| | ☐ Anger | |
| | ☐ Suidical Ideation / Homocidal Ideation | |
| | ☐ Impaired Concentration | |
| | ☐ Memory Impairment | |
| | ☐ Mental Confusion | |
| | ☐ Psychotic Symptoms (specify): | |
| | ☐ Other (specify): | |
| II. Anxiety: | ☐ Anxiety | |
| | ☐ Psychomotor Agitation | |
| | ☐ Impaired Sleep | |
| | ☐ Panic Attacks | |
| | ☐ Physical Symptoms of Anxiety (sweating, rapid heart rate, dizziness, hyperventilation, etc.) | |
| | ☐ Avoidance Behavior | |
| | ☐ Compulsive Behavior | |
| | ☐ Obsessive Thoughts | |
| | ☐ Other (specify): | |
| III. Mood: | ☐ Euphoric | |
| | ☐ Impulsive | |
| | ☐ Homicial Ideation | |
| | ☐ Grandiose | |
| | ☐ Psychomotor Agitation | |

| | | |
|---|---|---|
| | ☐ Manic | |
| | ☐ Depressed | |
| | ☐ Delusional | |
| | ☐ Other (specify): | |
| IV. Thought: | ☐ Hallucinations | |
| | ☐ Psychomotor Agitation | |
| | ☐ Psychomotor Retardation | |
| | ☐ Suicidal Ideation/Homicidal Ideation | |
| | ☐ Inappropriate / Bizarre Behavior | |
| | ☐ Delusions | |
| | ☐ Inappropriate Conversation | |
| | ☐ Impaired Relationships | |
| | ☐ Flat Affect | |
| | ☐ Withdrawn / Socially Isolated | |
| | ☐ Difficulty Functioning at a job | |
| | ☐ Other (specify): | |
| V. Personality: | ☐ Attention seeking behavior | |
| | ☐ Detachment from social relationships | |
| | ☐ Discomfort in social relationships | |
| | ☐ Restricted range of affect | |
| | ☐ Excessive need to be taken care of | |
| | ☐ Cognitive distortions | |
| | ☐ Excessive emotionality | |
| | ☐ Grandiosity | |
| | ☐ Hypersensitivity to the evalution | |
| | ☐ Impulsivity | |
| | ☐ Instability in interpersonal relationships | |
| | ☐ Lack of empathy | |
| | ☐ Need for admiration | |
| | ☐ Conduct problems | |
| | ☐ Perceptual distortions | |
| | ☐ Preoccupation with control | |
| | ☐ Preoccupation with orderliness | |
| | ☐ Unstable affect | |
| | ☐ Social inhibitions | |
| | ☐ Submissive and clinging behavior | |
| | ☐ Suspiciousness | |
| | ☐ Unstable self-image | |
| | ☐ Criminal behavior | |
| | ☐ Preoccupation with perfectionism | |
| | ☐ Disregard for the rights of others | |
| | ☐ Violation of the rights of others | |
| | ☐ Other (specify): | |
| Additional Symptoms: If the client's problems/symptoms that do not appear to be adequately covered in the above lists, please specify them: | | |
| Summary of Impressions: Provide a clinical opinion of the individual by pulling together the collected historical information in order to | | |

| Identify possible relationships, conditions, and causes leading to the current situation: | |
|---|---|

**Diagnostic Impressions**

| | |
|---|---|
| **Axis I:** | ▣ Mood Disorder, Not Otherwise Specified - 296.6 |
| | ▣ Depressive History, Not Otherwise Specified - 311.0 |
| | ▣ Anxiety Disorder, Not Otherwise Specified - 300.0 |
| | ▣ Psychotic Disorder, Not Otherwise Specified - 298.90 |
| | ▣ Schizophrenia, Paranoid Type - 295.30 |
| | ▣ Schizophrenia, Undifferentiated Type - 295.90 |
| | ▣ Major Depression - 296.3 |
| | ▣ Major Depression with Psychosis - 296.34 |
| | ▣ Adjustment Disorder - 309.9 |
| | ▣ Post-traumatic Stress Disorder - 309.81 |
| | ▣ Attention Deficit / Hyperactivity Disorder - 314.9 |
| | ▣ Shizoaffective Disorder - 295.70 |
| | ▣ Bipolar Disorder, Not Otherwise Specified - 296.80 |
| | ▣ Polysubstance Dependence - 304.80 |
| **Axis II:** | ▣ Borderline Personality Disorder - 301.83 |
| | ▣ Dependent Personality Disorder - 301.6 |
| | ▣ Mental Retardation - 319.0 |
| | ▣ Antisocial Personality Disorder - 301.7 |
| | ▣ Borderline Personality Disorder - 301.83 |
| | ▣ Narcissistic Personality Disorder - 301.81 |
| | ▣ Personality Disorder NOS - 301.9 |
| **Axis III:** | |
| **Axis IV: Psychosocial Stressors:** | |
| **Axis V: Current GAF:** | |
| **Level of Care:** | |
| **PCM Release of Information:** | ◉ Obtained |
| | ◉ Refused |

# EXHIBIT Y

| | | |
|---|---|---|
| Type: Medical Note<br>Access: Medical Staff | Date: 08/13/2013      Author: Schmuck, LPN,<br>14:34                              Angela<br>pt found in cell hanging, pt was cut down by<br>security and lowered to the foor to be<br>assessed, pt crying and saying "its not fair, I<br>don't wanna live", pt was boarded and taken to<br>medical to be assessed further, treatment given<br>as needed, pt taken out to hospital | Related Problems<br><br>Medical Emergency | ☐ Highlight Note? |
| ✱ Type: Mental Health Note<br>Access: Medical Staff | Date: 08/13/2013      Author: Leiphart, LPN,<br>13:47                              Aimee<br>pt found at approx 1320 hanging by her sheet<br>in her cell by the window. pt cut down by<br>security and placed on the floor. medical<br>emergency called. 911 called at approx 1330.<br>pt alert. medical staff took over treatment at this<br>time, dr. rollings made aware. | Related Problems<br><br>suicide attempt | ☐ Highlight Note? |
| Type: Medical Note<br>Access: Medical Staff | Date: 08/07/2013      Author: Schmuck, LPN,<br>11:37                              Angela<br>pt given haldol dec given right deltoid, pt<br>tolerated well, Lot 6105283 exp 12/14 | Related Problems<br><br>PSYCHOLOGICAL / MENTAL HEALTH | ☐ Highlight Note? |
| Type: Medical Note<br>Access: Medical Staff | Date: 07/26/2013      Author: Glackin, RN,<br>18:32                              Emily<br>spoke with pt about current housing status. pt<br>thought that she was lcu status and was upset.<br>when told by security her status pt was fine. pt<br>denies any SI and has been complaint with<br>meds. will follow up with mh prn. | Related Problems<br><br>PSYCHOLOGICAL / MENTAL HEALTH | ☐ Highlight Note? |
| Type: Medical Note<br>Access: Medical Staff | Date: 07/24/2013      Author: LPN Sheets, LPN,<br>13:13                              Victoria<br>pt given haldol dec injection left upper arm | Related Problems<br><br>MEDICATION REVIEW | ☐ Highlight Note? |
| Type: Medical Note<br>Access: Medical Staff | Date: 07/17/2013      Author: Helm, Jeannie<br>09:55<br>Pt refused xray for third time | Related Problems<br><br>LABS / X-RAYS | ☐ Highlight Note? |
| Type: Misc. Note<br>Access: Medical Staff | Date: 07/15/2013      Author: Skaggs RN, Laura<br>09:06<br>pt refused to come down for xrays per security | Related Problems | ☐ Highlight Note? |
| Type: Medical Note<br>Access: Medical Staff | Date: 07/12/2013      Author: Glackin, RN,<br>18:30                              Emily<br>pt seen by writer at cell. pt complaining of pain<br>in bilateral wrists. pt has swelling and bruising<br>in both wrists. pt also has abrasions on both<br>wrists where handcuffs were placed. cleaned<br>per protocol. pt ordered motrin for pain and<br>tasked for xrays. | Related Problems<br><br>Medical Emergency | ☐ Highlight Note? |
| Type: Medical Note<br>Access: Medical Staff | Date: 07/10/2013      Author: Schmuck, LPN,<br>11:08                              Angela<br>haldol dec given in left deltoid, pt tolerated well,<br>Lot 6105283 exp 12/14 | Related Problems<br><br>PSYCHOLOGICAL / MENTAL HEALTH | ☐ Highlight Note? |
| Type: Medical Note<br>Access: Medical Staff | Date: 06/26/2013      Author: Windon, LPN, Kim<br>11:22<br>Haldol Dec. 100mg IM injection given into Rt<br>deltoid. Patient tolerated this well. | Related Problems<br><br>PSYCHOLOGICAL / MEDICATION -<br>ASSESSMENT | ☐ Highlight Note? |
| Type: Medical Note<br>Access: Medical Staff | Date: 06/12/2013      Author: Glackin, RN,<br>11:50                              Emily<br>halodol dec injection given in right arm. pt<br>tolerated well. | Related Problems<br><br>PSYCHOLOGICAL / MENTAL HEALTH | ☐ Highlight Note? |

PCM00197

# EXHIBIT Z

# Mental Health Segregation Observation Check Sheet

| JMS ID: | 172760 | Location: | [OUT] |
| SSN: | - | Ethnicity: | |
| DOB: | - | Interviewer: | Gallagher LPC, Patrick (08/14/2013 09:37) |
| Age: | 36 | | |
| Agency: | INS | | |

**Tiombe (i) Carlos**
**#172760-1**

| 1.. | Behavior/Conduct: | ☐ Calm<br>☐ Agitative<br>☐ Manipulative<br>☐ Cooperative<br>☐ Uncooperative<br>☐ Disorganized<br>☐ Non-violent<br>☐ Violent | Uncooperative |
|---|---|---|---|
| 2.. | Affect/Mood: | ☐ Normal<br>☐ Manic<br>☐ Depressed<br>☐ Euphoria<br>☐ Flat<br>☐ Emotional Instability | Angry |
| 3.. | Cognition: | ☑ Alert<br>☑ Oriented: Time, Person, Place<br>☐ Lethargic<br>☐ Stuporous<br>☐ Comatose<br>☐ Delusional<br>☐ Confused<br>☐ Visual Hallucinations<br>☐ Auditory Hallucinations | Person place |
| 4.. | Is Patient at High Risk for Suicide? | ◉ Yes<br>◉ No | |
| 5.. | Is Patient Compliant with Medication? | ◉ Yes<br>◉ No | |
| 6.. | Is Patient Eating? | ◉ Yes<br>◉ No | |
| 7.. | Referral Submitted? | ◉ Yes<br>◉ No | |
| | Notes: | | |

PCM00345

# EXHIBIT AA

Counselor Notes                                                                     Page 6 of 7

2/25/13- Inmate requested that I call her mother to inform her of visiting hours for ICU inmates. She was advised that she can write a letter or call collect and was told that ICU visiting hours are from 12:00pm-12:30pm or 12:30pm-1:00pm as long as space permits. J. Jackson

2/26/13- Inmates request for writing supplies denied – she spent $17.26 on 2/12/13. J. Jackson

3/5/13- Inmates account balance is $132.01. J. Jackson

3/14/13- I met with Tiombe today at her cell along with C/O. S. Ison. She was being very disruptive while I was conducting other reviews while in the pod. She was screaming "the counselor doesn't like black people" and "she won't help you if you're black". I asked C/O Ison to then close her wicket so I could carry on with my reviews. Finally once I was done with the others, I walked to Tiombe's cell and she was sitting on the floor by the wicket. She yelled at me that she has nothing to say that I "need to get the fuck out of her face". I said "ok, have a good day" and she just continued to speak poorly of me. She is always needing something or complaining about something. If she keeps this up, I can easily see her getting another write up. J. Jackson

4/19/13- I met with Tiombe today at her cell along with C/O. M. Hartwell. She told me that she wants to attend law library and apparently has been asking for quite some time. I told her that I have never received a request from her regarding this and advised her to write one. I said that I would check with Supv. Abenshon about a time that she could be able to go. She asked about some application and I/M Angelae Dempster told her that it's in the law library. I asked what she meant and she didn't even know but apparently it has to do with a lawyer. I asked if she had an attorney and she doesn't know. She then said "I've been asking for a PIRC application". I advised her that I have not received any requests from her about this. I told her to fill one out and I will send her an application. She didn't have any other questions/issues at this time. J. Jackson

4/22/13- Issued inmate a PIRC application. J. Jackson

4/26/13- Inmate is permitted to attend law library for one hour on Saturday's (3:00-4:00). Inmate advised via request slip. J. Jackson

5/8/13- Issued inmate 6 months clothing. J. Jackson

6/7/13---Inmate was removed from ICU status per PRC. Her initial classification is a level 3. No override is warranted. She will relocate to FEM B-9A, level 3. Horner/Miller

6/25/13- I called Tiombe for her monthly review but she refused to come over (per C/O J. Lambeck). I will mark her as refused. J. Jackson

7/11/13---Inmate received a misconduct report for assault on another inmate (Maisonet, Magalie #57308) and was placed on BAU status. B Horner

7/12/2013--INmate was removed from suicide precaution and placed on Psych Obs per MH Pat Gallagher. McNicholas/Crist

7/15/13- I met with Tiombe at her cell today along with C/O E. Reyes. She was laying down and said that she didn't want to talk. She was written up for bein disruptive and claims that the other inmates took advantage of her canteen and made a group chichi and handed it out to everyone. This got the best of Tiombe and was resisted once she came out of the pod thus ending her up on BAU status. J. Jackson

8/8/13- BAU Reassessment 26 points level 3. B. O'Brien

8/10/13---Inmate was removed from BAU status today. Her BAU reassessment remains a level 3. No override is warranted. She will remain in her current housing on pysch obs. B Horner

8/13/2013--Inmate was placed on Intensive Custody Status (ICU) per DW Doll due to her continued assaultive behavior. Her status will be monitored and evaluated by the PRC. McNicholas/Crist

8/19/2013--Inmate removed from constant watch and placed on suicide precaution per MH Pat Gallagher. McNicholas/Nadeau

8/20/2013--Inmate was removed from suicide precaution and placed on Psych Obs per MH Pat Gallagher. She will remain on ICU status. McNicholas/Nadeau

8/28/13- I checked in with Tiombe today at her cell door along with C/O D. Seltz. She said that she "has a problem with her butt". I asked her if she has filled out a sick call slip. She told me that her problem is that her butt just keeps getting bigger. I laughed and she said that she was serious. She said that she was going to start to work out. Tiombe then asked how long she was going to be on ICU status. I told her that she needs to speak with the PRC group on Wednesday's because they would be the ones to determine this, not me. She understood and said that she'll ask next

PCM01773

# EXHIBIT BB

# York Hospital

**Name:**   CARLOS, TIOMBE                          **MRN:** YH-002167784

**Date of Birth:** ████████        **Admit Date:** 10/23/2013        **Discharge Date:** 10/23/2013

**Financial Number(s):** ████████

---

**DOC - ED Documentation**

*Glasgow Coma Score :* 3

Eleanor M Stutzman, RN - 10/23/2013 10:24 PM

**Fall Risk Screen ED**
*Fall Risk Mobility :* Unable to ambulate or transfer
*Fall Risk Mentation :* Comatose/unresponsive
*Fall Risk Prior Fall History :* Unknown
*Fall Risk Elimination :* Incontinence
*Fall Risk Current Medications :* Not Applicable
*Fall Risk per Nursing Judgment :* No
*Fall Risk Screen Score :* 1

Eleanor M Stutzman, RN - 10/23/2013 10:24 PM

---

DOCUMENT NAME:                     ED Phys Note
PERFORMED DATE/TIME:               10/23/2013 22:35 EDT
RESULT STATUS:                     Auth (Verified)
PERFORMED PROVIDER NAME:           Jeremy E Hutchins,DO (10/23/2013 22:36 EDT)

### *Cardiac-Respiratory Arrest *ED*

Patient: CARLOS, TIOMBE     MRN: ████████     FIN: ████████
Age: 34 years   Sex: F   DOB: ████████
Associated Diagnoses: None
Author: Jeremy E Hutchins, DO

**Basic Information**
    **Time seen:** Date & time 10/23/2013 10:12:00 PM, Seen with Dr. Becasnot, Dictation at least partially completed using voice recognition technology. Note was scanned for gross errors, and appropriate corrections were made. However, minor errors may still be present..
    **Arrival mode:** Ambulance-ALS.
    **Additional information:** Chief Complaint from Nursing Triage Note : Chief Complaint,
        10/23/2013 10:08 PM    Chief Complaint        Pt to ED from YCP in cardiac arrest, after having been found hanging in her cell during
        security checks. Last seen alive at 2100; found by guards at 2120. CPR initiated. Pt has remained in asystole throughout EMS contact
        with her.

**History of Present Illness**
    The patient presents in Asystole. Patient was in York County prison and was found hanging. There was approximately 20 minutes after the check when gaurds found her hanging. She was pulseless, they cut her down to the floor, started cardiopulmonary resuscitation. Paramedics arrived 20 minutes after starting a cardiopulmonary resuscitation and patient was asystole on their arrival. Approximately 30 minute transport time, patient asystole during the entire transport time. 7 rounds of cardiac epinephrine, continuous cardiopulmonary resuscitation ACLS. A King airway was established prehospital. On arrival patient in asystole with approximately 1 to 1.5 hours of down time and is asystole on arrival..

**Review of Systems**
    **Additional review of systems information:** Unable to obtain due to: Clinical condition.

**Health Status**
    **Allergies: .**
    No active allergies have been recorded.

**Past Medical/ Family/ Social History**

Chart Request ID:  35674637                   Page 5 of 23                   Printed:  8/25/2014 14:57 EDT

# York Hospital

**Name:**  CARLOS, TIOMBE                          **MRN:** YH-002167784

**Date of Birth:**           **Admit Date:**  10/23/2013          **Discharge Date:**  10/23/2013

**Financial Number(s):**  ▇▇▇▇▇▇

---

**DOC - ED Documentation**

---

Medical history
Unknown.
**Social history:** Unknown.

**Physical Examination**

Vital Signs
Vital Signs.

| 10/23/2013 10:08 PM | | |
|---|---|---|
| ECG Heart Rate | 0 bpm | LOW |
| Respiratory Rate | 0 br/min | <LLOW |
| Systolic Blood Pressure | 0 mmHg | LOW |
| Diastolic Blood Pressure | 0 mmHg | LOW |
| B/P Location | Arm, right | |
| B/P Modality | NIBP | |

Oxygen Saturation.
10/23/2013 10:08 PM     Oxygen Saturation     83 %
**General:** unresponsive. GCS 3.
**Skin:** Warm, dry, normal for ethnicity.
**Ears, nose, mouth and throat:** King Airway in place.
**Neck:** Trachea midline, C-collar in place.
**Cardiovascular:** No HR. Asystole.
**Respiratory:** course breath sounds b/l with BVM.
**Gastrointestinal:** Soft, Nontender.
**Musculoskeletal:** No deformity.
**Neurological:** GCS 3 T.

**Medical Decision Making**
**Differential Diagnosis::** Cardiac arrest.
**Orders:** Launch Order Profile (Selected).
Inpatient Orders
*Ordered*
Post Mortem Documentation Complete: 10/23/13 23:19:55, 10/23/13 23:19:55
Post Mortem Form Initiated: 10/23/13 23:19:55, 10/23/13 23:19:55
Post Mortem Form Initiated: 10/24/13 1:08:51, 10/24/13 1:08:51
*Discontinued*
Intake & Output ED PRN: 10/23/13 22:08:50, PRN
Vital Signs ED PRN: 10/23/13 22:08:51, PRN, PRN order for use in the ED
**Electrocardiogram:** Not indicated at this time.
**Results review:** No tests indicated at this time, unless mentioned below.
**Chest X-Ray:** Not indicated at this time.
**Notes:** 34 y/o female with hx of prior SI attempt by hanging was brought to the ED by ALS with down time of minimum 60 minutes and max of 90 minutes in asystole. Medical command call informing us of patient hanging herself in a jail cell and was pulseless. Because of mechanism of arrest an emergent consult was made to attending trauma surgeon Mpinga and chief surgical resident who were in agreement that it was up to our discretion to send patient to the trauma bay and that a hanging mechanism does not mandate a trauma bay activation. Because of the prolonged prehospital down time without signs of life we opted to keep the patient in the ED for her cardiac arrest.

On arrival ACLS was resumed,.Patient received a round of CPR and epi. She remained in asystole. Bedside ultrasound with complete cardiac standstill. Because of the 60-90 min down time of complete asystole the resuscitation efforts were discontinued. Time of death 2213. Coroner notified.

Critical care time 25 minutes.

Chart Request ID:  35674637                     Page 6 of 23                     Printed:  8/25/2014 14:57 EDT

# EXHIBIT CC



# RICHARD H. ALTHOUSE, Ph.D.
## *Licensed Psychologist*

### CONSULTANT

**548 Linden Street**
**Verona, Wisconsin  53593**
**U.S.A.**

**Phone:  608-497-0574**
**Email: goldmine123.a@gmail.com**

**\* Correctional Mental Health Services Standards   \* Corrections Suicide Risk Management**

December 15, 2016

Attorney John Ninosky
Johnson, Duffie, Stewart & Weidner
301 Market Street
P.O. Box 109
Lemoyne, PA.  17043-0109

**Re: Angela Carlos, Admin. of Estate of Tiombe Kimana Carlos v. York County,
et al.  U.S.D.C. for Middle District of Pennsylvania, Docket No. 1:15-cv-1994**

Dear Attorney Ninosky:

At your request, I have reviewed the below-referenced documents forwarded by your office related to the above-referenced case "from a policies and procedures aspect."

As I understand this case, it involves the death by suicide (hanging) of Tiombe Carlos, a 34 year old unmarried female citizen of Antigua and Barbuda detained at the York County Prison (YCP), located in York, Pennsylvania. At the time of her death on October 23, 2013, she was reportedly still in the custody of the United States Immigration and Customs Enforcement (ICE) agency following a history of criminal charges including shoplifting, trespass, and assault, dismissals, suspended sentences, and probations. She had a parole violation charge of assaulting a police officer. and while in ICE custody was involved with an altercation with another officer.  Although a Lawful Permanent Resident, she became subject to being deported because of her criminal  history, convictions, and incarcerations. Consequently, the Department of Homeland Security eventually transferred Ms. Carlos to YCP on April 11, 2011.

Prior to her admission to YCP, Ms. Carlos had a reported social history significant for an 11th grade education, a report of two rapes-- one at age 12 and the second at age 18--and at the time of reception, had one 12 year old daughter.

1

Ms. Carlos had a legal history significant for numerous charges of assault, robbery, resisting arrest, trespass, and shoplifting, and was incarcerated for approximately 6 years (2004 to 2010) prior to ICE transferring her to YCP in 2011.

Ms. Carlos has a documented mental health history with a symptomatic and behavioral onset during her early adolescence including signs and symptoms of psychosis followed by diagnoses including an Organic Delusional Disorder; Psychotic Disorder NOS; Schizophrenia, Paranoid Type; Bipolar Disorder; Schizoaffective Disorder, Bipolar Type; Paranoid Schizophrenia, Chronic; Bipolar, Manic with psychotic features; Bipolar I Disorder, Manic, with psychotic features; Post Traumatic Stress Disorder; and a history of cannabis and possible alcohol abuse. Documents revealed that Ms. Carlos was hospitalized numerous times between 1994 and 2003 for psychiatric reasons, the first at age 14 (although she was apparently 15), after allegedly taking drugs, hallucinating, and becoming paranoid.

Prior to her reception at YCP, Ms. Carlos' mental disorder was treated with various psychotropic medications including thorazine, Navane, Valproic Acid, Ativan to treat anxiety, and more recent to her transfer to YCP, was only treated with bi-weekly injections of Haldol deconoate to manage her mental illness, then diagnosed as a Schizoaffective Disorder, Bipolar type. Prior to her transfer, Ms. Carlos was reportedly not consistently compliant with her medication regimens, and when not taking her medications would again become symptomatic, agitated, violent, and hallucinate, and would be re-hospitalized. When compliant, she was reportedly more emotionally and mentally stable and cooperative.

Although various documents report different dates for Ms. Carlos' reception at YCP (April 11, April 14, April 18), it appears that she was admitted to and housed at YCP from April 14, 2011 until October 23, 2013, the date of her suicide. Upon reception, she was identified by the ICE transporting officers as having a history of "problems," and by YCP reception staff as having a serious mental illness. YCP staff immediately placed her on psychiatric observation status, she was subsequently seen by mental health staff, and after initially refusing a Haldol injection, accepted one on April 20, 2011.

Documents also revealed that while at YCP, Ms. Carlos was involved in numerous violations and/or behaviors that resulted in her periodically being placed in the Behavioral Adjustment Unit (BAU) or the Intensive Custody Unit (ICU) per institution policy.

Throughout her incarceration at YCP, Ms. Carlos was periodically assessed by the psychiatrist, Dr. Rollings-Mazza, continued to be treated with biweekly Haldol decanoate injections by nursing staff, periodically placed on psychiatric observation and suicide watches, and once on a constant observation status following a suicide attempt by hanging two months prior to her successful suicide in October. She was accordingly seen by PCM and York County mental health staff who worked at YCP.

2

Plaintiffs are alleging deliberate indifference, claiming that Ms. Carlos' mental illness was not adequately treated, and she was not adequately prevented from attempting and completing suicide.

## QUALIFICATIONS

My qualifications to give expert testimony in response to this request include completing a psychology internship at the University of Wisconsin's Department of Psychiatry in 1971, receiving a Ph.D. in Psychology from Pennsylvania State University in 1975, and becoming licensed for independent practice in Wisconsin in 1977. Additionally, I have 37 years of experience as a clinical psychologist in both staff and supervisory positions, providing a range of mental health services to inmates including assessment, treatment, and psychiatric referrals, as well as staff training and supervising psychology staff and interns in both juvenile and adult maximum and minimum security correctional and a mental health forensic facility of the Wisconsin Department of Corrections or the Wisconsin Department of Health and Social Services.

More specifically, my professional experience includes providing staff training in ethics, standards of correctional mental health care practice, and suicide prevention, to psychology, non-psychology, correctional administrators, security, and non-security staff. I also provided expert court testimony of sex offender risk for inmates identified for involuntary commitment to sex offender treatment programs beyond their custody dates.

I assisted in the development of the 1999 edition of the standards of the National Commission of Correctional Health Care, reviewed the manuscript of *The Correctional Psychologist's Handbook* (1999) at the request of the American Correctional Association, and was chairperson and co-author of two revisions of the *Standards for psychology services and jails, prisons, correctional facilities and agencies* published by the American Association for Correctional Psychology in the *Journal of Criminal Justice and Behavior* (2000 and 2010). I was a member of the Advisory Board of the Mental Health in Corrections Conferences sponsored by the Forest Institute of Professional Psychology, and a presenter on mental health and criminal justice system topics at a number of those conferences.

I have been and continue to be an occasional book reviewer for PsyCRITIQUES, a service provided by the American Psychological Association. These reviews have included, among others, a review of *The Handbook of Correctional Mental Health* (Scott, C. L., M.D., & Gerbasi, J. B., M.D., (Eds.), 2005) and *Advancing the Science of Suicidal Behavior: Understanding and Intervention* (Lamis, D. A. & Kaslow (Eds), 2015).

Although I retired from the Wisconsin Department of Corrections in 2008, I have remained active in matters related to the criminal justice system as President and now Member-at-Large of the Executive Board of the International Association for Correctional and Forensic psychology (IACFP), as well as Chair of the Practice Standards Committee and monitor of the IACFP Ethics Hotline. I am a frequent

contributor to *The Correctional Psychologist*, the quarterly newsletter of the International Association for Correctional and Forensic Psychology.

Finally, for more than a decade I have provided expert opinion in a number of inmate suicide cases, all of which have been settled out of court.

A true and correct copy of my curriculum vitae has been provided to attorney John Ninosky, representing the defendants.

## DOCUMENTS REVIEWED

I have reviewed the following documents forwarded by your office: the Plaintiff's amended complaint, dated April 27, 2016, the deposition transcripts of Angela Carlos, Hueth Carlos, and Natalia Carlos; mental health staff Patrick Gallagher, LPC; Pamela Rollings-Mazza, MD; counselor Janet Jackson;   Holly Snyder, RN; and Aimee Leiphart, LPN; correctional officer counselors Carl Neeper, and Sonny Trigilio,  corrections officers Erika Collins, Ross Crist, Christopher McNicholas, Scott Nadeau, and Grissel Santos-Heredia; Deputy Warden Clair Doll; counselor notes from April 14, 2011 to October 21, 2013; the CQI Meeting Minutes and Quarterly Administrative Meeting Minutes, related medical and prison records, the Mortality Review, the Psychological Review by Robert Nichols, PsyD; documentation regarding the ICE investigation; CRCL Recommendations  and York County's response; the National Commission for Correctional Healthcare standards and Accreditation; PrimeCare Medical's Suicide Prevention policies; the expert reports by Raymond Patterson, MD, and the analytical report regarding this case (Case # 1) by Lindsay Hayes included in his April 1, 2014 "Report on Suicide Prevention Practices within the York County Prison" for the U.S. Department of Homeland Security Office for Civil Rights and Civil Liberties.

Since the chronological information in the reports of Lindsay Hays and Dr. Patterson are very consistent with the medical records and chronology of Ms. Carlos' detention at YCP, the Plaintiff's Amended Complaint, and the Psychological Review of the Medical Record, that information will not be reiterated in this report.

## OVERVIEW

During the expansion of the number of incarcerated mentally ill inmates during the past four decades, inmate suicide has been a leading cause of death in jails and prisons. Consequently, the past two decades have seen an evolution of policies and procedures related to the identification and prevention of inmate suicides, regardless of the status of the inmate (e.g., detainee or inmate). A number of these policies and procedures have been codified into standards and published by national organizations including the National Commission on Correctional Health Care (NCCHC), the American Correction Association, (ACA)  and the International Association for Correctional and Forensic Psychology (IACFP).

4

The aim of these standards is to assist prison, jail, and other correctional agency staff in the prevention of inmate suicides by providing training in the identification of those at risk for suicide and effectively intervening with professionally-recognized treatment modalities including preventive housing (e.g., observation and suicide-proof cells), counseling by designated qualified mental health staff, psychotropic medication prescribed by properly trained staff (e.g., psychiatrists, nurse practitioners (NPs) and physician's assistants (PAs). Consequently, prisons, jails, and contract providers for medical and mental health care have developed and implemented suicide prevention policies and procedure that give direction to facility and agency staff who responsibilities are to identify suicide risk and effectively intervene to prevent a suicide.

Some of the above-referenced organizations (e.g., NCCHC, ACA) are also involved in reviewing the standards of practice at jails and prisons and accrediting those facilities as meeting the their accreditation standards, the most prominent being the NCCHC. Such accreditation alleges that the facility or agency is in compliance with that organization's standards, policies and procedures related to the care of inmates.

## POLICIES AND PROCEDURES

In the event of an inmate suicide, there is often an effort to determine if all the applicable local policies and procedures are in place and consistent with applicable standards. In this case, the relevant suicide prevention standards are those of the NCCHC, with PCM and York County policies and procedures as they govern the suicide prevention policies implemented at York County Prison (YCP).

### National Commission of Correctional Health Care

The 2008 NCCHC standard for suicide prevention is presented in Standard MH-G-04, Suicide Prevention Program, that states that "the facility identifies suicidal inmates and intervenes appropriately" (p. 81). The compliance indicators in NCCHC's Suicide Prevention Program include the identification of and instituting precautionary actions for potentially suicidal inmates, that such inmates are promptly evaluated by designated clinical staff who direct the intervention and assures follow up, that actively suicidal inmates are placed under constant observation, and potentially suicidal inmates are monitored on an identified schedule.

NCCHC's standards also specify key components of a suicide prevention program that include training, identification, referrals, evaluations, treatment, housing and monitoring, communication, intervention, notification, review and debriefing in the event of an inmate suicide.

These standards were in place during Ms. Carlos' detention in York County Prison.

### PrimeCare Medical's Suicide Prevention Program as applied to York County Prison

5

PrimeCare Medical's Suicide Prevention Program (SPP) YCP-G-05 was developed in keeping with and referenced to NCCHC's Suicide Prevention Program. In their 9-page policy, PCM's SPP's stated purpose is to "provide a program for identifying, responding and, hopefully, preventing suicide by inmate/patients."

To do so, PCM's Suicide Prevention Program's provides for the Intake Screening for suicide risk, levels of suicide watch, who may discontinue suicide watch levels, and various levels of communication among prison staff, as well as follow up within specific timeframes. To facilitate these processes, PCM's Suicide Prevention Policy also mandates suicide prevention training, identification of potentially suicidal inmates, referrals to mental health providers, evaluations by licensed mental health professionals, communication among YCP health care and correctional personnel, interventions as warranted, notification of identified individuals in the event of a suicide-related event, reporting, medical and administrative reviews of an suicide-related event, review, housing and monitoring of potentially or actively suicidal inmates, and critical incident debriefing following a suicide incident.

At the end of the PCM's SPP policy, it states that "Staff is to follow the above outlined policies for suicide prevention."

PCM's policy was in place during Ms. Carlos' detention in YCP.

It should be noted that on March 15, 2013, NCCHC voted to continue YCP's accreditation status for its compliance with NCCHC's *Standards for Health Services in Jails,* noting that PCM's Suicide Prevention Program for YCP "addresses each of the 11 key components as described by the standard. Inmates are screened for suicidal ideation at intake. Potentially suicidal inmates are monitored on an irregular schedule not exceeding 15 minutes. The responsible health authority approves the training curriculum for staff." Noting the one suicide since their last survey, that reported that "the standard is met."

ANALYSIS

When Ms. Carlos was received at YCP, there was no doubt that Ms. Carlos' mental health history contained numerous variables relatively correlated with suicide risk. She was an individual with a history of a serious mental disorder with an early onset contributing to poor reality testing, psychotic events, impaired impulse control, mood and behavioral regulation, a related legal history, and possible alcohol and substance abuse. She also experienced two traumatic events (rapes) during adolescence. Her mental disorder resulted in numerous psychiatric hospitalizations, and treated with a number of psychotropic medications, most recent to her reception was Haldol decanoate. In addition to her mental disorder, she was additionally stressed by her potential for deportation.

Per PCM's Suicide Prevention Program policy, Ms. Carlos was screened for suicide risk at Intake but her score was not sufficient to suggest she was at high risk for suicide.

6

However, given information she provided about her mental health history she was instead referred for a mental health evaluation that was completed by Mr. Gallagher, and referred for a psychiatric assessment. Her medication--biweekly injections of Haldol decanoate-- was continued throughout the time of her incarceration.

During her incarceration, her behaviors resulted in numerous placements in psychiatric observation status during which she was seen by a designated mental health services provider (Mr. Gallagher). She was also subject to placements in disciplinary units (BAU and ICU) that mandated suicide watch status upon admission. However, this appeared to be the result of security policy and not a part of PCM's suicide prevention policy. Nonetheless, she was assessed by Mr. Gallagher for suicide risk and it was his clinical judgment that she did not present as someone at risk for suicide.

Her suicide attempt in August resulted in her being placed on Constant Observation status as mandated by PCM's policy, she was accordingly seen by mental health staff per policy, and after being released from constant observation was eventually placed and then released from Psychiatric Observation status. Although various YCP corrections' staff described her as easily agitated, occasionally immature, and attention seeking, the circumstances surrounding her August attempt led both mental health and security staff to believe her attempt was attention-seeking rather than reflecting a genuine interest in ending her life. Consequently, following her release from Psychiatric Observation status, she was not placed on any suicide risk precautions at the time of her suicide.

It should be noted here that suicide prevention and intervention policies and procedures are implemented only after an individual has been identified and referred as a potential suicide or self-harm risk. Per suicide prevention policy, that decision is ultimately a clinical one made by designated qualified mental health staff based on their training and experience.

Despite her adjustment difficulties throughout her incarceration, until her suicide attempt in August, 2013, Ms. Carlos made no specific threats of self harm, made no admissions of suicidal ideation, and contracted for safety as described by Mr. Gallagher in his deposition. Similarly, after her August, 2013 attempt, she continued to deny any suicidal ideation, and made no additional self-harm attempts until her suicide in October, 2013. For some weeks prior to her October suicide, she was no longer viewed by mental health staff as a suicide risk so was not on any suicide precautions or in psychiatric observation, so there was no policy-related need to place her in a suicide-proof room.

Although having been engaged in a verbal dispute with another inmate who reportedly said "Why don't you just kill yourself?" approximately 45 minutes prior to her suicide, after a brief period of agitation, security staff alleged that Ms. Carlos seemed relatively calm 15 minutes before she hung herself. Given this circumstance, it would appear that her decision to commit suicide was relatively impulsive and difficult to foresee, let alone prevent in a timely way.

In summary, although the Plaintiffs allege deliberate indifference (generally defined as a failure to take into account a substantial risk and not taking reasonable measures to abate it) to Ms. Carlos' mental health needs and potential suicide risk, the documents available for review showed that per PCM suicide prevention and policy and procedures, she was properly identified as having a serious mental illness, was referred for an assessment by mental health staff that was completed by a designated mental health services provider (Mr. Gallagher) within the timelines dictated by PCM policy, her psychotropic medication was continued by Dr. Rollings-Mazza, who assessed Ms. Carlos 17 times during her 30-month detention. She was seen by various mental health staff over 30 times, was placed and assessed in Suicide Watch status 4 times, was placed in constant observation and suicide watch status following her suicide attempt in August, 2013 (viewed by mental health staff as primarily an attention-seeking attempt), spent 216 days on Psychiatric Observation status (approximately 25% of her time) during which she was assessed weekly by a designated mental health services provider.

Depositions of mental health staff revealed that despite her mental health and behavioral history, various mental health challenges, her persistent adjustment difficulties at YCP, and her suicide attempt in August, 2013, neither mental health staff nor security staff clinically regarded Ms. Carlos as a high-level suicide risk, stating they were "surprised" by her suicide in October.

## CONCLUSIONS AND OPINION

The documents available for my review have led me to conclude that PCM's Suicide Prevention Program policies and procedures were consistent with those of the NCCHC's Suicide Prevention Program standards, and implemented in the mental health care of Ms. Carlos. It should be noted that in his analysis of this case, Lindsay Hayes opined that PCM's suicide screening for ICE detainees was "very good," that YCP, PCM, and ICE staff "had a good working relationship," and that PCM's suicide prevention policy provided very good descriptions of the procedures to be followed once an inmate was identified as potentially suicidal.

In that respect, it appears that many of the Plaintiff's allegations emanate from differences of clinical opinion, speculation, and interpretations regarding Ms. Carlos' level of suicide risk, as well as the management complications arising from the intersection of her ICE detainee status, YCP disciplinary sanctions--both of which were outside the scope of PCM's Suicide Prevention Program policies and procedures--and PCM mental health services.

While it is often difficult to keep Suicide Prevention policies and procedures and the accuracy of clinical judgment separate, especially in the unfortunate and tragic event of an inmate suicide such as in Ms. Carlos' case, it is my opinion, to a reasonable degree of professional certainty, that PCM's Suicide Prevention Program policies and procedures provided a sufficient framework within which clinical judgments could occur and treatment interventions implemented.

8

Moreover, as the medical records revealed, Ms. Carlos' mental health needs and suicide risk were clearly not ignored. Based on my correctional clinical experience, PCM's mental health services staff made reasonable efforts to address both under the circumstances of her incarceration. Consequently, to a reasonable degree of professional certainty, it is my opinion their efforts did not reflect deliberate indifference.

I hope my opinion will be useful in this case. As always, I reserve the right to change my conclusions should additional circumstances or documentation warrant.

Respectfully,

Richard Althouse, Ph.D.
Licensed Psychologist

9

# EXHIBIT DD

STEPHEN MECHANICK, M.D.
14 ELLIOTT AVENUE, SUITE 6
BRYN MAWR, PA 19010-3412


December 16, 2016


PSYCHIATRIC EVALUATION: CARLOS V. PRIMECARE, ET AL.


INTRODUCTION:

Tiombe Kimana Carlos was born in Antigua, West Indies on November 21, 1978. Ms. Carlos entered York County Prison on April 14, 2011 on immigration charges. Ms. Carlos was an inmate of Immigration and Customs Enforcement (ICE) at York County Prison from April 8, 2011 until her death on October 23, 2013, when she committed suicide by hanging.

Angela Carlos, who was Tiombe Carlos's mother and who is the Administratrix of the estate of Tiombe Carlos, has filed a lawsuit against multiple defendants including PrimeCare Medical, Inc. and its doctors, Pamela Rollings-Mazza, M.D. and Robert Davis, M.D. The lawsuit also names Patrick Gallagher, LPC and other medical staff and correctional officers. Johnson Duffie, the law firm representing PrimeCare Medical, Dr. Rollings-Mazza, and Dr. Davis, requested that I perform a psychiatric evaluation of PrimeCare's treatment of Ms. Carlos.

SOURCES OF INFORMATION:

I reviewed the following documents in the course of preparing this report:

1. Complaint, Angela Carlos, as Administratrix of the Estate of Tiombe Kimana Carlos, v. York County et al. USDC for the Middle District of PA, No. 1:15-CV-1994-WWC-JFS.
2. PrimeCare Medical, Inc. Psychiatric Observation Check Sheets for Tiombe Carlos.
3. York County Prison records for Tiombe Carlos.
4. York County Coroner records for Tiombe Carlos.
5. York Hospital records for Tiombe Carlos.
6. U.S. Department of Homeland Security records for Tiombe Carlos.

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

7. U.S. Public Health Services records for Tiombe Carlos.
8. White Rose Ambulance records for Tiombe Carlos.
9. Bronx Children's Psychiatric Hospital records for Tiombe Carlos.
10. Bronx Lebanon Hospital records for Tiombe Carlos.
11. FBI IAFTS records for Tiombe Carlos.
12. ICE Investigation report regarding Tiombe Carlos.
13. Immigration documents for Tiombe Carlos from Thomas Griffin, Esq.
14. Letter from Angela Dempster.
15. Documents titled, "RTK Request."
   • York County Prison Inmate/Detainee Handbook.
   • Intergovernmental Service Agreement (IGSA).
   • Accreditation Report of the Health Care Services at York County Prison,
     National Commission on Correctional Heath Care, March15, 2013
     awarding the facility Accreditation.
   • Intake Processing Policy.
   • Admissions Policy/Procedures.
   • Suicide Prevention Policy.
   • Settlement Agreement, *Joseph Gardner v. Count of York, et al.*
   • Slides titled, "Red Flags for Potentially Suicidal Behavior."
   • ICE Performance-Based National Detention Standards (PBNDS) 2011
     Suicide Prevention and Intervention.
   • Pennsylvania Department of Corrections Office of County Inspections and
     Services Annual Standards Compliance Inspection for York County Prison
     dated December 28, 2011.
   • York County Prison Duty Roster for 10/21/2013-10/23/2013.
   • York County Prison Log Book for Female Max for 10/19/13-10/23/13.
   • Electronic Rounds Report for Female Max for 10/21/13-10/23/13.
16. St. Barnabas Hospital records for Tiombe Carlos.
17. West Chester County Medical Center records for Tiombe Carlos.
18. York County Coroner Autopsy Report and Toxicology Report for Tiombe
    Carlos.
19. York Hospital subpoena and electronic records.
20. York County Prison Officer's Daily Report, Personal Property, Pod List, and
    Prison Issue Property.
21. PrimeCare Medical, Inc. York County Prison Suicide Prevention Program
    policy.
22. PrimeCare Medical, Inc. York County Prison Confidential Mortality Review
    for Tiombe Carlos dated November 20, 2013.
23. Undated report titled, "Psychological Review of Medical Record" prepared by
    Robert M. Nichols, Psy.D.
24. Transcript of the deposition of Angela Carlos on 6/20/16.
25. Transcript of the deposition of Natalla Carlos on 6/20/16.
26. Transcript of the deposition of Hueth Carlos on 6/20/16.

2

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

27. Transcript of the deposition of Patrick Gallagher on June 23, 2016.
28. Transcript of the deposition of Pamela Rollings-Mazza, M.D. on June 23, 2016.
29. Transcript of the deposition of Aimee Leiphart, LPN on June 23, 2016.
30. Transcript of the deposition of Holly Ann Snyder, RN on June 23, 2016.
31. Enclosure A: CRCL Non-Priority Recommendations.
32. Enclosure B: Report by Lindsay M. Hayes titled, "Report on Suicide Prevention Practices Within York County Prison" for the U.S Department of Homeland Security Office for Civil Rights and Civil Liberties dated 4/1/14.
33. Memorandum by Megan H. Mack, Office for Civil rights and Civil Liberties, and Susan Mathias, Assistant General Counsel, Office of General Counsel for Sarah Sadana, Director, U.S. Immigration and Customs Enforcement, dated 10/14/15.
34. ODO Inspection—York County Prison Response dated 2/23/15 to the Office of Detention Oversight's inspection findings from December 10-12, 2013.
35. Transcript of the deposition of Erika Collins on June 21, 2016.
36. Transcript of the deposition of Ross Crist on May 23, 2016.
37. Transcript of the deposition of Clair Doll on May 23, 2016.
38. Transcript of the deposition of Janet Jackson on May 25, 2016.
39. Transcript of the deposition of Christopher McNicholas on May 25, 2016.
40. Transcript of the deposition of Scott Nadeau on May 25, 2016.
41. Transcript of the deposition of Carl Neeper on May 23, 2016.
42. Transcript of the deposition of Grissell Santos-Heredia on June 21, 2016.
43. Transcript of the deposition of Sonny Triglio on May 25, 2016.
44. CQI Meeting Minutes.
45. Quarterly Administrative Meeting Minutes.
46. Plaintiff's expert psychiatric report by Raymond Patterson, M.D. dated June 23, 2016.
47. Plaintiff's Addendum Report by Raymond Patterson, M.D. dated September 30, 2016.

DISCUSSION:

Ms. Carlos was admitted to the York County Prison for Immigration and Customs Enforcement (ICE) on April 8, 2011. Mental health staff appropriately evaluated and monitored Ms. Carlos after she was admitted to the prison.

Patrick Gallagher noted on April 14, 2011 that Security was concerned about Ms. Carlos's adjustment and had requested that mental health evaluation her after she exhibited problems on the ICE transport bus. Mr. Gallagher noted that Ms. Carlos had a mental health history and reported that she got Haldol Decanoate intramuscularly (i.m.) every two weeks. Mr. Gallagher noted a rule-out diagnosis of paranoid schizophrenia, and he put her on psychiatric observation in the Behavioral Adjustment Unit.

3

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

Marquita Long appropriately performed an Intake Suicide Screening and Receiving Screening/Health Assessment on April 16, 2011.  The only positive findings for suicide risk that were noted on the Intake Suicide Screening were significant loss within the last six months, a mental health treatment history, and a history of drug or alcohol abuse. Ms. Long noted on the Intake Suicide Screening form that Ms. Carlos denied having thoughts of killing herself, a history of past suicide attempts, or feeling hopeless.

Pamela Rollings-Mazza, M.D. ordered Haldol Decanoate 100 mg. on 4/20/11. Dr. Rollings-Mazza monitored and treated Ms. Carlos throughout the rest of her incarceration.  She assessed Ms. Carlos to have Schizoaffective Disorder and continued Ms. Carlos on haloperidol (Haldol) during the course of Ms. Carlos's incarceration.  Dr. Rollings-Mazza's records document that Ms. Carlos did not exhibit psychotic symptoms, such as delusions or hallucinations, during her incarceration.  Records of Dr. Rollings-Mazza and other mental health staff support the conclusion that Ms. Carlos's psychiatric condition was appropriately treated, and indicate that Ms. Carlos did not experience an exacerbation of her psychotic disorder during her incarceration.

PrimeCare staff and other mental health staff put Ms. Carlos on Suicide Precautions and Psychiatric Observation at times during her incarceration for behavioral problems, including altercations with other inmates and with correctional staff.  This was a reasonable and appropriate behavioral health response that permitted closer observation and monitoring.

Ms. Carlos's behaviors that led to these interventions did not indicate that she was at risk for suicide. For example, Emily Glackin, R.N. completed an Altercation Evaluation Form on 7/11/13 after Ms. Carlos was in an altercation with staff.  Ms. Glackin noted that Ms. Carlos denied having suicidal thoughts, feeling like hurting herself or someone else, feeling out of control/hopeless, or hearing voices or seeing things other people could not see.  Ms. Glackin put Ms. Carlos on suicide precautions pending mental health evaluation.

PrimeCare staff and other mental health staff met with Ms. Carlos on a number of occasions to discuss her concerns, including her concerns about her immigration status. For example, Patrick Gallagher, LPC noted on February 19, 2013 that a correctional officer had referred Ms. Carlos because she was crying and upset. He noted that he discussed with Ms. Carlos her concern about having learned during a recent phone call that her parents were having relationship problems.

Mr. Gallagher noted on March 6, 2013 that he saw Ms. Carlos due to her podmates' concern about her explosiveness. He noted that Ms. Carlos's mood and affect were bright, and she reported that she felt good because her mother had told her that her father was going to visit her.

4

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

Mr. Gallagher noted on May 13, 2013 that Ms. Carlos asked to see him and that she was anxious about her ICE situation. He noted that he and Ms. Carlos discussed her concerns. Mr. Gallagher noted that Ms. Carlos denied having suicidal ideation, and that she was cooperative.

Dr. Rollings-Mazza noted on June 6, 2013 that Ms. Carlos reported frustration with her immigration situation. She noted that Ms. Carlos had no overt psychotic symptoms, was not agitated, and denied having suicidal ideation.

PrimeCare staff and other mental health staff saw Ms. Carlos frequently during the months leading up to her death. Mr. Gallagher completed sick calls and mental status examinations on July 12, 18, 25, and on August 7 and 12, 2013. Mr. Gallagher documented in his notes on those dates that Ms. Carlos was cooperative, relaxed, and calm; had normal mood and logical and organized thought processes; did not have delusions or hallucinations; denied having suicidal ideation, and had no suicidal plan. Mr. Gallagher did not note that Ms. Carlos had any symptoms of depression, such as impaired sleep, helplessness, hopelessness, or suicidal ideation, and he assessed that Ms. Carlos was not at suicide risk.

A Medical Note by Emily Glackin, R.N. dated July 26, 2013 stated the following:

*Spoke with pt about current housing status. Pt thought that she was ICU status and was upset. When told by security her status pt was fine. Pt denies any SI and has been [compliant] with meds. Will follow up with MH prn.*

Dr. Rollings-Mazza saw Ms. Carlos on July 29, 2013 and noted that Ms. Carlos was alert and oriented, not agitated, had no overt psychosis, denied having suicidal ideation, and was compliant and cooperative. Dr. Rollings-Mazza assessed Ms. Carlos to be stable.

Correctional officers observed Ms. Carlos apparently attempting to hang herself with a sheet on August 13, 2013. PrimeCare staff and other mental health staff appropriately evaluated Ms. Carlos after that incident. Nurse Practitioner Angelita Zechman noted that Ms. Carlos had erythema on the left side of her neck and mild tenderness.

PrimeCare staff and other mental health staff appropriately transferred Ms. Carlos to York Hospital for medical evaluation. Records from York Hospital stated the following:

*Pt prisoner [sic] and wrapped sheet around her neck and attached the other end to the window, and sat down putting tension on her neck and sheet. This was witnessed and per guards lasted "maybe 10 seconds."*

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

York Hospital records noted that Ms. Carlos did not have any serious injuries resulting from her behavior. Ms. Carlos was diagnosed with neck strain. She was assessed to be stable and discharged back to prison.

PrimeCare staff and other mental health staff performed multiple evaluations of Ms. Carlos after August 13, 2013. Amy Leiphart, LPN noted on August 14, 2013 that Ms. Carlos complained of a sore throat and requested ibuprofen. Ms. Leiphart noted that Ms. Carlos was alert and oriented, eating dinner, and had appropriate speech and behavior.

Mr. Gallagher met with Ms. Carlos at her cell on August 14, 2013 and noted that Ms. Carlos said that she did not want to speak to him. He continued her on Constant Watch and Suicide Precautions.

Dr. Rollings-Mazza noted the following on August 14, 2013:

*Subjective: Recheck/Review – pt [on suicide precautions/constant watch] – attempted hanging yesterday – pt had been doing well – up to yesterday morning-compliant-interactive-yesterday late morning making requests to change status-pt on ICU status per security-pt had been seen and informed housing status was decision of security and not MH-following pt observed by security- not another inmate in same pod on CW-pt observed making attempt to hang self-security report pt waited until security entered cell before attempting to hang [herself]- pt was medical cleared – at this time pt refusing eval – and reports she will no longer take her prescribed mh meds-unable to eval-pt uncooperative.*

Dr. Rollings-Mazza assessed Ms. Carlos to be upset with housing. She noted that Ms. Carlos was on Suicide Precautions (SP) and Constant Watch (CW) following an attempted hanging and that she would continue SP and CW. Dr. Rollings-Mazza noted that she would continue Ms. Carlos's current medication.

Mr. Gallagher met with Ms. Carlos at her cell on 8/16/13. He noted that he "laid out the behavioral expectation for her to be stepped down from CW," and Ms. Carlos "could not agree to these." Mr. Gallagher noted that Ms. Carlos was unable to commit to safety, and he continued her on Constant Watch and Suicide Precautions.

Shannon Taylor met with Ms. Carlos at her cell door on August 17, 2013. She noted that Ms. Carlos refused to speak with her and was unable to commit to safety. Ms. Taylor maintained Ms. Carlos on Suicide Precautions and Constant Watch.

Jeff Leer saw Ms. Carlos at her cell on 8/18/13 to review her suicide precautions status. He noted that Ms. Carlos did not come to the door but said that she was doing okay. Mr. Leer noted that Ms. Carlos remained on Suicide Precautions and Constant Watch.

6

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

Mr. Gallagher saw Ms. Carlos at her cell on 8/19/13 to review her suicide precautions and constant watch. He noted that Ms. Carlos was appropriate and cooperative. Mr. Gallagher noted that Ms. Carlos contracted for safety and agreed to cooperate with treatment. He discontinued constant watch and maintained Ms. Carlos on Suicide Precautions.

Mr. Gallagher saw Ms. Carlos at her cell on 8/20/13. He noted that Ms. Carlos was appropriate and cooperative, her mood was normal, her affect was congruent to mood, and her thought processes were intact. Mr. Gallagher noted that Ms. Carlos denied having suicidal ideation or homicidal ideation. He noted that Ms. Carlos was oriented x 4 and cooperative. Mr. Gallagher assessed Ms. Carlos to not be suicidal, and he discontinued suicide precautions. He noted that Ms. Carlos would be placed on Psychiatric Observation and that she would be permitted all items allowed on the ICU.

Robert Davis, M.D. saw Ms. Carlos at her cell on 8/20/13 for PRC review. He noted the following:

> *Subjective: Inmate vented anger at system for not either releasing her or deporting her. She says they won't release her because of assault charges. She minimized her psychiatric history and declined any med changes or increases. Objective: Animated, angry, good eye contact-speech goal oriented. She admitted hearing voices at times. Paranoid but not delusional.*

Dr. Davis noted on 8/20/13 that Ms. Carlos's psychiatric diagnosis was Schizophrenia, Paranoid Type, and that there was no change in Ms. Carlos's treatment plan.

A note dated 8/21/13 stated that Ms. Carlos was given Haldol decanoate.

A weekly mental health segregation check sheet note by Holly Snyder, RN dated 8/22/13 stated that Ms. Carlos would not respond to her questions. Ms. Snyder noted that Ms. Carlos was compliant with her medication and eating, and she assessed Ms. Carlos as not being at high risk for suicide.

Aimee Leiphart, LPN had completed a Mental Health Segregation Observations Sheet form on 8/26/13 and noted that Ms. Carlos was calm and cooperative, had a normal affect, and was alert and oriented. Ms. Leiphart did not note that Ms. Carlos was delusional or that Ms. Carlos had auditory or visual hallucinations. She assessed Ms. Carlos as not being at high risk for suicide.

Patrick Gallagher, LPC saw Ms. Carlos at her cell on 8/30/13 for PRC review. He noted that Ms. Carlos was appropriate and cooperative. Mr. Gallagher noted that Ms. Carlos's mood was normal, her affect was appropriate to mood, and her thought

7

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

processes were intact. Mr. Gallagher noted that Ms. Carlos denied having suicidal ideation or homicidal ideation. He noted that Ms. Carlos was oriented x 4 and cooperative. Mr. Gallagher noted that Ms. Carlos was on ICU (intensive custody unit) status and that she would be maintained on Psychiatric Observation.

Bette Ann Becker, LPN noted on 9/4/13 that Ms. Carlos refused her Haldol decanote injection and was argumentative. Ms. Becker noted that follow-up was tasked to the mental health nurse.

Another note from 9/4/13 stated that Aimee Leiphart, LPN gave the injection.

A mental health segregation check sheet note by Holly Snyder, RN dated 9/5/13 stated that Ms. Carlos was calm, cooperative, and non-violent; had a normal affect; and was alert and oriented. Ms. Snyder did not note that Ms. Carlos was delusional, or that she had auditory or visual hallucinations. She noted that Ms. Carlos was compliant with medication and that Ms. Carlos was eating. Ms. Snyder assessed Ms. Carlos as not being at high risk for suicide.

A mental health segregation check sheet note by Aimee Leiphart, LPN dated 9/12/13 stated that Ms. Carlos was calm, cooperative, and non-violent; had a normal affect; and was alert and oriented. Ms. Snyder did not note that Ms. Carlos was delusional or that she had auditory or visual hallucinations. She noted that Ms. Carlos was compliant with medication and that she was eating. Ms. Leiphart assessed Ms. Carlos as not being at high risk for suicide.

A note dated 9/18/13 stated that Haldol decanoate was given to Ms. Carlos.

A mental health segregation check sheet note by Holly Snyder, RN dated 9/19/13 stated that Ms. Carlos was calm, uncooperative, and non-violent; had a normal affect; and was alert and oriented. Ms. Snyder noted that Ms. Carlos would not respond to her questions, and that Ms. Carlos was not a safety issue at that time. Ms. Snyder did not note that Ms. Carlos was delusional or that she had auditory or visual hallucinations. She noted that Ms. Carlos was compliant with medication and that she was eating. Ms. Snyder assessed Ms. Carlos as not being at high risk for suicide.

Patrick Gallagher, LPC saw Ms. Carlos at her cell on 9/19/13 for PRC review. He noted that Ms. Carlos was upset and insisted that she could not handle ICU status. Mr. Gallagher noted, "We asked what this meant. Pt denied ideations of self harm. We then discussed what she could do to cope." Mr. Gallagher noted that Ms. Carlos was depressed and anxious. Mr. Gallagher noted that Ms. Carlos denied having suicidal ideation or homicidal ideation. He noted that Ms. Carlos was oriented x 4 and that she was cooperative. Mr. Gallagher assessed Ms. Carlos to have adjustment issues. He stated in his plan that Ms. Carlos was on ICU and that she would be maintained on Psychiatric Observation.

8

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

Patrick Gallagher, LPC saw Ms. Carlos at her cell on 9/26/13 for PRC (Program Review Committee) review. He noted that Ms. Carlos was appropriate and cooperative, her mood was normal, her affect was congruent to mood, and her thought processes were intact. Mr. Gallagher noted that Ms. Carlos denied having suicidal ideation or homicidal ideation. He noted that Ms. Carlos was oriented x 4 and cooperative. Mr. Gallagher stated that Ms. Carlos was on ICU and would be maintained on Psychiatric Observation.

A note dated 9/26/13 stated that Aimee Leiphart, LPN had completed a Mental Health Segregation Observations Sheet form and noted that Ms. Carlos was not high risk for suicide and that she was compliant with her medications.

Dr. Rollings-Mazza saw Ms. Carlos at her cell on 9/30/13. She noted that Ms. Carlos was compliant, cooperative, and appropriate, with no overt psychosis and no agitation. Dr. Rollings-Mazza noted that Ms. Carlos denied having suicidal ideation. She assessed Ms. Carlos to be stable and prescribed Haldol decanoate 100 mg.

A Mental Health Note by Aimee Leiphart, LPN dated 10/2/13 stated the following:

> *Pt very argumentative w/ me this am. She was very upset that I was waking her up at 0930 to get this shot and not waiting till 1130. She states that she doesn't want to be woken up and just wants to sleep. I finally convinced her to come to medical and take the haldol dec shot in her left deltoid – denies si/hi or hallucinations. Rtc prn.*

Patrick Gallagher, LPC saw Ms. Carlos on 10/2/13 for PRC review. He noted the following:

> *Pt requested to be taken [off] PO [Psychiatric Observation]. Pt cites [sustained] time without negative incidents. Pt will remain on ICU. PRC agreed to end PO on my recommendation.*

> *Objective: Pt mood normal affect congruent to mood. Pt thought process intact. Pt denied SI and HI. Pt oriented x 4 and cooperative.*

Based on his evaluation of Ms. Carlos, Mr. Gallagher made a reasonable and appropriate decision to discontinue psychiatric observation status on October 2, 2013. Subsequent evaluations by PrimeCare staff and other mental health staff did not indicate that Ms. Carlos was suicidal.

A note by Holly Snyder, RN dated 10/3/13 stated the following:

9

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

> *Pt seen at her cell door for her wkly mh seg check.* ***She states that she is okay and having no problems at this time. Denies si/hi or hallucinations. Mood – stable, aao3, rtc prn.*** [Emphasis added.]

A Mental Health Note by Aimee Leiphart, LPN dated 10/10/13 stated the following:

> *Pt seen for her wkly mh seg check. She states that she is okay and having no problems at this time.* ***Denies si/hi or hallucinations. Mood-stable, aaox3, rtc prn.*** [Emphasis added.]

A Mental Health Note by Holly Snyder, R.N. dated 10/17/13 stated the following:

> *Pt seen for her wkly mh seg check. She states that she is okay and having no problems at this time.* ***Denies si/hi or hallucinations. Mood-stable, aaox3, rtc prn.*** [Emphasis added.]

Ms. Carlos did not report to PrimeCare staff and other mental health staff or correctional staff that she had suicidal ideation or intent leading up to her death. Officer Collins noted the following on 10/23/13 regarding an incident that occurred at approximately 9:17 p.m.:

> *On the above date this writing officer assumed duties at 4:00 pm in female maximum. At 4:00 pm this officer's position was to do clock rounds. Conducting clock rounds from 4:00pm until 5:45 pm. During that time frame I/M Carlos, Tiombe (I)#172760* ***was acting her normal self.*** *I/M Carlos has been on the quieter side for the past few weeks. This writing officer asked I/M Carlos how she was doing today during the time frame of 4:00 pm-5:45 pm.* ***I/M Carlos responded, "fine" as she was listening to her music. Around 5:30 pm this writing officer and another officer joked with I/M Carlos about her sitting on her stool and I/M Carlos laughed and made a funny comment back.*** *I/M Carlos ate dinner and kept to herself like she has been doing.* [Emphasis added.]

Officer Collins continued as follows:

> *Around 8:30 pm I/M Carlos did* ***get upset because she could not see the television from where her cell is. Immediately after that, I/M Carlos got into a mouth battle with another inmate. I/M Carlos was very aggitated [sic] from that situation.*** *This writing officer had the position of doing clock rounds from 9:15 pm – 10:00 pm. At 9:17 this writing officer entered A-pod to do the rounds in that pod. This writing officer noticed I/M Carlos who appeared to be standing with her back to the door, so I/M Carlos was question what she was doing. I/M Carlos did not respond. This writing officer then noticed a cloth tied around the bars of the window . . .* [Emphasis added.]

10

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

Officer Collins' note supports the conclusion that Ms. Carlos made an impulsive decision to commit suicide after an altercation with another inmate. Her behavior leading up to that altercation did not indicate that she was suicidal, or that suicide precautions were indicated.

Ms. Carlos was not only seen by PrimeCare staff and doctors and other mental health staff during her incarceration. Prison counselors also Ms. Carlos on multiple occasions, and correctional officers monitored her throughout her incarceration. Counselor Notes from 2013 included a Counselor Note by B. Horner dated 7/11/13, which stated that Ms. Carlos was placed on BAU status after receiving a misconduct report for assault on another inmate.

A Counselor Note by J. Jackson dated 7/15/13 stated the following:

*I met with Tiombe at her cell today along with C/O E. Reyes. She was laying down and said that she didn't want to talk. She was written up for being disruptive and claims that the other inmates took advantage of her canteen and made a group chichi [sic] and handed it out to everyone. This got the best of Tiombe and was resisted once she came out of the pod thus ending up on BAU status.*

A Counselor Note by J. Jackson dated 8/28/13 stated the following:

*I checked in with Tiombe today at her cell door along with C/O D. Seltz. She said that she "has a problem with her butt." I asked her if she has filled out a sick call slip. She told me that her problem is that her butt just keeps getting bigger. I laughed and she said that she was serious. She said that she was going to start to work out. Tiombe then asked how long she was going to be on ICU status. I told her that she needs to speak with the PRC group on Wednesdays because they would be the ones to determine this, not me. She understood and said that she'll ask next week. She didn't have any other questions/issues at this time.*

A Counselor Note by J. Jackson dated 9/26/13 stated the following:

*I checked in with Tiombe today at her cell door. She was laying down. I asked her if she was doing alright and **she said that she's fine**. She didn't want to talk so I left [sic] her be. She didn't have any other questions/issues at this time.* [Emphasis added.]

A Counselor Note by Trig/Nadeau dated 10/2/13 stated that Ms. Carlos's psych observance was discontinued and that she remained on ICU status as per Pat Gallagher, LPC.

11

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

A Counselor Note by J. Jackson dated 10/21/13 stated that Ms. Carlos was moved to FEM A-1B on ICU status.  The note stated, "Her cell was needed for another inmate with a medical appliance (cell is closer to medical)."

Prior to her death, Ms. Carlos was in a pod with other inmates who were being monitored frequently.  A document titled "Decedent Narrative" (PCM01881) from the York County Coroner's records stated that Trooper Grothey relayed the following information about Ms. Carlos:

*The decedent had been in a secured cell and was kept in her cell except 45 minutes per day.  She had been on every 1, 2 [sic; presumably ½] hour checks. There were other inmates in her pod that required 15 minute checks, and the decedent had actually been checked on every 15 minutes.*  [Emphasis added.]

The ICE Detainee Death Review stated the following:

*CARLOS's medical record reflects she was routinely monitored by mental health professionals throughout her detention at YCP, but the record does not demonstrate, "an overall treatment plan with measureable goals and objectives" was ever developed for her.*

The ICE Detainee Death Review stated the following:

*Creative Corrections notes CARLOS's medical record reflects regular monitoring by medical and mental health staff during all periods she was on suicide watch or psychiatric observation, in compliance with the ICE PBNDS, Medical care; and, the ICE PBNDS, Suicide Prevention and Intervention.* [Emphasis added.]

The Detainee Death Review stated that Ms. Carlos was on 30-minute rounds, but was actually checked every 15 minutes because another detainee in A-Pod required 15-minute checks.

The Detainee Death Review stated the following:

*On October 23, 2013, Officer [name redacted] conducted the security checks between 4:00 p.m. and 5:45 p.m.  in her incident statement, Officer [name redacted] documented that during these checks, CARLOS behaved normally, stated she was 'fine," made jokes with the officers on duty, and ate her dinner. Officer [name redacted] noted CARLOS was quieter than normal during he weeks leading up to her death.*

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

> *Officer [name redacted] stated CARLOS was upset and yelled at her because she could not see the television. Officer [name redacted] stated after she finished her checks, she returned to A-pod and adjusted the television so CARLOS could see it. Officer [name redacted] stated that before she returned to adjust the television, CARLOS argued with an in mate in A-pod [name redacted] who told CARLOS she should ask to have the television moved instead of yelling. Officer [name redacted] stated during her December 11, 2013 interview with ODO that she remembered overhearing the argument between CARLOS and [name redacted] and although she did not hear the exact words exchanged, **other staff members stated [name redacted] told CARLOS, "Why don't you go kill yourself."** Officer [name redacted] stated CARLOS was a very emotional and reactive individual, and **she believes whatever [name redacted] said to CARLOS during their argument, "set CARLOS off."** [Emphasis added.]*

The testimony of correctional staff supports the conclusion that correctional officers cared about Ms. Carlos and monitored her during her incarceration. Their testimony indicates that Ms. Carlos did not show signs of depression or psychosis, and that she did not indicate that she intended to kill herself before she committed suicide on October 23.

Correctional Officer Collins testified that she worked with Ms. Carlos while Ms. Carlos was in the women's max unit. She stated the following:

> *[W]hen I first started, I can't remember if she was already there or she just came in. But she – I was – worked female max a lot on evening shift, and that's where she was always housed at.*

> *We – she was very comfortable with us because we were the same CO's, myself, that worked over there.*

Ms. Collins testified that Ms. Carlos had an argument with another inmate on October 23 who was "a very problematic inmate, very argumentative" and who knew how to "egg people on and stuff." She stated the following:

> *And I did talk to [Ms. Carlos] after that, but I think the radio part was before the argument. But I remember her being calm after they were arguing about the TV. But before that, my – our evening was fine. That was all that happened.*

> *We went through our normal rounds, routine, everything was okay other than that argument about the TV. And her cell was – is right under the TV, so it's hard to see from there anyways.*

Ms. Collins testified that the other inmate, Janette Cruz-Rivera, argued about the TV, and Ms. Cruz-Rivera said to Ms. Carlos, why don't you kill yourself. She stated,

13

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

"[T]hat's when we walked in, and [Ms. Carlos] was very upset and – but we talked to her and she was okay after that."

Officer Santos-Heredia testified that she had frequent interactions with Ms. Carlos throughout the time that Ms. Carlos was at York County Prison. Ms. Santos-Heredia testified that she was aware on October 23 that Ms. Carlos had an argument but other officers, including Officer Collins, handled it. She stated that Officer Collins told her that Ms. Carlos basically was fine after the argument. Ms. Santos-Heredia stated, "And I think she said that they were joking and laughing, and she was fine after that." She stated that she learned this after the suicide. Ms. Santos-Heredia testified that she learned after the fact that Ms. Cruz-Rivera sad, why don't you just kill yourself.

Ms. Santos-Heredia testified that she saw Ms. Carlos on rounds after the argument. She stated the following:

> Yeah, I said, hey, because I'm pretty sure I looked at her and said, are you all right, and she shakes her head. Because what we're supposed to look for is that people are all right in their cells so --

Ms. Santos-Heredia testified that nothing happened with Ms. Carlos after that, and she did not see anything after the ordinary. She stated the following:

> I believe she was listening to music, I think she had her headset on . . . So when you're in those areas, you make sure everybody is okay, and that's what I was doing. I was kind of, I think, trying to read Ms. Rivera because every time I looked at Bunny [Ms. Carlos], at Tiombe, she was fine. She was listening to music. And I think she was sitting at her desk maybe at one point.

> And then my final – my final round, I saw – it was already 9 o'clock. So, typically, when you're in segregated areas, there's really not much to do. I think meds were already gone, Med pass, and my last rounds she was sitting at the end of her bed. She had her hair wrapped because a lot of girls when they do braids and stuff they wrap their heads. Like she looked like she was preparing to go to bed. And she was just sitting there at the end of her bed, and I left.

Ms. Santos-Heredia testified that October 23, 2013 was a very traumatic day and probably the worst day of her career. She stated the following:

> So after it happened, I – I had a meltdown. I fell apart because I liked Carlos, Tiombe, a lot. Okay? And nothing – none of those girls ever wanted to see or have that happen. When something like that happens on you r dime – on your – on your time, it's never a good day.

14

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

Deputy Warden Clair Doll testified that he saw Ms. Carlos during Program Review Committee (PRC) rounds. He stated the following regarding his interactions with Ms. Carlos on PRC rounds:

> *I remember, you know, talking to her. I remember, in particular, the day that, you know, she wanted to go – move back to General Population. She didn't like the classification of psychiatric observations. And, you know, part of what we were doing as the Team is working her, stepping her down from the, you know, more close observation to a more general observation, increasing her privileges.*

> *I remember discussing with the Team that she . . . wanted off psychiatric observations . . . That would have been – it was before she completed – before she committed suicide. It would have been at least maybe three, four weeks, somewhere in there.*

Deputy Warden Doll stated that he was surprised to learn on October 23 that Ms. Carlos had committed suicide for the following reason:

> *Because [Ms. Carlos] was actively engaged in moving back to General Population. The meetings, from what I recall, that we had with her were positive. Yeah, I was surprised. Surprised, sad, when somebody is with you, it doesn't matter if they're an inmate, she was with us for two and a half years.*

> *So any time you have a death like that, unlike what you see in the movies, that's not how Corrections is. It was very traumatic for the staff, and I'm sure it was for her family as well.*

Ms. Carlos did not report or indicate to her family leading up to or on October 23, 2013 that she intended to commit suicide. Ms. Carlos's mother Angela Carlos, testified that the last time that she visited with Tiombe was three months before Tiombe's death in October 2013. She stated the following when asked whether there was anything about Tiombe during the visit that caused her to be concerned that Tiombe might hurt herself:

> *No. She was – she was happy to see me. She asked for the others. Asked for Natalla. I tell her that Natalla couldn't visit. They say she can't visit because she was too young. And she asked for everybody else at home, the family. I didn't see no signs of – you know,* **she said she can't wait to come home***, so we can go clothes shopping.* [Emphasis added.]

Angela Carlos also testified as follows about what she remembers about her last visit with Tiombe at the York County Prison:

> *It was pleasant and she was happy. And she just keep [sic] telling me she wanted to come out of there. She said she tired of being in there. Tired of whatever . . . I*

15

*was trying to cheer her up, you know, telling her about things we going to do when she get out, me and her and Natalla going to do.*

Angela Carlos testified Tiombe's father and her older sister, Renee Benjamin, came with her for that visit. She stated the following:

*I think [Tiombe's] father see her first and then I see her . . . He see her for half, half an hour or something, and I see her for another half an hour, I think, that day.  I – nobody else could go in that day because the time.*

Angela Carlos stated the following about what she and Tiombe talked about during her visit:

*We just were talking about old-time days, you know, things, her friends and them. She was talking about her friends.  And I was telling her who was asking to say hi and looking forward to see her, and different things.  How Natalla is doing in school, you know, and different things.*

Angela Carlos testified that she spoke with Tiombe on the telephone every other week, and the last time that she spoke with Tiombe by telephone was the week before October 23, 2013.  She stated that there was nothing about that phone conversation that concerned her that Tiombe might harm herself. Ms. Carlos stated, "We were just talking about things she was going to do when she get out." She stated the following about that phone call:

***She said she can't wait to come out*** *to be with Natalla.  She said she can't wait to come out so we can go clothes shopping.  And she was asking me what the latest thing, wearing, you know, and thing like that . . . And I tell her that as soon as she come out, we're gong to go shopping for clothes.*  [Emphasis added.]

Ms. Carlos testified that Tiombe seemed coherent and happy during their last phone conversation.  She stated that Tiombe was happy because she believed that she was getting out soon, and Tiombe believed this for the following reason:

*Because that's what we trying to tell her.  And the last words she get from the Freedom Fighter guy, that send a letter to Washington to ask to let them out.  But then, somebody tell her that everybody else getting out except her, and I don't know.  I wouldn't even say that because I wasn't there.*

Ms. Carlos testified that Tiombe never said to her that she wanted to kill herself. She stated that she did not observe anything in Tiombe's voice or facial expression that suggested that she wanted to kill herself. Ms. Carlos stated, "She wasn't thinking that way by the time I get to talk to her."

16

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

Dr. Patterson provided a number of opinions in his report with which I disagree.  I disagree with Dr. Patterson's opinion, "In their failure to adequately assess and incorporate in her treatment and management Ms. Carlos' long history of decompensation when her medications were not properly administered, her recent suicide attempt, her having been placed in the ICU (a punitive and restrictive unit), and her impending deportation, the mental health staff did not recommend or order that she be placed in a mental health unit and under adequate supervision and treatment."

It is my opinion that PrimeCare records, and the testimony of PrimeCare staff and other mental health staff, support the conclusion that PrimeCare appropriately considered and addressed Ms. Carlos's psychiatric history and provided appropriate psychiatric medication to Ms. Carlos.  Ms. Carlos was given Haldol Decanoate, an injectable long-acting medication, which ensued that she was actually receiving her prescribed medication.  PrimeCare staff and other mental health staff followed up and provided Ms. Carlos with Haldol Decanoate on occasions when she refused her medication.

Because Haldol Decanoate accumulates and takes a long time to come out of a patient's system, there is less risk of decompensation if a dose is missed.  Ms. Carlos received Haldol decanoate 100 mg. shots on September 4 and 18, and on October 2 and 16, 2013.  Therefore, it is unlikely that delayed or missed Haldol shots played any causal role in her suicide.  Moreover, there is no evidence that missed doses of Haldol led to reemergence of psychotic symptoms or led to Ms. Carlos's suicide.

Dr. Rollings-Mazza, PrimeCare staff, and other mental health staff appropriately evaluated Ms. Carlos's August 2013 suicide attempt.  Given the evidence that was available to them, they made a reasonable assessment that Ms. Carlos' behavior was primarily manipulative and was not intended to result in her death.  Ms. Carlos had acting out with other inmates and correctional officers prior to August 13, but she had not attempted to commit suicide.  Correctional officers reportedly observed Ms. Carlos attempting to hang herself on August 13, and her doing so while being observed by those officers indicated that she did not have serious suicidal intent at the time.  Ms. Carlos did not sustain any serious physical injury from that purported suicide attempt.

PrimeCare staff and doctors and other mental health staff appropriately monitored and evaluated Ms. Carlos after August 13, 2013.  Mr. Gallagher appropriately discontinued constant watch for Ms. Carlos on 8/19/13, and he appropriately discontinued suicide precautions on 8/20/13.  After Mr. Gallagher discontinued those precautions, Ms. Carlos did not make any statements or exhibit behavior that indicate that she required suicide precautions, placement on Psychiatric Observation, or placement in the Behavioral Adjustment Unit (BAU).

I disagree with Dr. Patterson's opinion that PrimeCare did not consider Ms. Carlos's "impending deportation."  PrimeCare records document that staff discussed with Ms. Carlos her deportation status throughout her incarceration.  Ms. Carlos did not report

17

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

to PrimeCare staff and other mental health staff leading up to or on October 23, 2013 that she was anxious or distressed about an impending deportation. The testimony of Ms. Carlos' mother indicates that, to the contrary, Ms. Carlos anticipated that she would be going home and that she would not be deported. It is my opinion that the available evidence did not indicate that Ms. Carlos would commit suicide due to emotional distress about impending deportation.

It is my opinion that the information that was available to PrimeCare staff and other mental health staff prior to Ms. Carlos's death on October 23 did not indicate that mental health staff should have recommended or ordered that she be placed on suicide restrictions or in a mental health unit. It is my opinion that the information that was available to PrimeCare staff and other mental health staff prior to Ms. Carlos's death did not indicate that she required any change in the supervision and treatment that she was receiving.

Dr. Patterson opined that PrimeCare did not provide a "comprehensive multidisciplinary treatment plans." It is my opinion that a written multidisciplinary treatment plan would not have prevented Ms. Carlos's suicide.

PrimeCare records and deposition testimony of PrimeCare providers clearly illustrates that they were operating with a functioning treatment plan that included providing medication and adjusting medication if indicated. The treatment plan included monitoring, evaluation, and assessment of any behavioral problems, including conflicts with other inmates and staff.

The treatment plan included providing supportive counseling to Ms. Carlos to address her concerns about her family issues and any deportation-related concerns. The treatment plan included monitoring, evaluation, and assessment of Ms. Carlos's psychiatric condition. The treatment plan included monitoring and assessment for suicidal ideation and for psychotic symptoms. It is my opinion that no aspect of Ms. Carlos's treatment was missed due to the absence of a comprehensive multidisciplinary treatment plan and the presence of such a plan would not have prevented Ms. Carlos's suicide.

Dr. Patterson opined that there was "a failure to review and incorporate the evaluation and report of Dr. Ronald Noble, dated 9/14/11." Ronald Noble, Ph.D. performed a psychological evaluation of Ms. Carlos on May 25, 2011 and wrote a report dated September 14, 2011. Dr. Noble did not note that Ms. Carlos was acute or long-term risk for suicide. He did not note that Ms. Carlos required suicide precautions or any other special precautions to prevent her from committing suicide. Dr. Nobel noted that Ms. Carlos reported that she was given Haldol injections every two weeks in prison, which kept her calm, and that she felt Haldol was very helpful.

18

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

PrimeCare records indicate that Dr. Noble and Ms. Carlos's attorney did not provide PrimeCare with Dr. Noble's report, which was authored to assist Ms. Carlos in avoiding deportation. It is my opinion that it was not PrimeCare's responsibility to obtain that report. Moreover, Dr. Noble's report was authored over two years before Ms. Carlos's death, and it did not contain any information that would have prevented her suicide.

I disagree with Dr. Patterson's opinion that PrimeCare staff and other mental health staff engaged in "continuous reliance on contracting for safety." Contracting for safety, e.g., asking a patient whether she can agree to tell staff if she feels like harming herself, is a standard part of psychiatric care. While a patient's agreement does not mean that there is no risk, a failure to contract for safety can indicate that there is heightened risk for suicide. There available evidence indicates that contracting for safety was only one element of the suicide assessments performed by PrimeCare staff and doctors and other mental health staff. The assessments also included observations of Ms. Carlos's demeanor, affect, and behavior, as well as her reports about symptoms such as hallucinations. It is my opinion that the evaluations of PrimeCare staff and doctors and other mental health staff of Ms. Carlos's suicide risk were reasonable appropriate, and within the standard of care.

I disagree with Dr. Patterson's opinion that PrimeCare "deliberately did not provide necessary services such that her death was more likely than not both foreseeable and preventable." Dr. Patterson did not provide any evidence that PrimeCare "deliberately" did not provide necessary services. I have previously described the extensive care that PrimeCare staff and doctors and other mental health staff provided to Ms. Carlos which, in my opinion, did not indicate any deliberate withholding of services.

It is my opinion that PrimeCare staff and doctors and other mental health staff could not have reasonably foreseen or prevented Ms. Carlos's suicide. It is my opinion that there was no lack of provision of care by PrimeCare staff and doctors or other mental health staff to Ms. Carlos "such that her death was more likely than not both foreseeable and preventable."

CONCLUSION:

It is my opinion that PrimeCare staff and other mental health staff, Dr. Rollings-Mazza, and Dr. Davis, provided appropriate behavioral health and psychiatric treatment to Ms. Carlos during her incarceration at York County Prison.

It is my opinion that the Haldol decanoate medication that was prescribed to Ms. Carlos was appropriate and within the standard of care. It is my opinion that there was no evidence that Ms. Carlos was psychotic leading up to or at the time of her suicide, or that psychotic symptoms played a role in her suicide.

19

CARLOS V. PRIMECARE, ET AL.
STEPHEN MECHANICK, M.D.
DECEMBER 16, 2016

It is my opinion that there was no evidence that Ms. Carlos had ongoing suicidal ideation or intent prior to hanging herself on October 23, 2013, or that she had suicidal ideation or intent just before she committed suicide.

It is my opinion that Ms. Carlos impulsively committed suicide after another inmate told her to kill herself.  It is my opinion that the available evidence indicates that Ms. Carlos was expecting to go home.  It is my opinion that the available evidence indicates that Ms. Carlos did not receive distressing news about her deportation or other distressing news proximate to her suicide that played a causal role in her suicide.

It is my opinion that the treatment that PrimeCare staff and doctors and other mental health staff provided to Ms. Carlos was within the standard of care, and that care was not negligent or grossly negligent.

The opinions that I have expressed in this report have been stated to a reasonable degree of medical and psychiatric certainty.  I reserve the right to supplement this report should additional information become available.



Stephen Mechanick, M.D.

20