**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANGELA CARLOS, As Administratrix | : | DOCKET NO. 1:15-cv-01994-WWC-JFS |
| of the ESTATE OF TIOMBE KIMANA | : | |
| CARLOS, | : | CIVIL ACTION – LAW |
| Plaintiff | : | |
| | : | JUDGE WILLIAM W. CALDWELL |
| v. | : | MAG. JUDGE JOSEPH F. SAPORITO, JR. |
| | : | |
| YORK COUNTY; et al., | : | *Electronically Filed* |
| Defendants | : | JURY TRIAL DEMANDED |

<u>PRIMECARE MEDICAL DEFENDANTS'</u>
<u>BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>

**I. <u>PROCEDURAL HISTORY</u>**

This lawsuit arises out of the suicide of Tiombe Kimana Carlos during her incarceration at the York County Prison. Plaintiff, as Administratrix of the Estate of Tiombe Kimana Carlos, initiated this action by filing a Complaint on October 14, 2015. (Doc. 1) The undersigned counsel entered an appearance on behalf of Defendants PrimeCare Medical, Inc. and Pamela Rollings-Mazza, M.D. on November 3, 2015. (Doc. 18) Defendants PrimeCare Medical, Inc. and Pamela Rollings-Mazza, M.D. filed their Answer with Affirmative Defenses on November 5, 2015. (Doc. 20) On February 11, 2016, Plaintiff filed a Motion for Leave to Amend her Complaint. (Doc. 30) This Court granted Plaintiff's Motion for Leave on April 27, 2016. (Docs. 34, 35) On or about April 27, 2016, Plaintiff filed her Amended Complaint. (Doc. 36) Plaintiff named Holly A. Snyder, RN and Aimee Leiphart, LPN as additional Defendants. The undersigned counsel entered an appearance on behalf of Defendant Holly A. Snyder, RN and Aimee Leiphart, LPN on May 2, 2016. (Doc. 37) PrimeCare Medical Defendants filed their

Answer with Affirmative Defenses to Plaintiff's Amended Complaint on May 10, 2016. (Doc. 41)  PrimeCare Medical Defendants have filed a Motion for Summary Judgment, and this Brief is offered in support thereof.

## II. <u>STATEMENT OF FACTS</u>

PrimeCare Medical Defendants incorporate by reference their Statement of Undisputed Facts in Support of Motion for Summary Judgment as if fully set forth at length herein.   The gravamen of Plaintiff's Complaint is that the PrimeCare Medical Defendants failed to prevent the suicide of Tiombe Carlos.  Plaintiff has pursued a claim against the PrimeCare Medical Defendants for alleged violations of Ms. Carlos' civil rights, negligence, and a claim for punitive damages.

Specifically, Plaintiff alleges that Tiombe Carlos was suffering from schizophrenia and other psychological disorders prior to her incarceration at the York County Prison. (Doc. 41, ¶¶ 35, 30-40)   Plaintiff further alleges that Defendant Dr. Pamela Rollings-Mazza had prescribed bi-weekly Haldol injections to treat these psychological disorders, and Defendants Nurses Holly A. Snyder and Aimee Leiphart were regularly involved in the provision of mental health care to Ms. Carlos.  (Doc. 41, ¶¶ 47-50)  Plaintiff avers that during Tiombe Carlos' incarceration, the PrimeCare Medical Defendants were deliberately indifferent to her serious medical needs and were negligent in breaching generally accepted standards of medical care with relation to her mental health treatment.

The evidence demonstrates that Plaintiff's allegations amount to nothing more than a difference of opinion as to whether the proper medical treatment was rendered, not deliberate indifference; therefore, they cannot support a recoverable claim under

§ 1983.  The record also reveals that Tiombe Carlos' medical needs were fully attended

to and her suicide risk was never ignored.  Tiombe Carlos received appropriate mental

health treatment during her incarceration and her suicide was unforeseeable.

### III.  STATEMENT OF QUESTIONS INVOLVED:

A.  SHOULD THIS HONORABLE COURT GRANT SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS WHERE PLAINTIFF CANNOT DEMONSTRATE RECKLESS INDIFFERENCE?

    Suggested Answer:  Yes.

B.  SHOULD THIS HONORABLE COURT GRANT SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS ON PLAINTIFF'S CLAIMS OF MEDICAL PROFESSIONAL NEGLIGENCE AGAINST DEFENDANTS HOLLY A. SNYDER AND AIMEE LEIPHART?

    Suggested Answer:  Yes.

C.  SHOULD THIS HONORABLE COURT GRANT SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS ON PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES WHERE PLAINTIFF HAS NOT SUFFICIENTLY PLEADED A VIABLE CLAIM FOR PUNITIVE DAMAGES?

    Suggested Answer:  Yes.

D.  SHOULD THIS HONORABLE COURT DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S REMAINING STATE LAW CLAIMS WHERE PLAINTIFF'S CONSTITUTIONAL CLAIMS HAVE BEEN DISMISSED?

    Suggested Answer:  Yes.

### IV.  ARGUMENT

Fed. R. Civ. P. 56 governs motions for summary judgment, and Section (c) of the

Rule states in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law.

The United States Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  Celotex v. Catrett, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

There is an issue of material fact only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A plaintiff must "point to concrete evidence in the record that supports each and every essential element of his case" to survive summary judgment.  Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

### A.  Summary Judgment Should Be Entered In Favor Of The PrimeCare Medical Defendants Because Plaintiff Cannot Demonstrate Reckless Indifference.

The Third Circuit has recognized that the suicide of a detainee can support a recovery in a 42 U.S.C. § 1983 action.  Colburn v. Upper Darby Township, 946 F.2d 1017, 1023-1025 (3d Cir. Pa. 1991).  See also, Williams v. Borough of West Chester, 891 F.2d 458 (3d Cir. 1989); Freedman v. Allentown, 853 F.2d 1111 (3d Cir. 1988). The standard of liability to be applied in this circuit in prison suicide cases is that "if [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with

reckless indifference to that vulnerability." Colburn, 946 F.2d 1023 (internal citations omitted). To create liability, "the risk of self-inflicted injury must not only be great, but also sufficiently apparent that a lay custodian's failure to appreciate it evidences an absence of any concern for the welfare of his or her charges." Woloszyn v. Cty. of Lawrence, 396 F.3d 314, 320 (3d Cir. 2005). "Liability cannot lie for negligence; the risk of self-inflicted harm must be obvious. The burden for proving liability in a prison suicide case is a difficult one to meet, since 'a prison custodian is not the guarantor of a prisoner's safety. [courts] cannot infer from the prisoner's act of suicide itself that the prison officials were recklessly indifferent in their obligation to...take reasonable precautions to protect the safety of prisoners entrusted in their care." Wargo v. Schuylkill Cty., Civ. No. 06-2156, 2008 WL 4922471, at *5 (M.D. Pa. Nov. 14, 2008) (citing Freedman v. City of Allentown, 853 F.2d 1111, 1115 (3d Cir. 1988)).

A plaintiff in a prison suicide case has the burden of establishing three elements: (1) the detainee had a "particular vulnerability to suicide," (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers "acted with reckless indifference" to the detainee's particular vulnerability. Id.

Reckless or deliberate indifference is articulated in Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). Estelle involved Eighth Amendment claims alleging inadequate medical treatment. The Court held that prison officials violate the Eighth Amendment's proscription of cruel and unusual punishment when they exhibit "deliberate indifference to serious medical needs of prisoners." Id., at 104. The standard enunciated in Estelle "requires [both that there be] deliberate indifference on the part of

the prison officials and [that] the prisoner's medical needs . . . be serious." <u>Monmouth Cty. Corr. Institutional Inmates v. Lanzaro</u>, 834 F.2d 326 (3d Cir. 1987).

A serious medical need, as developed in <u>Estelle</u>, has two components.  The detainee's condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death.  Moreover, the condition must be "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Monmouth</u>, 834 F.2d at 347 (internal citations omitted).

In <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 664 (3d Cir. 1988), the Third Circuit recognized that "particular vulnerability to suicide" represents a "serious medical need."  However, the Third Circuit has recognized that neither the due process clause nor the Eighth Amendment imposes liability for a negligent failure to protect a detainee from self-inflicted injury.  <u>Id</u>.  A higher level of culpability, one involving "reckless or deliberate indifference," is required.  See also, <u>Colburn</u>, 946 F.2d at 1023-1025 (3d Cir. 1991).  Therefore, it is clear that a level of culpability higher than a negligent failure to protect from self-inflicted harm is required.  <u>Id</u>., at 1024.

The requirement of a "particular vulnerability to suicide" speaks to the degree of risk inherent in the detainee's condition. <u>Id</u>.  The requirement of "reckless or deliberate indifference" implies that there must be "a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur."  <u>Id</u>. (internal citations omitted).  Even where a strong likelihood of suicide exists, it must be shown that the custodial officials "knew or should have known" of that strong likelihood.  <u>Id</u>.  There can be no reckless or

deliberate indifference to that risk unless there is something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide.  Id.

For a failure to train claim, a plaintiff must provide evidence that the alleged failure to train has caused a "pattern of violations."  Kelly v. Borough of Carlisle, 622 F.3d 248, 265 (3d Cir. 2010).  If a plaintiff cannot show such a pattern, he "must show that a violation of federal rights was a highly predictable consequence of a failure to equip municipal actors with specific tools to handle recurring situations." Id.  Specifically, without a pattern of violations, there must be evidence to show "the need for more or different training was so obvious and so likely to lead to a violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference." Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001).

Guided by these standards, it is clear that Plaintiff cannot present sufficient evidence to a jury to support deliberate indifference to a serious medical condition or a particular vulnerability to suicide. Plaintiff's Amended Complaint alleges that the PrimeCare Medical Defendants knew of Tiombe Carlos' serious medical needs and risk factors in the days preceding her suicide and that they failed to take reasonable actions to prevent her suicide. (Doc. 41, ¶ 96) However, Tiombe Carlos' medical records indicate that she received bi-weekly anti-psychotic medication, continuous mental health treatment, and was consistently monitored for suicidal thoughts or intentions.  Dr. Rollings-Mazza assessed Tiombe Carlos approximately 17 times during her 30-month incarceration, and her psychotropic medication was consistently monitored and continued.  Additionally, Tiombe Carlos was seen and analyzed by various mental health staff approximately 30 times during this same period.  In total, Tiombe Carlos

spent approximately 216 days (or 25%) of her incarceration in psychiatric observation in which she was assessed weekly by a designated mental health services provider.

Tiombe Carlos' treatment records indicate that she had been written up and moved to segregated housing for assaults on prison staff or other inmates at least seven times during her incarceration.  After each instance, Tiombe Carlos' was given a mental health evaluation and put under either 15-minute interval checks, extensive suicide precautions, or both.  In only one instance, on November 12, 2012, was Tiombe Carlos ever determined to be a slight suicide risk.  (See, Appendix at **Exhibit V**).  In all other instances, Ms. Carlos was determined to be not suicidal.  In the single instance that Ms. Carlos was determined to be a slight suicide risk, she was placed in medical segregation for roughly one month and kept under constant interval observations.  Dr. Richard Althouse reviewed these policies and procedures and determined them to be appropriate within the framework of national standards and generally accepted medical practice.  (See, Appendix at **Exhibit CC**).  PrimeCare Medical Inc.'s policies and procedures, as well as the actions of Dr. Pamela Rollings-Mazza, Holly A. Snyder, and Aimee Leiphart did not reflect deliberate indifference.

Additionally, since her first day at the prison, Tiombe Carlos was provided appropriate medication for her psychological disorders. She received bi-weekly injections of the anti-psychotic Haldol.  In the few instances where Ms. Carlos refused her medication, she was always given the medication either later that evening or the following day. (See, Appendix at **Exhibit B**, p. 9).  Dr. Stephen Mechanick reviewed this policy and procedure and determined that it was appropriate and complied with medical standards of care.  (See, Appendix at **Exhibit DD**).  Furthermore, because of the long

half-life of Haldol, Dr. Mechanick opined that any delay she may have had in receiving her medication due to her refusals would not have affected the efficacy of medication in her system.   Put simply, any delays Ms. Carlos received in receiving her medication would not have resulted in the drug wearing off.

Until Tiombe Carlos' suicide attempt in August 2013, she had never attempted to harm herself or mentioned any suicidal intentions.   Moreover, after her August 2013 suicide attempt, Tiombe Carlos denied that she harbored any suicidal thoughts or intentions.  (See, Appendix at **Exhibit AA**.)   In the weeks leading up to her October 2013 suicide, Tiombe Carlos did not exhibit behavior that warranted further suicide precautions.    Rather, the facts indicate that roughly 45 minutes prior to her suicide, Tiombe Carlos was involved in an argument with another inmate.  (See, Appendix at **Exhibit CC**.)   That inmate angrily shouted "why don't you just kill yourself?" Dr. Althouse determined in his medical opinion that this argument likely set Tiombe Carlos off, and her suicide appeared to be impulsive and difficult to foresee, let alone preventable.   Dr. Mechanick concurred with Dr. Althouse that Tiombe Carlos' suicide could not have been reasonably foreseen or prevented by PrimeCare Medical, Inc. or its staff.  (See, Appendix at **Exhibit DD**.)

Additionally, Plaintiff has failed to establish a pattern of violations necessary to prevail in a failure to train claim.   The record also does not demonstrate any obvious modifications the PrimeCare Medical Defendants should have implemented in order to foresee or prevent Tiombe Carlos' suicide.   Conversely, the record actually demonstrates that the PrimeCare Medical Defendants' policies, procedures, and actions were consistent with generally accepted medical standards, as well as relevant national

standards.  (See, Appendix at **Exhibit CC**.)  Accordingly, Plaintiff's claim for failure to train should be also be dismissed.

The record demonstrates that Tiombe Carlos received reasonable and appropriate mental health treatment during her incarceration.  Plaintiff cannot prove that Tiombe Carlos had a particular vulnerability to suicide.  Moreover, there is no evidence to suggest that any of the PrimeCare Medical Defendants were recklessly indifferent to Tiombe Carlos' serious medical needs or any vulnerability to suicide.  At most, Plaintiff has presented a difference of medical opinion, which is insufficient to support a claim under 42 U.S.C. § 1983 for violations of Eighth Amendment rights.  Because the evidence fails to support a finding that the PrimeCare Medical Defendants knew Tiombe Carlos was vulnerable to suicide or were recklessly indifferent to her vulnerability, there is no issue of material fact as a reasonable jury could not return a verdict for Plaintiff.  Estelle, 429 U.S. at 97; Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Orsatti v. N.J. State Police, 71 F.3d at 484.  This Court should therefore grant the PrimeCare Medical Defendants' Motion for Summary Judgment, and dismiss Plaintiff's claims against them with prejudice.

      **B.**    **Summary Judgment Should Be Granted In Favor Of The Medical Defendants On Plaintiff's Claims Of Medical Professional Negligence Against Defendants Holly A. Snyder And Aimee Leiphart.**

Plaintiff is also asserting a cause of action for negligence against the PrimeCare Medical Defendants.  Concerning any claim for professional malpractice, to prove a cause of action for malpractice, a plaintiff must establish that the defendant owed a duty to the patient, that the medical professional breached that duty, that the breach of duty was the cause of, or a substantial factor in, bringing about the harm suffered by the

patient, and that the patient's damages directly resulted from the harm.  Eaddy v. Hamathy, 694 A.2d 639, 642 (Pa. Super. 1997).  The malpractice plaintiff must also present an expert witness to testify "to a reasonable degree of medical certainty, that the acts of the [medical provider] deviated from good and acceptable medical standards, and that such deviation was the proximate cause of the harm suffered." Eaddy, 694 A.2d at 642 (citing Mitzelfelt v. Kamrin, 584 A.2d 888, 892 (Pa. 1990)) (internal quotations omitted); Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061, 1070-71 (Pa. 2006).

Plaintiff has produced no experts to testify that Defendants Holly A. Snyder and Aimee Leiphart breached any standard of care.  The only expert report produced by Plaintiff in this case, the report of Raymond Patterson, MD, is silent as to Defendants Snyder and Leiphart's involvement in this matter.  Accordingly, Plaintiff will be unable to prove that Defendants Holly A. Snider and Aimee Leiphart deviated from acceptable medical standards and that any deviation was the proximate cause of the harm suffered.  Therefore, this Honorable Court should granted summary judgment in favor of Defendants Holly A. Snider and Aimee Leiphart and against the Plaintiff on Plaintiff's claims for medical professional negligence.

**C.      Plaintiff Has Failed To Plead A Viable Claim For Punitive Damages**

As stated above, Plaintiff cannot demonstrate a cause of action for an alleged violation of Tiombe Carlos' constitutional rights.  However, there remains Plaintiff's claims for negligence and her demand for punitive damages.

Pennsylvania's Medical Care Availability and Reduction of Error (MCARE) Act allows punitive damages to be awarded "for conduct that is the result of the health care

provider's willful or wanton conduct or reckless indifference to the rights of others."   40 P.S., 28 U.S.C. § 1303.505(a); and see also, MacLeod v. Russo, No. 11689 CIVIL 2008, 2010 Pa. Dist. & Cnty. Dec. LEXIS 219 at *6 (Monroe Co. May 6, 2010) (noting that under MCARE, "even gross negligence is not insufficient to support punitive damages against a healthcare provider"). The MCARE Act also states, however, that "Punitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injury unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages."   40 P.S. § 1303.505(c); and, see, generally, Stroud v. Abington Mem. Hosp., 546 F. Supp. 2d 238, 259 (E.D. Pa. 2008) (noting that "[t]o state a claim for punitive damages against a hospital based on vicarious liability, the plaintiff must plead and ultimately prove 'by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages'").

       In this matter, it is submitted that Plaintiff has not alleged sufficient facts, even accepting the allegations as true, to warrant an award of punitive damages.   Plaintiff was evaluated by medical professionals who utilized their best professional judgment at all times.   Plaintiff's claims against PrimeCare Medical, Inc. are based on vicarious liability. Plaintiff has not pleaded sufficient facts to support a finding that PrimeCare knew of and allowed the conduct of employees/agents that might give rise to an award of punitive damages. At most the allegations in this case demonstrate simple negligence which does not support the imposition of punitive damages.   Therefore, it is

respectfully requested that summary judgment be entered in favor of the PrimeCare Medical Defendants and against the Plaintiff on Plaintiff's claims for punitive damages.

> ### D. Plaintiff's Remaining State Law Claims Should Be Dismissed In Favor Of Allowing A State Court With More Familiarity Over The Claims To Adjudicate Them.

28 U.S.C.S. § 1367 provides "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, despite this grant of supplemental jurisdiction, the District Courts "may decline to exercise supplemental jurisdiction over a claim" if any of the following factors are met:

(a)   the claim raises a novel or complex issue of State law,

(b)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(c)   the district court has dismissed all claims over which it has original jurisdiction, or

(d)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.S. §1367(c).

"A federal district court must continually re-evaluate the alleged basis for its jurisdiction throughout the course of the litigation. As such, there is no time bar to challenging jurisdiction during the pendency of the action.  Indeed, 28 U.S.C. § 1447(c) provides, in pertinent part, as follows:  '(i)f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.'" Fleeman v. Toyota Motor Sales, 288 F. Supp. 2d 726, 728 (S.D. W. Va. 2003), emphasis in original. The relevant case law supports declining to exercise supplemental

jurisdiction when federal claims have been dismissed.  See, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L.Ed.2d 720 (1988) (instructing that courts should ordinarily decline to exercise supplemental jurisdiction in the absence of federal claims).  See also, Goodwin v. Seven-Up Bottling Co., 1996 U.S. Dist. LEXIS 15448 (E.D. Pa.  Oct. 18, 1996).

District courts have specifically recognized that professional negligence claims are more appropriately heard in State Court.    In Gallo v. Wash. County, 2009 U.S. LEXIS 7958, 30-31 (W.D. Pa. Feb. 4, 2009), the Court noted "[t]he remaining claims are brought by a Pennsylvania resident and relate to alleged professional negligence of Pennsylvania doctors and medical personnel. The state court generally handles such cases and has substantial expertise in such cases."  The Court went on to hold, "[there being no 'exceptional' reason why the Court should retain this case involving only a state claim, the Court will dismiss the professional negligence count without prejudice for said claim to be re-filed in state court."

Along with her claims for alleged civil rights violations, Plaintiff also brings negligence causes of action against the PrimeCare Medical Defendants. It is submitted that Plaintiff will be unable to prevail on her § 1983 claim because she cannot demonstrate deliberate indifference on the part of the PrimeCare Medical Defendants. Accordingly, all of Plaintiff's remaining claims arise under State law.  As other district courts have held in similar matters, this Honorable Court should decline to exercise its supplemental jurisdiction over Plaintiff's State law claims and dismiss Plaintiff's cause of action in favor of allowing a State court with more familiarity over the claims to adjudicate them.

## V.  **CONCLUSION**

For the foregoing reasons, the Defendants, Defendants, PrimeCare Medical, Inc., Pamela Rollings-Mazza, M.D., Holly A. Snyder, RN, Aimee Leiphart, LPN, respectfully request that summary judgment be granted in their favor and Plaintiff's claims against them are dismissed with prejudice.

Respectfully submitted,

JOHNSON, DUFFIE, STEWART & WEIDNER

By:      s/John R. Ninosky_____
John R. Ninosky, Esquire
Attorney I.D. No. 78000
301 Market Street ~P. O. Box 109
Lemoyne, PA  17043-0109
Telephone (717) 761-4540
Email:  jrn@jdsw.com
Date:  January 31, 2017               Attorney for PrimeCare Medical Defendants

## CERTIFICATE OF SERVICE

I hereby certify on the 31st day of January, 2017, that the foregoing *Brief in Support of Motion for Summary Judgment* was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

David Rudovsky, Esquire
Jonathan H. Feinberg, Esquire
Susan M. Lin, Esquire
Kairys Rudovsky Messing
  & Feinberg, LLP
The Cast Iron Building, Ste. 501S
718 Arch Street
Philadelphia, PA  19106
drudovsky@krlawphila.com
jfeinberg@krlawphila.com
slin@krlawphila.com
*Attorney for Plaintiffs*

Donald L. Reihart, Esquire
Assistant Solicitor for York County
3015 Eastern Boulevard
York, PA  17402
email@reihartlaw.com
*Attorney for York County*

Brandon R. Conrad, Esquire
Harlan W. Glasser, Esquire
Saxton & Stump
280 Granite Run Road, Suite 300
Lancaster, PA  17601
brc@saxtonstump.com
hwg@saxtonstump.com
*Attorney for Patrick Gallagher, LPC*

JOHNSON, DUFFIE, STEWART & WEIDNER

By:    s/John R. Ninosky
       John R. Ninosky