# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGELA CARLOS, as ADMINISTRATRIX OF THE ESTATE OF TIOMBE KIMANA CARLOS,<br>    Plaintiff<br><br>v.<br><br>YORK COUNTY, et al.,<br>    Defendants | : CIVIL ACTION  No. 1:15-cv-01994-WWC<br>:<br>:<br>: [ELECTRONICALLY FILED]<br>:<br>:<br>:<br>: The Honorable William W. Caldwell |

## DEFENDANT PATRICK GALLAGHER'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT

In support of his Motion for Summary Judgment and pursuant to Local Rule 56.1, Defendant, Patrick Gallagher, LPC ("Counselor Gallagher"), by and through his attorneys, Saxton & Stump, submits the following Statement of Undisputed Material Facts:

1. Patrick Gallagher is a licensed professional counselor who has been employed at York County Prison for 31 years. (Gallagher Dep., 15:10-16:15, attached as "Exhibit A.")

2. Counselor Gallagher is not a nurse, psychiatrist, or physician. (*See generally* Ex. A, 12:17-16:6.)

3. Counselor Gallagher's responsibilities at York County Prison includes providing direct services to inmates, conducting intake assessments, performing crisis intervention, and managing people on Psychiatric Observations. (Ex. A, 15:17-16:6, 23:9-20.)

4. Counselor Gallagher cannot modify an inmate's psychiatric medication regimen and does not administer medications. (Ex. A, 46:5-9.)

5. Counselor Gallagher is trained to recognize risks for suicide. (Ex. A, 36:3-18.)

6. Dr. Rollings-Mazza was the psychiatrist involved in Ms. Carlos' care throughout her incarceration. (Rollings-Mazza Dep., 48:25-49:5, attached as "Exhibit B.")

7. Dr. Rollings-Mazza is trained to recognize risks for suicide. (Ex. B, 36:7-12.)

8. Corrections Counselor Janet Jackson is trained to recognize risks for suicide. (Jackson Dep., 34:13-25, attached as "Exhibit C"; *see also* Doll Dep., 40:17-21, attached as "Exhibit D.")

9. Corrections Officer Grissell Santos-Heredia is trained to recognize risks for suicide. (Santos Dep., 26:14-20, attached as "Exhibit E"; *see also* Ex. D, 40:17-21.)

10. Corrections Officer Erika Collins is trained to recognize risks for suicide. (Collins Dep., 39:17-19, attached as "Exhibit F"; *see also* Ex. D, 40:17-21.)

11. Mental Health Nurse Aimee Leiphart is trained to recognize risks for suicide. (Leiphart Dep., 24:17-21, attached as "Exhibit G"; *see also* Ex. D, 40:17-21.)

12. Mental Health Nurse Holly Snyder is trained to recognize risks for suicide. (*See* Snyder Dep., 18:15-20:16, attached as "Exhibit H"; *see also* Ex. D, 40:17-21.)

13. Every York County Prison staff member had the responsibility to place an inmate on suicide precautions who they believe is acutely suicidal. (Ex. G, 23:4-8; *see also* Ex. D, 40:17-21, 53:5-9.)

14. Decedent, Tiombe Carlos ("Ms. Carlos"), was a citizen and national of Antigua and Barbuda. (Carlos 764, included in "Exhibit I")

15. Ms. Carlos was in the custody of state and federal authorities from 2003 until October 2013. (Angela Carlos Dep., p. 9:10-15, attached as "Exhibit J"; Ex. I at Carlos 764, 914.)

16. Ms. Carlos was incarcerated at York County Prison for 923 days. (*See* PCM 196-207, included in "Exhibit K.")

17. Ms. Carlos denied to prison officials that she had ever been sexually abused. (Ex. K at PCM 2551.)

18. Ms. Carlos was first incarcerated at York County Prison on April 14, 2011, as an ICE detainee.

19. Ms. Carlos arrived to York County Prison with a self-reported diagnosis of schizophrenia and treatment with Haldol.  (Ex. B, 50:16-3.)

20. Ms. Carlos was never diagnosed with schizophrenia by a treating psychiatrist while at York County Prison.  (*See* Ex. B, 52:8-12.)

21. Ms. Carlos was objectively and subjectively stable on Haldol.  (Ex. B, 51:9-12, 52:16-21; *see also* Ex. K at PCM 637, 652, 1176, 1178, 1184.)

22. York County Prison policy requires inmates be assigned the least restrictive housing consistent with safety and security.  (YC 206, included in "Exhibit L.")

23. The Maximum Security portion of York County Prison is comprised of the A Pod, B Pod, C Pod, D Pod, and BAU Pod.  (Ex. F, 26:17-25.)

24. Cells on the A Pod and D Pod are identical.  (Ex. F, 27:4-6, 29:13-15, 30:3-15.)

25. Ms. Carlos spent a total of 157 days on A Pod during the year preceding her death. (Ex. K at PCM 1760-1767.)

26. In 2013, the BAU Pod had two suicide resistant cells.  (Ex. F, 31:13-21.)

27. An inmate placed on either BAU or ICU Status can only be housed on the A Pod, D Pod, or BAU Pod.  (Ex. F, 27:4-16.)

28. Ms. Carlos spent a total of 198 days on ICU status.  (*See* Ex. K at PCM 1768-1774.)

29. Ms. Carlos spent a total of 163 days on BAU status.  (*See* Ex. K at PCM 1768-1774.)

30. York County Prison conducts 15-minute checks on any Pod that houses any inmate subject to Psychiatric Observations. (Ex. F, 36:14-20.)

31. The Program Review Committee conducts weekly reviews of all inmates on segregated statuses.  (Ex. D, 68:21-69:16.)

32.  Dr. Rollings-Mazza did not believe Ms. Carlos' behavior was related to her mental health condition. (Ex. B, 123:15-22.)

33.  Ms. Carlos did not express suicidal ideation at any time between her incarceration and August 2013.

34.  There were no medical indications that Ms. Carlos was under medicated. (Ex. B, 124:2-15; Felthous Report, p. 8, attached as "Exhibit M.")

35.  Ms. Carlos received her scheduled Haldol injection on May 29, 2013. (Ex. K at PCM 198.)

36.  Ms. Carlos received her scheduled Haldol injection on June 12, 2013. (Ex. K at PCM 197.)

37.  Ms. Carlos received her scheduled Haldol injection on June 26, 2013. (Ex. K at PCM 197.)

38.  Ms. Carlos received her scheduled Haldol injection on July 10, 2013. (Ex. K at PCM 197.)

39.  Ms. Carlos admitted that she assaulted another inmate on July 11, 2013, and was sanctioned to be housed on the BAU Pod on BAU status, until August 10, 2013. (Ex. L at YC 538-540, 637.)

40.  Ms. Carlos received her scheduled Haldol injection on July 24, 2013. (Ex. K at PCM 197.)

41.  Ms. Carlos received her scheduled Haldol injection on August 7, 2013. (Ex. K at PCM 197.)

42.  On August 7, 2013, Ms. Carlos was relaxed, calm, appropriate, and cooperative, had intact judgment, and was not acutely suicidal. (Ex. K at PCM 491-496.)

43. On August 8, 2013, Ms. Carlos was calm and alert and was not acutely suicidal. (Ex. K at PCM 344.)

44. On August 10, 2013, Ms. Carlos's July 16, 2013 sanction expired, and she was transferred from BAU Pod on BAU Status to A Pod on ICU Status on Psychiatric Observation. (Ex. K at PCM 1760, 1773.)

45. On August 12, 2013, Ms. Carlos was oriented, appropriate, and cooperative, had intact judgment, and was not acutely suicidal. (Ex. K at PCM 497-502, 656.)

46. On August 13, 2013, Officer Wendy Harris was on Constant Watch for another inmate on A Pod. (Ex. L at YC 522.)

47. From her position, Officer Harris noticed Ms. Carlos standing on a desk stool and "doing something" with a sheet. (Ex. L at YC 522.)

48. After four security officers entered Ms. Carlos' cell, Ms. Carlos put the sheet around her neck and moved from the stool. (Ex. L at YC 522, 525.)

49. Ms. Carlos was caught in the air by an officer and never hanged by her full weight and did not lose consciousness. (Ex. L at YC 524.)

50. Ms. Carlos was placed on the BAU Pod on Suicide Precaution with Constant Watch on August 14, 2013. (Ex. K at PCM 916, 918.)

51. Ms. Carlos refused to participate during a Mental Health Evaluation with Counselor Gallagher on August 14, 2013, and was treated as a continued risk for suicide and remained on Constant Watch. (Ex. K at PCM 345, 655.)

52. Dr. Rollings-Mazza evaluated Ms. Carlos on August 14, 2013, and did not change her treatment plan. (Ex. K at PCM 655.)

53. Ms. Carlos refused to participate during Mental Health Evaluations with Counselor Gallagher and Mental Health Nurse Leiphart on August 15, 2013, and was treated as a continued risk for suicide and remained on Constant Watch.  (Ex. K at PCM 346, 654-655.)

54. Ms. Carlos refused to participate during a Mental Health Evaluation with Counselor Gallagher on August 16, 2013, and was treated as a continued risk for suicide and remained on Constant Watch.  (Ex. K at PCM 654.)

55. Ms. Carlos was appropriate, cooperative, and agreed to cooperate with treatment on August 19, 2013, and Counselor Gallagher discontinued Constant Watch, but continued Suicide Precaution.  (Ex. K at PCM 661, 1773.)

56. Counselor Gallagher appropriately discontinued Constant Watch on August 19, 2013. (Mechanick Report, p. 17, attached as "Exhibit N.")

57. Psychiatrist Robert Davis, M.D., evaluated Ms. Carlos on August 20, 2013.  Ms. Carlos was animated, maintained good eye contact, and was goal oriented.  Dr. Davis did not change Ms. Carlos' treatment plan and scheduled Ms. Carlos to return to the clinic in eight weeks. (Ex. K at PCM 660.)

58. Ms. Carlos was calm, appropriate, and cooperative, and denied suicidal ideations during a Mental Health Evaluation with Counselor Gallagher on August 20, 2013.  Counselor Gallagher, therefore, discontinued Suicide Precaution and implemented Psychiatric Observation. Counselor Gallagher continued 15-minute checks.  (Ex. K at PCM 660.)

59. Counselor Gallagher appropriately discontinued Suicide Precaution on August 20, 2013.  (Ex. N, p. 17.)

60. Correctional Staff transferred Ms. Carlos from the BAU Pod to D Pod on August 20, 2013.  (Ex. K at PCM 1818.)

61. Ms. Carlos received her scheduled Haldol injection on August 21, 2013. (Ex. K at PCM 196.)

62. Ms. Carlos was calm and had a normal affect during a Mental Health evaluation by Mental Health Nurse Snyder on August 22, 2013, and Mental Health Nurse Snyder documented that Ms. Carlos was not acutely suicidal. (Ex. K at PCM 347, 351.)

63. Ms. Carlos remained calm and had a normal affect during a Mental Health evaluation by Mental Health Nurse Aimee Leiphart on August 26, 2013, and Mental Health Nurse Leiphart documented that Ms. Carlos was not acutely suicidal. (Ex. K at PCM 348, 352.)

64. Ms. Carlos was joking and behaving normally on August 28, 2013. (Ex. K at PCM 1774).

65. Ms. Carlos remained relaxed, calm, appropriate, and cooperative, and had a normal affect and intact judgment during a Mental Status Examination by Counselor Gallagher on August 30, 2013, and Counselor Gallagher documented Ms. Carlos was not a risk for suicide or violence. (Ex. K at PCM 515-517.)

66. Ms. Carlos was calm, appropriate, and cooperative during a Mental Health evaluation by Mental Health Nurse Snyder on September 4, 2013, and Mental Health Nurse Snyder documented Ms. Carlos was not acutely suicidal. (Ex. K at PCM 349.)

67. Ms. Carlos received her scheduled Haldol injection on September 4, 2013. (Ex. K at PCM 761.)

68. Ms. Carlos was calm, appropriate, and cooperative during a mental health evaluation by Mental Health Nurse Snyder on September 5, 2013, and Mental Health Nurse Snyder documented Ms. Carlos was not acutely suicidal. (Ex. K at PCM 349.)

69. Ms. Carlos remained calm, appropriate, and cooperative during a Mental Health evaluation by Mental Health Nurse Snyder on September 12, 2013, and Mental Health Nurse Snyder documented Ms. Carlos was not a risk for suicide. (Ex. K at PCM 350.)

70. Ms. Carlos received her scheduled Haldol injection on September 18, 2013. (Ex. K at PCM 259.)

71. Ms. Carlos was oriented, had normal thought process and content, had no hallucinations or delusions, and had intact judgment during a Mental Health Examination by Counselor Gallagher on September 19, 2013, and Counselor Gallagher documented Ms. Carlos was not a risk for suicide or violence. (Ex. K at PCM 521-523.)

72. Ms. Carlos was not a risk of suicide during a Mental Health Segregation Observation by Mental Health Nurse Snyder or September 19, 2013. (Ex. K at PCM 351.)

73. Ms. Carlos denied suicidal ideations and was calm, appropriate, oriented, and cooperative during a Mental Health Examination by Counselor Gallagher on September 26, 2013, and Counselor Gallagher documented that Ms. Carlos was not a risk for suicide. (Ex. K at PCM 658-659.)

74. Ms. Carlos denied suicidal ideations and was calm, appropriate, oriented, and cooperative during a Segregation Observation by Mental Health Nurse Leiphart on September 26, 2013, and Mental Health Nurse Leiphart documented Ms. Carlos was not acutely suicidal. (Ex. K at PCM 352.)

75. Dr. Rollings-Mazza evaluated Ms. Carlos on September 30, 2013. Ms. Carlos was "very cooperative," displayed no evidence of psychosis, denied suicidal ideations, and appeared to be stable, and Dr. Rollings-Mazza continued the current treatment plan. (Ex. K at PCM 658; Ex. B, 102:24-103:6.)

76. Ms. Carlos was oriented, calm, appropriate, and cooperative, maintained good eye contact, and had a normal mood and affect and intact thought process during a mental health examination by Counselor Gallagher on October 2, 2013. Ms. Carlos denied suicidal ideations, and Counselor Gallagher documented that she was not a risk of suicide or violence. (Ex. K at PCM 539.)

77. Ms. Carlos requested Counselor Gallagher discontinue Psychiatric Observation because she had been stable since August 19, 2013 and did not have any negative incidents for a prolonged period of time. (Ex. A, 78:21-79:16.)

78. Counselor Gallagher discontinued Psychiatric Observation because Ms. Carlos committed to continue participating in her treatment plan. (Ex. K at PCM 658; Ex. A, 78:11-79:16.)

79. Ms. Carlos remained on ICU status on October 2, 2013. (Ex. K at PCM 1774.)

80. Counselor Gallagher had no concern with removing Ms. Carlos from Psychiatric Observation, and knew he would continue to monitor Ms. Carlos' progress during PRC rounds due to her continued ICU status. (Ex. A, 79:17-80:2.)

81. Ms. Carlos received her scheduled Haldol injection on October 2, 2013. (Ex. K at PCM 196.)

82. Ms. Carlos was stable, reported no problems, and denied suicidal ideations on October 3, 2013, during a weekly segregation check by Mental Health Nurse Snyder. (Ex. K at PCM 196.)

83. Ms. Carlos was stable, reported no problems, and denied suicidal and homicidal ideations on October 10, 2013, during a weekly segregation check by Mental Health Nurse Leiphart. (Ex. K at PCM 196.)

84. Ms. Carlos was stable and was not a risk for suicide on October 16, 2013, during a PRC review with Counselor Gallagher. (Ex. D, Doll 72; Ex. K at PCM 258.)

85. Counselor Gallagher's last clinical encounter with Ms. Carlos was on October 16, 2013. (*See* Ex. A, 103:13-20; Ex. D, 137:18-22.)

86. Ms. Carlos received her scheduled Haldol injection on October 16, 2013. (Ex. K at PCM 258.)

87. Ms. Carlos was stable, reported no problems, and denied suicidal and homicidal ideations on October 17, 2013, during a weekly segregation check by Mental Health Nurse Snyder. Mental Health Nurse Snyder documented Ms. Carlos was not a risk for suicide. (Ex. K at PCM 196.)

88. Ms. Carlos's father, Hueth Carlos, did not believe Ms. Carlos was acutely suicidal when they spoke on October 19, 2013. (Hueth Carlos Dep., 12:6-15, attached as "Exhibit O.")

89. Ms. Carlos' mother, Angela Carlos, had no concerns that Ms. Carlos would harm herself when she spoke to Ms. Carlos during the week before October 23, 2013. (Ex. J, 51:16-52:1.)

90. Ms. Carlos' mother testified that Ms. Carlos was future oriented during the week before October 23, 2013. (Ex. J, 52:2-17.)

91. Ms. Carlos' mother testified that Ms. Carlos was coherent and happy during the week before October 23, 2013. (Ex. J, 51:18-53:5.)

92. Ms. Carlos believed that she would be released from prison soon. (Ex. J, 53:6-23.)

93. Ms. Carlos' daughter, Natalla Carlos, did not believe Ms. Carlos was suicidal when they spoke on October 20, 2013. (Natalla Carlos Dep., 15:5-16:1, attached as "Exhibit P.")

94. Natalla Carlos testified that her impression was that she would speak with her mother again in two weeks. (Ex. P, 15:20-16:1.)

95. Corrections Counselor Jackson transferred Ms. Carlos from a cell on the D Pod to a cell on the A Pod on October 21, 2013. (Ex. K at PCM 1774; Ex. C, 71:1-8; *See also* Ex. F, 53:16-11.)

96. On October 21, 2013, Counselor Jackson did not believe "personally or professionally that Ms. Carlos was acutely suicidal." (Ex. C, 37:21-38:5.)

97. The cell on the D Pod, from which Ms. Carlos was transferred, and the cell on the A Pod, to which Ms. Carlos was transferred, were "mirror images." (Ex. A, 85:14-25.)

98. Ms. Carlos did not complain of the October 21, 2013 move from D Pod to A Pod. (Ex. F, 52:4-54:11.)

99. Counselor Gallagher was not informed of the cell transfer. (Ex. C, 68:24-69:2; Ex. A, 95:19-23.)

100. Counselor Gallagher was not present at York County Prison on October 23, 2013. (Ex. A, 82:7-9.)

101. On October 23, 2013, Corrections Officers performed 15-minute rounds of the A Pod. (Ex. F, 74:21-24; Ex. K at PCM 1775-1787)

102. On October 23, 2013, Corrections Office Curry rounded the A Pod at 8:05 pm. (Ex. L at YC 134; Ex. K at PCM 1785.)

103. On October, 23, 2013, Corrections Officer Santos rounded the A Pod at 8:13 pm. (Ex. L at YC 135; Ex. K at PCM 1785-86; Ex. E, 56:23-57:1.) Ms. Carlos looked fine. (Ex. E, 49:19-20.)

104. On October 23, 2013, Corrections Officer Santos rounded the A Pod at 8:29 pm. (Ex. L at YC 135; Ex. K at PCM 1786; Ex. E, 57:2-4.) Ms. Carlos looked fine. (Ex. E, 49:19-20.)

105. On October 23, 2013, Ms. Carlos had a verbal argument with another inmate at approximately 8:30 pm. (Ex. F, 59:4-62:4.)

106. After the incident, Ms. Carlos was talking, joking, and laughing and was not visibly upset. (Ex. F, 66:10-67:4.)

107. No one reported this argument to Counselor Gallagher, including the Corrections Officers who were witness to the argument, knew Ms. Carlos, and observed her reaction. (Ex. F, 67:5-8.)

108. On October 23, 2013, Corrections Officer Santos rounded A Pod at 8:49 pm. (Ex. E, 59:13-20; Ex. F, 72:16-73:1, 74:4-8.) Ms. Carlos looked fine. (Ex. E, 49:19-20.)

109. On October 23, 2013, Corrections Officer Santos rounded the A Pod at 9:00 pm. (Ex. L at YC 135; Ex. K at PCM 1786.) Ms. Carlos looked fine, did not appear distressed, and appeared as if she was going to bed. (Ex. E, 49:1-20, 60:18-21.)

110. On October 23, 2013, Corrections Officer Collins rounded the A Pod at 9:17 pm. (Ex. F, 75:7-11.)

111. During that round, Officer Collins discovered that Ms. Carlos had hanged herself. (Ex. F, 75:12-14.)

112. Ms. Carlos' suicide was not and could not have been foreseeable to Counselor Gallagher. (Ex. M, p. 12.)

113. After Counselor Gallagher discontinued Suicide Precaution and Psychiatric Observation, Ms. Carlos did not make any statements or exhibit behavior that indicated she required Suicide Precaution, placement on Psychiatric Observation, or placement on BAU Status. (Ex. N, p. 17.)

114. Not a single individual who interacted with Ms. Carlos raised a concern that she was a risk for suicide. (Ex. M, p. 11.)

115. Ms. Carlos did not evidence acute suicidality and did not demonstrate a particular vulnerability to suicide at the time Counselor Gallagher last saw her or anytime thereafter. (Ex. M, p. 11.)

116. Ms. Carlos had 34 ng/mL of Haldol in her system at autopsy. (Ex. L at YC 719.)

117. 34 ng/mL is a therapeutic level of Haldol. (*See* Ex. M, p. 8.)

Respectfully submitted:

**SAXTON & STUMP**

Date: February 1, 2017  By: */s/ Brandon R. Conrad*
Brandon R. Conrad, Esquire
Harlan W. Glasser, Esquire
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
Phone: (717) 556-1000
Email: brc@saxtonstump.com
hwg@saxtonstump.com
*For Defendant Patrick Gallagher, LPC*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Brief in Support of Defendant Patrick Gallagher's Statement of Undisputed Facts was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

David Rudovsky, Esquire
Jonathan H. Feinberg, Esquire
Susan M. Lin, Esquire
Kairys Rudovsky Messing & Feinberg, LLP
The Cast Iron Building, Ste. 501S
718 Arch Street
Philadelphia, PA 19106
drudovsky@krlawphila.com
jfeinberg@krlawphila.com
slin@krlawphila.com


Donald L. Reihart, Esquire
Assistant Solicitor for York County
3015 Eastern Boulevard
York, PA 17402
email@reihartlaw.com


John R. Ninosky, Esquire
Johnson, Duffie, Stewart & Weidner, P.C.
301 Market Street
P.O. Box 109
Lemoyne, PA 17043-0109
jrn@jdsw.com


Date:  February 1, 2017                    */s/ Brandon R. Conrad*
                                            Brandon R. Conrad, Esquire