## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGELA CARLOS, as** | : | |
| **ADMINISTRATRIX of the ESTATE OF** | : | |
| **TIOMBE KIMANA CARLOS,** | : | |
| | : | **No. 1:15-CV-1994-WWC-JFS** |
| **Plaintiff,** | : | |
| | : | **(Judge Caldwell)** |
| **v.** | : | |
| | : | **(Magistrate Judge Saporito)** |
| **YORK COUNTY et al.,** | : | |
| | : | |
| **Defendants.** | : | |

### PLAINTIFF'S SUPPLEMENT TO BRIEFS IN OPPOSITION TO DEFENDANTS' SUMMARY JUDGMENT MOTIONS

Plaintiff Angela Carlos, through counsel, respectfully submits this short

supplement to her previously filed briefs in opposition to the defendants' summary

judgment motions to alert the Court to a newly issued precedential Third Circuit

opinion, which is highly relevant to the issues presented by the pending motions.

On April 14, 2017, in *Palakovic v. Wetzel*, -- F.3d. -- , 2017 WL 1360772 (3d Cir.),

the court reversed district court rulings dismissing, among other things, claims that

Pennsylvania Department of Corrections staff members were deliberately

indifferent to a decedent's particular vulnerability to suicide.[1]   The facts alleged in

---

[1] Defendant Counselor Patrick Gallagher cited to the now-reversed district court
decision in his brief in support of his motion for summary judgment.  *See* ECF 78
at 19, 21.

*Palakovic* are analogous in several respects to the facts established by plaintiff in the summary judgment record in this case.  Critical similarities include:

- The decedent had attempted suicide in the past and engaged in self-harm in August 2010, approximately eleven months before his suicide.  *Palakovic*, 2017 WL 1360772, at *1-2.  In this case, Tiombe Carlos attempted suicide just two months prior to her death by hanging.

- The decedent was diagnosed with serious mental health disorders, including alcohol dependence, anti-social personality disorder, and impulse control disorder.  *Id.* at *1.  In this case, YCP mental health providers knew that Ms. Carlos had been diagnosed with schizophrenia and saw evidence of her impulse control issues throughout the entirety of her incarceration.

- Despite his history, correctional staff conducted no comprehensive suicide risk assessment.  *Id.* at *1.  In this case, as noted by plaintiff's expert, mental health staff conducted no comprehensive suicide risk assessment, even after Ms. Carlos's August 2013 suicide attempt.

- Throughout his incarceration, the decedent received no psychological counseling, group therapy, or interviews in clinically appropriate settings; instead, mental health interviews were conducted at the cell door while the decedent was detained in solitary confinement.  *Id.*  In this case, most "clinical encounters" performed by Counselor Gallagher occurred at Ms.

Carlos's cell while she was in segregated housing in the BAU unit or on ICU

status.

- The decedent spent several 30-day stints in solitary confinement settings,

  resulting in his isolation for 23-to-24 hours per day, with no access to phone

  calls, limited personal possessions and severely reduced social interactions

  and environmental stimulation. *Id.* at *2.[2]  In this case, Ms. Carlos spent

  much of her incarceration in the stark conditions of either the BAU or ICU

  status—placements that defendants knew to have caused severe frustration

  for Ms. Carlos and that defendants knew to have precipitated her August

  2013 attempted suicide.

- Following the decedent's suicide, the Department of Justice issued a report

  finding several inadequacies in mental health care for inmates. *Id.* at *2-3.

  In this case, following Ms. Carlos's suicide, the Department of Homeland

  Security conducted at least two full investigations which, likewise, identified

  inadequacies in the treatment provided to Ms. Carlos, and, in particular,

  pointed to mental health staff's failure to comply with facility policies

  concerning suicide risk precautions.

---

[2] The *Palkovic* court discussed another recent Third Circuit decision, *Williams v. Sec. of the Pa. Dept. of Corrs.*, 848 F.3d 549, 566-68 (3d Cir. 2017), and its acknowledgement of the "the robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation in solitary confinement." *Palakovic*, 2017 WL 1360772, at *10.

In reversing the district court's dismissal orders, the Third Circuit made clear that legal analysis of the "particular vulnerability" element of a suicide claim must consider "the totality of the facts presented," and that the above-outlined circumstances were sufficient to establish such vulnerability. *Id.* at *14. Of note, and in direct rebuttal to an argument pressed by defendants in this matter, showing a particular vulnerability to suicide does *not* require proof that suicide was "temporally imminent or somehow clinically inevitable," thus making clear that mere placement of the decedent in continued solitary confinement was, in view of the above background, sufficient to result in a particular vulnerability. *Id.* Further, the court emphasized that establishing deliberate indifference to such a vulnerability does not require proof that defendants had "a subjective appreciation of the detainee's particular vulnerability," but, rather, demonstration of "something more culpable on the part of the officials than a negligent failure to recognize the high risk of suicide." *Id.* at *15 (citation omitted). In view of this standard, the court found a sufficient showing of deliberate indifference based on the allegations that the defendants "repeatedly placed [the decedent] (or permitted his placement) in solitary confinement, where they knew that the risk of suicide and mental harm was even greater." *Id.*

Plaintiff respectfully submits that this legal analysis supports the arguments asserted in the previously filed briefs in opposition to the defendants' motions. In

short, defendants had ample understanding of the fact that Ms. Carlos was subject to impulsive self-harming actions in direct reaction to her ongoing frustration and agitation caused by repeated placement in segregated housing.  Under the *Palakovic* court's ruling, these circumstances left her particularly vulnerable to suicide, the defendants knew of or recklessly disregard that vulnerability, and they were deliberately indifferent to that vulnerability.  Accordingly, based on this decision and the arguments more fully outlined in plaintiff's earlier briefs, defendants' motions should be denied.

Respectfully submitted,

/s/ Jonathan H. Feinberg
David Rudovsky
Jonathan H. Feinberg
Susan M. Lin
KAIRYS, RUDOVSKY, MESSING & FEINBERG
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400
*Counsel for Plaintiff*

DATE: April 18, 2017

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan H. Feinberg, hereby certify that the foregoing Supplement to

Briefs in Opposition to Defendants' Summary Judgment Motions was, on April 18,

2017, filed via the Court's CM/ECF system and, therefore, served on the

following:

Brandon R. Conrad
Email: brc@saxtonstump.com
Harlan W. Glasser
Email: hwg@saxtonstump.com
Saxton & Stump, LLC
280 Granite Run Drive, Suite 300
Lancaster, PA 17601
(717) 556-1008

*Counsel for Defendant Gallagher*


John R. Ninosky
301 Market Street
P.O. Box 109
Lemoyne, PA 17043
(717) 761-4540
Email: jrn@jdsw.com

*Counsel for Defendants PrimeCare
Medical, Inc., Dr. Pamela Rollings-
Mazza, and Nurse Aimee Leiphart*

Donald L. Reihart
Assistant Solicitor for York County
3015 Eastern Boulevard
York, PA 17402
(717) 755-2799
Email: email@reihartlaw.com

*Counsel for Defendants York County,
Deputy Warden Clair Doll, Counselor
Janet Jackson, and Correctional Officer
Erika Collins*


/s/ Jonathan H. Feinberg
Jonathan H. Feinberg